**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| SORAIDA FLORES, as Personal Representative of the Estate of ERICA FLORES, deceased,<br><br>Plaintiff,<br>v.<br><br>CITY OF SOUTH BEND, a municipal corporation, and JUSTIN GORNY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. |

**COMPLAINT AT LAW**

NOW COMES the Plaintiff, SORAIDA FLORES, as Personal Representative of the Estate of ERICA FLORES, deceased, ("Plaintiff"), by and through her attorneys, SMITH SERSIC, and PHILLIPS LAW OFFICES and complaining of the Defendants, CITY OF SOUTH BEND, a municipal corporation, and JUSTIN GORNY, states as follows:

**JURY DEMAND**

1. The Plaintiff hereby demands a trial by jury.

**JURISDICTION AND VENUE**

2. This Court has original, federal question jurisdiction pursuant to 28 U.S.C. §1331 over Plaintiff's §1983 claim.

3. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367 because said claims arise from the same case or controversy – the crash that killed ERICA FLORES – as Plaintiff's §1983 claims, which is within this court's original jurisdiction under Article III of the United States Constitution.

4. Venue is proper in this Court under 28 U.S.C. §1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the Northern District of Indiana. Moreover, all parties reside in this judicial district or resided in this judicial district at the time these events took place.

5. Notice of the instant tort claim(s) was timely provided on or about October 9, 2018, pursuant to the requirements of the Indiana Torts Claim Act. The Defendants have not provided written notice of approval or denial of the claim(s), and more than 90 days have elapsed, therefore the claim is considered denied and is ripe for filing under I.C. 34-13-3-11 and 34-13-3-13.

## PARTIES

6. That on October 23, 2018, Plaintiff, SORAIDA FLORES, was appointed personal representative for the sole purpose of collecting damages for wrongful death in the Circuit Court of St. Joseph County, Indiana, Probate Division. The letters of administration and Order Appointing Personal Representative for Sole Purpose of Collecting Damages for Wrongful Death are attached hereto as Exhibit A and Exhibit B, respectively.

7. That on and prior to July 20, 2018, and at all times relevant herein, Plaintiff, SORAIDA FLORES was domiciled in the City of South Bend, County of St. Joseph, State of Indiana.

8. That on and prior to July 20, 2018, and at all times relevant herein, Decedent, ERICA FLORES was domiciled in the City of South Bend, County of St. Joseph, State of Indiana.

9. At all times relevant hereto, ERICA FLORES was a citizen of the United States.

10. At all times relevant hereto, Defendant GORNY was acting under the color of state law and within the scope of his employment with Defendant CITY OF SOUTH BEND as a sworn South Bend police officer.

11. Defendant CITY OF SOUTH BEND is a municipal corporation, duly incorporated under the laws of the State of Indiana, and was at all relevant times, the employer and principal of the Defendant GORNY.

## FACTUAL ALLEGATIONS

### A. Officers Patrolling the Northwest Region of South Bend and the "Hot Spot"

12. On or about July 20, 2018, at approximately 4:30 a.m., the area generally at and/or near the intersection of Lincoln Way West and College Street, located in the northwest region of South Bend, was determined to be a "hot spot" by the South Bend Police Department, which resulted in an increase of police monitoring/activity within that designated area.

13. On and before July 20, 2018 at 4:30 a.m., Officer Zachary Alfrey and Officer James Wagner of the Strategic Focus Unit of the South Bend Police Department were patrolling the hot spot from an undercover squad car, which was unmarked and was not equipped with emergency lights or sirens.

14. On or about July 20, 2018, at 4:30 a.m., Officer Gregory Howard, and Officer Mollie O'Blenis patrolled the hot spot in an unmarked patrol car that was equipped with hidden emergency lights and sirens.

15. On or about July 20, 2018, at 4:30 a.m., Sergeant Ryan Hiipakka separately patrolled the hot spot area in a marked patrol car, equipped with emergency lights and sirens.

16. At the aforementioned time and place, Officer Alfrey and Officer Wagner observed a white Ford Windstar passenger van (hereinafter, "the subject van") speeding, in apparent violation of IC 9-21-5-1, which is a noncriminal traffic infraction punishable as a moving violation, and as a result began following the subject van in a generally south-westerly direction.

17. At the aforementioned time and place, Officer Alfrey and Officer Wagner were unable to effectuate a traffic stop because their patrol car was unmarked, and was not equipped with emergency lights or siren.

18. On or about July 20, 2018, at approximately 4:30 a.m., officers assigned to the hot spot area and equipped with emergency sirens and lights were expected to assist Officer Alfrey and Officer Wagner in effectuating traffic stops.

19. On or about July 20, 2018, at approximately 4:30 a.m., Officer Alfrey and Officer Wagner used Channel 7, a tactical channel, to communicate the whereabouts of the subject van to officers assigned to assist with conducting of traffic stops in and around the hot spot including Officer Howard, Officer O'Blenis, and Sergeant Hiipakka.

20. On or about July 20, 2018, at approximately 4:30 a.m., Defendant GORNY knew that Officer Howard, Officer O'Blenis, and Sergeant Hiipakka were assigned to assist with conducting of traffic stops in and around the hot spot.

21. On or about July 20, 2018, at approximately 4:30 a.m., Defendant GORNY heard Officer Howard, Officer O'Blenis, and Sergeant Hiipakka communicating with Officer Alfrey and Officer Wagner about effectuating a traffic stop of the subject van over Channel 7.

22. On or about July 20, 2018, at approximately 4:30 a.m., Defendant GORNY knew Officer Howard, Officer O'Blenis, and Sergeant Hiipakka had acknowledged and were

responding to Officer Alfrey and Officer Wagner's call for assistance to effectuate a traffic stop of the subject van.

23. On or about July 20, 2018, at approximately 4:30 a.m., at the time Officer Alfrey and Officer Wagner continued to follow the subject van, in a generally southerly direction Officer Howard, Officer O'Blenis, and Sergeant Hiipakka were traveling in a generally southerly direction in an attempt to assist with and/or conduct a traffic stop of the subject van.

24. At all relevant times Officer Howard, Officer O'Blenis, and Sergeant Hiipakka were in close proximity to the subject van as they were traveling in a southerly direction and were not in need of assistance by other officers, including but not limited to Defendant GORNY.

**B. Officer Justin Gorny**

25. On or about July 20, 2018, Defendant GORNY was assigned to patrol the southwest region of South Bend.

26. On or about July 20, 2018, Defendant GORNY was not specifically assigned to patrol the hot spot area.

27. On or about July 20, 2018, Defendant GORNY was not specifically assigned to assist with conducting of traffic stops in and around the hot spot area.

28. At no time on July 20, 2018, at approximately 4:30 a.m., did any of officers and/or patrol(wo)men and/or sergeants request that Defendant GORNY assist with conducting a traffic stop of the subject van.

29. On or about July 20, 2018, at approximately 4:32:15 a.m., Defendant GORNY was located at or near the intersection of S. Sheridan Street and W. Sample Street, approximately two (2) miles away from the subject van.

30. On or about July 20, 2018, at approximately 4:32:15 a.m , Defendant GORNY self-dispatched himself to assist with conducting a traffic stop of the subject van.

31. On July 20, 2018, there was in effect South Bend Police Department Policy 306 governing vehicle pursuits and South Bend Police Department Policy 308 governing officer response to calls.

32. On July 20, 2018, South Bend Police Department Policy 306 defined a vehicle pursuit as "an active attempt by an officer in an authorized emergency vehicle to apprehend a fleeing suspect who is actively attempting to allude police."

33. On July 20, 2018, South Bend Police Department Policy 306 defined an authorized emergency vehicle as "a Department vehicle equipped with emergency lights (visible from front and rear), siren and police radio […]."

34. On July 20, 2018, Officer Alfrey and Officer Wagner were not in an authorized emergency vehicle as defined by South Bend Police Department Policy 306.

35. At no time on July 20, 2018, did the subject van attempt to allude police.

36. At no time on July 20, 2018, were any of the South Bend Police Officers aforementioned in pursuit of the subject van.

37. At no time on July 20, 2018, did any South Bend Police Officers aforementioned in paragraph 23 communicate that an emergency situation existed.

38. As Officer Howard, Officer O'Blenis, and Sergeant Hiipakka were traveling in a southerly direction on July 20, 2018 in close proximity to the subject van, Defendant GORNY traveled northbound on Sheridan Street, between Sample Street and Western Avenue, reaching speeds of up to 78 miles per hour through a residential neighborhood with a posted speed limit of 30 miles per hour.

39. While traveling northbound on Sheridan Street as alleged in Paragraph 39, Defendant GORNY did not activate his sirens or emergency lights.

40. After traveling northbound on Sheridan Street as alleged in Paragraph 33, Defendant GORNY made a right-hand turn onto eastbound Western Avenue.

**C. The Collision**

41. On July 20, 2018, Western Avenue was a public roadway traveling in an East-West direction at or near its intersection with Kaley Street, which traveled in a North-South direction, in the City of South Bend, County of St. Joseph, State of Indiana.

42. On July 20, 2018, at approximately 4:33 a.m., Defendant GORNY operated his patrol car eastbound on Western Avenue approaching its intersection with Kaley Street.

43. As Officer Howard, Officer O'Blenis, and Sergeant Hiipakka were traveling in a southerly direction on July 20, 2018, in close proximity to the subject van, Defendant GORNY traveled eastbound on Western Avenue, between Sheridan Street and Kaley Street, reaching speeds of up to 98 miles per hour through a residential area with a posted speed limit of 30 miles per hour.

44. While traveling eastbound on Western Avenue as alleged in Paragraph 38, Defendant GORNY did not consistently activate his emergency lights and/or siren.

45. On July 20, 2018, at approximately 4:33 a.m., Plaintiff's Decedent, ERICA FLORES, was the operator of a vehicle traveling northbound on Kaley Street at or near its intersection with Western Avenue.

46. On July 20, 2018, at approximately 4:33 a.m., the patrol car operated and controlled by Defendant GORNY, struck the vehicle operated and controlled by ERICA FLORES, at approximately 90 miles per hour, causing her death.

**D. Justin Gorny's Past Behavior and the Culture of Speeding**

47. At no time on or prior to July 20, 2018, did Defendant, CITY OF SOUTH BEND, train South Bend Police Officers who worked the night shift, including Defendant GORNY, how to safely operate a patrol car at speeds in excess of approximately 50 miles per hour.

48. On and prior to July 20, 2018, Defendant CITY OF SOUTH BEND knew that officers working during night shift frequently drove at speeds above 50 miles per hour.

49. At no time prior to July 20, 2018, did Defendant CITY OF SOUTH BEND train its night shift police officers to safely operate patrol cars at speeds above approximately 50 miles per hour while activating sirens and/or emergency lights.

50. Prior to July 20, 2018 on at least three occasions, Defendant GORNY operated his vehicle at high speeds while working the night shift.

a. On or about August 2016 at approximately 3:55 a.m., GORNY operated his patrol car at speeds in excess of 70 miles per hour;

b. On or about September 9, 2016, at approximately 11:38 p.m., GORNY operated his patrol car at 114 miles per hour; and,

c. On or about May 28, 2017, at approximately 1:56 a.m., GORNY operated his patrol car at 60 mph.

51. At no time prior to July 20, 2018 was GORNY disciplined and/or reprimanded for driving at high speeds.

52. On and prior to July 20, 2018, it was the regular practice of South Bend Police Officers working the night shift to operate their vehicles at higher speeds than those working during the day.

53. On and prior to July 20, 2018, it was the regular practice and/or custom of South Bend Police Officers working the night shift to respond to emergency calls without the use of both lights and sirens.

**<u>COUNT I – § 1983</u>**
**JUSTIN GORNY**

1-53. Plaintiff adopts and realleges paragraphs 1-53 as though fully set forth herein.

54. ERICA FLORES had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience.

55. The aforementioned actions of Defendant GORNY shocks the conscience in that he acted with deliberate indifference and/or reckless disregard in one or more of the following respects:

a. Unnecessarily attempted to assist with a non-emergency traffic stop by driving at high rates of speed through residential areas at approximately 4:30 a.m., without using emergency sirens or lights and traveling through intersections without assuring it was safe to do so;

b. Willingly operated his vehicle at speeds in excess of 90 miles per hour at approximately 4:30 a.m. on a residential street;

c. Willingly operated his vehicle through an intersection without slowing down;

d. Willingly operated his vehicle through an intersection without looking for oncoming traffic from the south;

e. Willingly operated his vehicle at speeds in excess of 90 miles per hour at approximately 4:30 a.m. through an intersection against a red light;

f. Willingly operated his vehicle at speeds in excess of 90 miles per hour at approximately 4:30 a.m. through an intersection without slowing down, despite his view of northbound traffic was obstructed by a large building;

g. Willingly initiated an emergency response to a non-emergent situation in violation of South Bend Police Department Policy 308;

h. Willingly initiated an emergency response without immediately notifying the dispatcher of his intent to do so, in violation of South Bend Police Department Policy 308;

i. Willingly violated traffic laws, including but not limited to the speed limit, when responding to a non-emergency call, in violation of South Bend Police Department Policy 308;

j. Willingly failed to continuously operate the emergency vehicle lighting and siren as required by law, in violation of I.C. § 9-13-2-6(1)(B);

k. Willingly failed to continuously operate the emergency vehicle lighting and siren as required by law, in violation of South Bend Police Department Policy 308.5;

l. Willingly initiated an emergency response where there existed an unnecessary risk to persons and property, in violation of South Bend Police Department Policy 308.5; and,

m. Willingly responded to a non-emergency call to which multiple units were already responding, in violation of South Bend Police Department Policy 308.5.1.

56. Defendant GORNY then and there acted with knowledge of impending harm, which he consciously refused to prevent.

57. Defendant GORNY then and there acted with knowledge that the risk of death was significant, but consciously refused to prevent it.

58. The risk of death resulting from Defendant GORNY's actions was obvious and/or known.

59. Defendant GORNY had sufficient knowledge from which one can infer he intended to inflict the resultant injury.

60. Defendant GORNY's conduct placed surrounding motor vehicle operators at risk of serious, immediate, and proximate harm.

61. As a direct and proximate result of the facts and allegations set forth above, the decedent, ERICA FLORES, sustained severe injuries when the vehicle which Defendant Gorny

was operating eastbound on Western collided violently with the vehicle which the decedent was operating northbound on Kaley from which she subsequently died.

62. Defendant GORNY thus violated the substantive due process rights of Plaintiff to be free from state actions that deprive her of life, in such a manner as to shock the conscience.

63. As a further direct and proximate result of the acts and omissions of Defendant GORNY, Plaintiff has suffered damages as a result of the violation of state and federal constitutional rights and incurred and will continue to incur attorneys' fees.

WHEREFORE Plaintiff prays for judgment against Defendant GORNY for an amount in for compensatory damages in an amount to be determined herein, for punitive damages, for the costs and reasonable expenses of this action pursuant to 42 U.S.C. § 1988(b) and (c), for attorneys' fees and for any and all other relief that the Court and Jury deem proper under these circumstances.

## COUNT II - §1983 *Monell* Claim
### *Failure to Train*
### CITY OF SOUTH BEND

1-63. Plaintiff adopts and realleges Paragraphs 1-63 as though fully set forth herein.

64. Prior to July 20, 2018, Defendant, CITY OF SOUTH BEND, had in effect policies, practices, or customs that perpetuated and fostered the unconstitutional conduct of Defendant GORNY.

65. Prior to July 20, 2018, Defendant, CITY OF SOUTH BEND, failed to properly train its agents, employees and officers, including but not limited to Defendant GORNY regarding:

a. Safe operation of South Bend Police Department vehicles at high speeds at night;

b. When it is appropriate or necessary to operate South Bend Police Department vehicles at high speeds at night;

c. When it is appropriate or necessary to use emergency lights at night;

d. When it is appropriate or necessary to use emergency sirens at night;

e. The proper procedure for the safe clearing of intersections at night; and,

f. High speed maneuvering of patrol cars at night.

66. Prior to July 20, 2018, Defendant, CITY OF SOUTH BEND, provided no specialized training to its police officers, including Defendant GORNY, on how to safely operate patrol cars at high speeds while utilizing lights and/or sirens at night.

67. Prior to July 20, 2018, Defendant, CITY OF SOUTH BEND, provided Emergency Vehicle Operations training only two times per year, that consisted of approximately five to ten minutes on an instructional driving track, at speeds no higher than approximately 50 miles per hour.

68. At no time during the Emergency Vehicle Operations training aforementioned in Paragraph 66, were police officers, including Defendant GORNY, trained in the use lights and or sirens.

69. Prior to July 20, 2018, the training policies of Defendant, CITY OF SOUTH BEND, were not adequate to train officers to handle the usual and recurring situations which they encounter on a regular basis.

70. Operation of South Bend Police Department vehicles at high rates of speed is a usual and recurring situation with which the agents, employees, and/or officers of Defendant CITY OF SOUTH BEND encounter on a regular basis.

71. In light of the duties assigned to Defendant GORNY as a nighttime patrolman the need for additional and/or different training was obvious.

72. Defendant, CITY OF SOUTH BEND, knew or should have known that such policy would and could cause injury to such an individual as decedent, ERICA FLORES.

73. Defendant, CITY OF SOUTH BEND knew or should have known that such policy was likely to cause constitutional injuries to civilians operating vehicles at night, including ERICA FLORES.

74. As such, Defendant, CITY OF SOUTH BEND, was deliberately indifferent and reckless with respect to the obvious consequences of its failure to train its officers adequately, including the potential violation of constitutional rights of its inhabitants such as ERICA FLORES.

75. The failure to train constituted an official policy of Defendant, CITY OF SOUTH BEND.

76. The aforementioned Defendant, CITY OF SOUTH BEND, policy was the moving force behind the actions Defendant JUSTIN GORNY resulting in decedent, ERICA FLORES's injuries and subsequent death.

77. As a further direct and proximate result of the acts and omissions of Defendant, CITY OF SOUTH BEND, Plaintiff has suffered damages as a result of the violation of state and federal constitutional rights and incurred and will continue to incur attorneys' fees.

WHEREFORE Plaintiff prays for judgment against Defendant, CITY OF SOUTH BEND, for an amount in for compensatory damages in an amount to be determined herein, for punitive damages, for the costs and reasonable expenses of this action pursuant to 42 U.S.C. §

1988(b) and (c), for attorneys' fees and for any and all other relief that the Court and Jury deem proper under these circumstances.

**COUNT III - §1983 *Monell* Claim**
***Custom, Policy, and Practice***
**CITY OF SOUTH BEND**

1-77. Plaintiff adopts and realleges paragraphs 1 – 77 as though fully set forth herein.

78. On and prior July 20, 2018, Defendant CITY OF SOUTH BEND had a duty to refrain from violating the constitutional rights of the decedent, ERICA FLORES, including her substantive due process rights to be secure in her bodily integrity.

79. On and prior July 20, 2018, it was the widespread practice and custom of South Bend Police Officers working the night shift to drive at high speeds.

80. On and prior July 20, 2018, it was the widespread practice and custom of South Bend Police Officers working the night shift to drive at high speeds without the use of sirens and emergency lights.

81. On and prior July 20, 2018, Defendant CITY OF SOUTH BEND was on notice that it was the custom of officers working the night shift to drive at high speeds.

82. On and prior July 20, 2018, Defendant CITY OF SOUTH BEND was on notice that it was the custom of officers working the night shift to drive at high speeds without activating their emergency lights and/or sirens.

83. Prior to July 20, 2018, Defendant CITY OF SOUTH BEND failed to enforce regulations against its own officers related to speed.

84. Prior to July 20, 2018, Defendant CITY OF SOUTH BEND failed to enforce regulations against its own officers related to the use of emergency lights and sirens.

85. On and prior to July 20, 2018, Defendant CITY OF SOUTH BEND tacitly authorized the aforementioned customs and practices by condoning such behavior.

86. In failing to administer proper disciplinary action for driving at excessive speeds at night and/or failing to properly use lights and/or sirens, Defendant CITY OF SOUTH BEND approved, encouraged, and promoted a continued pattern of unsafe driving by South Bend Police Officers including Defendant GORNY.

87. The wrongful acts and/or omissions of Defendant CITY OF SOUTH BEND deprived decedent ERICA FLORES of her constitutionally protected substantive due process right to bodily integrity.

88. The wrongful acts and/or omissions of Defendant CITY OF SOUTH BEND were done pursuant to one or more of the following *de facto* policies, practices and/or customs of the CITY that are so pervasive that they carry the force of law.

89. Defendant CITY OF SOUTH BEND has a *de facto* policy, practice and/or custom of allowing and/or encouraging officers working the night shift to drive at excessive speeds.

90. Defendant CITY OF SOUTH BEND has a *de facto* policy, practice and/or custom of failing to enforce its own rules codified in South Bend Police Department Policy 306 and 308 regarding light and siren usage by night shift officers.

91. Individually and collectively, the above described *de facto* policies, practices and/or customs of Defendant CITY OF SOUTH BEND, proximately result in the culture and endemic attitude among members of the South Bend Police Department, including Defendant GORNY that they may engage in misconduct without fear of official consequence.

92. The aforementioned *de facto* policies, practices and/or customs of Defendant, CITY OF SOUTH BEND, individually and collectively, have been maintained and/or

implemented with utter indifference by the CITY and has or have encouraged and/or motivated Defendant GORNY to commit the aforesaid wrongful acts against the decedent, and therefore acted as the direct and proximate cause of decedent's injuries and subsequent death.

93. As a further direct and proximate result of the acts and omissions of Defendant, CITY OF SOUTH BEND, Plaintiff has suffered damages as a result of the violation of state and federal constitutional rights and incurred and will continue to incur attorneys' fees.

WHEREFORE Plaintiff prays for judgment against Defendant, CITY OF SOUTH BEND, for an amount in for compensatory damages in an amount to be determined herein, for punitive damages, for the costs and reasonable expenses of this action pursuant to 42 U.S.C. § 1988(b) and (c), for attorneys' fees and for any and all other relief that the Court and Jury deem proper under these circumstances.

.

**COUNT IV –Wrongful Death**
***Willful and Wanton Conduct***
**JUSTIN GORNY**

1-53. Plaintiff adopts and realleges Paragraphs 1 – 53 as though fully set forth herein.

54. At all times herein referred to, Defendant GORNY owed decedent ERICA FLORES a duty to refrain from wanton and willful acts and/or omissions, which could cause her harm.

55. In breach of his aforesaid duties, Defendant GORNY was willful and wanton in one or more of the following respects, when with utter indifference and conscious disregard, he:

a. Operated his vehicle at excessive speeds, reaching 98 miles per hour in response to a non-emergency, traffic stop;

b. Operated his vehicle at excessive speeds, reaching 98 miles per hour on residential streets in response to a non-emergency, traffic stop;

c. Disobeyed traffic signals while traveling at excessive speeds in excess of 90 miles per hour;

d. Disobeyed traffic signals while traveling at excessive speeds up to 98 miles an hour and without using his emergency lights and/or sirens;

e. Turned off his emergency lights and/or sirens while traveling at excessive speeds up to 98 miles per hour;

f. Failed to decrease his speed excessive speed upon approaching intersections;

g. Failed to engage his emergency lights when traveling at high speeds up to 98 miles per hour;

h. Failed to engage his emergency lights when traveling at high speeds up to 98 miles per hour in residential areas;

i. Failed to engage his emergency lights when approaching intersections at high rates of speed up to 98 miles per hour;

j. Failed to engage his emergency sirens when traveling at high speeds up to 98 miles per hour;

k. Failed to engage his emergency sirens when traveling at high speeds in residential areas;

l. Travelled at excessive speeds to respond to a non-emergency traffic stop for which his assistance was neither requested nor needed;

m. Failed to keep a proper lookout while traveling 98 miles on a residential street;

n. Failed to exercise due care;

o. Initiated an emergency response to a non-emergent situation in violation of South Bend Police Department Policy 308;

p. Failed to immediately notify the dispatcher of his intent to initiate an emergency response, in violation of South Bend Police Department Policy 308;

q. Failed to abide by traffic laws, including but not limited to the speed limit, when responding to a non-emergency call, in violation of South Bend Police Department Policy 308;

r. Failed to continuously operate the emergency vehicle lighting and siren as required by law, in violation of I.C. § 9-13-2-6(1)(B);

s. Failed to continuously operate the emergency vehicle lighting and siren as required by law, in violation of South Bend Police Department Policy 308.5;

t. Initiated an emergency response where there existed an unnecessary risk to persons and property, in violation of South Bend Police Department Policy 308.5; and,

u. Responded to a non-emergency call to which multiple units were already responding, in violation of South Bend Police Department Policy 308.5.1.

56. That as a direct and proximate result of one or more of the foregoing acts of willful and wanton acts and/or omissions, Defendant GORNY collided with the vehicle driven by ERICA FLORES, thereby injuring and ultimately causing ERICA FLORES's death.

57. That as a direct and proximate result of one or more of the foregoing acts of grossly negligent and/or willful and wanton conduct, the Plaintiff has incurred damages including, but not limited to, medical, hospital, funeral and burial expenses, and the expense of administering the decedent's estate.

58. That furthermore, as a direct and proximate result of one or more of the foregoing willful and wanton acts and/or omissions that resulted in the wrongful death of the decedent, ERICA FLORES, the following heirs at law have been damaged in that they have lost the love, care, companionship, comfort, support, guidance, training, and financial support of the decedent.

**J.M. (minor daughter)**
**E.F. (minor daughter)**

WHEREFORE Plaintiff prays for a judgment against Defendant GORNY in the amount allowable under the Indiana Wrongful Death Act, or, in the alternative, seeks compensatory damages which will reasonably compensate her and for costs, prejudgment interest, punitive damages, and for all other just and proper relief.

## COUNT V – Wrongful Death
***Negligence***
**JUSTIN GORNY**

1-53. Plaintiff adopts and realleges paragraphs 1 – 53 as though fully set forth herein.

54. At all times herein referred to, Defendant GORNY owed decedent ERICA FLORES a duty to refrain from negligent acts and/or omissions, which could cause her harm.

55. At the time and place aforementioned, in breach of his aforesaid duties, Defendant GORNY was negligent in one or more of the following respects:

a. Operated his vehicle at excessive speeds, reaching 90 miles per hour in response to a non-emergency, traffic stop;

b. Operated his vehicle at excessive speeds on residential streets in response to a non-emergency, traffic stop;

c. Disobeyed traffic signals while traveling at excessive speeds;

d. Disobeyed traffic signals while traveling at excessive speeds and without using his emergency lights and/or sirens;

e. Turned off his emergency lights and/or sirens while traveling at excessive speeds;

f. Failed to decrease his speed upon approaching intersections;

g. Failed to engage his emergency lights when traveling at high speeds;

h. Failed to engage his emergency lights when traveling at high speeds in residential areas;

i. Failed to engage his emergency lights when approaching intersections;

j. Failed to engage his emergency sirens when traveling at high speeds;

k. Failed to engage his emergency sirens when traveling at high speeds in residential areas;

l. Travelled at excessive speeds to respond to a non-emergency traffic stop for which his assistance was neither requested nor needed;

m. Failed to keep a proper lookout;

n. Failed to exercise due care;

o. Initiated an emergency response to a non-emergent situation in violation of South Bend Police Department Policy 308;

p. Failed to immediately notify the dispatcher of his intent to initiate an emergency response, in violation of South Bend Police Department Policy 308;

q. Failed to abide by traffic laws, including but not limited to the speed limit, when responding to a non-emergency call, in violation of South Bend Police Department Policy 308;

r. Failed to continuously operate the emergency vehicle lighting and siren as required by law, in violation of I.C. § 9-13-2-6(1)(B);

s. Failed to continuously operate the emergency vehicle lighting and siren as required by law, in violation of South Bend Police Department Policy 308.5;

t. Initiated an emergency response where there existed an unnecessary risk to persons and property, in violation of South Bend Police Department Policy 308.5; and,

u. Responded to a non-emergency call to which multiple units were already responding, in violation of South Bend Police Department Policy 308.5.1.

56. That as a direct and proximate result of one or more of the foregoing negligent acts and/or omissions, Defendant GORNY collided with the vehicle driven by ERICA FLORES, thereby injuring and ultimately causing ERICA FLORES's death.

57. That as a direct and proximate result of one or more of the foregoing acts of grossly negligent and/or willful and wanton conduct, the Plaintiff has incurred damages including, but not limited to, medical, hospital, funeral and burial expenses, and the expense of administering the decedent's estate.

58. That furthermore, as a direct and proximate result of one or more of the foregoing willful and wanton acts and/or omissions that resulted in the wrongful death of the decedent, ERICA FLORES, the following heirs at law have been damaged in that they have lost the love, care, companionship, comfort, support, guidance, training, and financial support of the decedent.

**J.M. (minor daughter)**
**E.F. (minor daughter)**

WHEREFORE Plaintiff prays for a judgment against Defendant GORNY in the amount allowable under the Indiana Wrongful Death Act, or, in the alternative, seeks compensatory damages which will reasonably compensate her and for costs, prejudgment interest, punitive damages, and for all other just and proper relief.

Respectfully submitted,

/s/ ***Kevin C. Smith***
One of the Plaintiff's Attorneys

/s/ ***Stephen D. Phillips***
One of the Plaintiff's Attorneys

Kevin C. Smith
**SMITH SERSIC**
9301 Calumet Avenue, Suite 1F
Munster, IN 46321
T: (219) 933-7600
F: (219) 836-2848
ksmith@smithsersic.com

Stephen D. Phillips
Terrence M. Quinn
Britney R. Pennycook
Stephen J. Phillips
**PHILLIPS LAW OFFICES**
161 N. Clark Street, Suite 4925
Chicago, Illinois 60601
T: (312)346-4262
F: (312)346-0003
sphillips@phillipslegal.com
tquinn@phillipslegal.com
bpennycook@phillipslegal.com