IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

SORAIDA FLORES, as Personal )
Representative of the Estate )
of ERICA FLORES, deceased, ) Case No.
) 2:19-cv-00064-JTM-JPK
Plaintiff, )
)
-vs- )
)
CITY OF SOUTH BEND, a )
municipal corporation, and )
JUSTIN GORNY, )
)
Defendant. )

VIDEO DEPOSITION OF CAPTAIN DAVID HERRON

The video deposition upon oral examination of CAPTAIN SCOTT HERRON, a witness produced and sworn before Wendi Kramer Sulkoske, Notary Public in and for the County of Boone, State of Indiana, taken on behalf of the Plaintiff at Anderson, Agostino & Keller, 131 South Taylor, South Bend, St. Joseph County Indiana on August 30, 2022, 10:00 a.m. pursuant to the Federal Rules of Civil Procedure.

**Exhibit E**

USDC IN/ND case 2:19-cv-00064-PPS document 138-13 filed 08/18/25 page 2 of 12

APPEARANCES

FOR THE PLAINTIFF:
(Via Zoom Videoconference)
PHILLIPS LAW OFFICES
Stephen D. Phillips
161 North Clark Street, Suite 4925
Chicago, Illinois 60601
sphillips@phillipslegal.com

FOR THE DEFENDANT:

ANDERSON AGOSTINO & KELLER
Peter J. Agostino
Stephanie L. Nemeth
131 South Taylor Street
South Bend, Indiana 46601
nemeth@aaklaw.com
agostino@aaklaw.com

CITY OF SOUTH BEND
Assistant Legal Counsel
Kylie Connell

ALSO PRESENT: Tom Temple, Videographer
Alec Mesrobian, Liam Byrnes
Michael Phillips, Matt Canna

EXAMINATION INDEX

| | Page |
|---|---|
| EXAMINATION | |
| QUESTIONS BY MR. STEPHEN D. PHILLIPS | 5 |

EXHIBIT INDEX


| Exhibit | Description | Page |
|---|---|---|
| Exhibit 1 | Video | 8 |
| Exhibit 1-A | Policy 320.4 | 8 |
| Exhibit 1-B | Policy 320.4 | 32 |
| Exhibit 1-C | Pursuit Review | 65 |
| Exhibit 1-D | Vehicle Pursuit Form | 93 |
| Exhibit 2 | Photograph | 47 |
| Exhibit 2-A | Photograph | 47 |
| Exhibit 2-B | Photograph (Retained by Counsel) | 47 |
| Exhibit 3 | Photograph | 47 |
| Exhibit 3-A | Photograph | 47 |
| Exhibit 4 | Photograph | 47 |
| Exhibit 4-A | Photograph | 47 |
| Exhibit 5 | Compilation of Maps | 51 |
| Exhibit 9 | Policy 320.5(i) | 16 |
| Exhibit 10 | Policy 320.5.8(j) | 17 |
| Exhibit 13 | Policy 320.5.8(i)(j) | 16 |
| Exhibit 22 | Officer Gorny Conduct Emergency Calls | 9 |
| Exhibit 28 | Officer Gorny Interview Video | 60 |
| Exhibit 38 | Crash Video | 53 |
| Exhibit 45 | CDR Date | 43 |
| Exhibit 51 | Places With Obtained Video | 46 |
| Exhibit 52 | List of Officer Gorny Violations | 7 |

VIDEOGRAPHER: We are on the record for -- my name is Tom Temple. I'm the videographer from Golkow Litigation Services. Today's date is August 30, 2022. The time is 10:18 a.m. This video deposition is being taken in South Bend, Indiana in the matter of Flores versus the City of South Bend. The deponent is David Herron.

Now will counsel please introduce themselves to the court and the parties they represent?

MR. STEPHEN D. PHILLIPS: Steve Phillips, Michael Phillips, Ed Canna, Liam Byrnes on behalf of the plaintiffs.

MR. AGOSTINO: Peter Agostino and Stephanie Nemeth on behalf of the City of South Bend and Justin Gorny.

VIDEOGRAPHER: The court reporter is Wendy Sulkoske. She will now swear in the witness.

CAPTAIN DAVID HERRON

the witness herein, having been first duly sworn to tell the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

EXAMINATION,

QUESTIONS BY MR. STEPHEN D. PHILLIPS:

Q Mr. Herron, could you please speak up. I could not even hear you say "I do."
A Yes, I do.
Q Okay. If you could move the microphone up. That way we don't have to keep --
VIDEOGRAPHER: There we go.
Q Thank you, sir.
A Okay. Thank you.
Q Would you please state your name and spell your last name?
A First name is David. Last name is Herron. H-E-R-R-O-N.
Q And you are in the office of the lawyers for the City of South Bend and Officer Gorny, correct?
A Yes.
Q And Mr. Agostino is right next to you, correct?
A Yes.
Q Are you still an internal affairs investigator for the City of South Bend?

officers on the day shift doing the same or similar emergency calls, is that something you would have wanted to know about?

A Of course. I mean, I would want to know.

Q Why?

A That is important. Our officers, like I said earlier, responding to calls they are supposed to start in a, I mean, respond in a prudent manner. Good prudent manner. Being careful.

Q So using speeds on the midnight shift that were faster than the officers were using on the day shift in responding to the same or similar emergency calls is something that you would think would be a violation of policy, is that correct?

A Yes. If a person is driving out of policy, yes, that is a policy violation.

Q But my question is if officers are driving at speeds on the midnight shift greater than the officers on the day shift responding to the same or similar emergency calls, that would be a dangerous thing, right?

A Yes.

Q Speed is certainly a significant risk when responding to emergency calls or pursuits, right?

A That is correct.

Q Were you involved in training at all of officers?
A No. Not regarding driving. None of that, no.
Q Have you ever attended the driving courses out at the track at the Tire Rack?
A Yes.
Q And how often have you been out to the Tire Rack to do the driving courses or --
A We would do it, I believe, twice a year. And then they would also have, like, class to, they would have classroom versions. They would also have the EVO instructors, you know, stop in at roll calls.
If there is an EVO instructor on a shift, if it is a slow day or night or whatever, they would talk about some of the EVO training.
Q What is the highest speed that you have gone on the track at the Tire Rack?
A I'm not, I'm not a speeder. I can't answer that. I can tell you I'm below, I'll just say fifty. I don't get up to a high speed. And I'm being generous by saying fifty.
Q So as far as all of the times you have been on the track at the Tire Rack, the top speed that you may have obtained, you call it generous, was about fifty miles an hour, is that correct?
A Yes.

Q What is the highest speed that you have heard any of the training at the Tire Rack has included?
A I have not heard of any excessive speeds at the Tire Rack. There is not even enough room for it. There is not --
Q Have you ever heard of anybody at the Tire Rack training course going over sixty miles an hour?
A I can't answer that.
Q You don't -- do you recall?
A I've not heard, I never heard of it.
Q Okay. Have you ever heard of any officers at the Tire Rack going over fifty miles an hour?
A No.
Q Now, the times you were at the Tire Rack and you were going through your training I presume you watched other people go around the track?
A Yes.
Q And you paid attention, right?
A Yes.
Q Did you ever see any other driver or any other officer at the Tire Rack go over what you believed to be fifty miles an hour during the training?
A No.
Q Prior to July of 2018 did you drive at the Tire Rack approximately twice a year?

A Yes.

Q For all of the years you were at the South Bend police department?

A Yes.

Q You were with the South Bend police department how many years?

A Twenty-five. Twenty-five.

Q So in 2018 had you been with the South Bend police department about twenty or twenty-one years, right?

A Yes.

Q And you had been to the track approximately twice a year to drive in those twenty years you were with the South Bend police department?

A I forget where it used to be, where we used to have it way prior than 2018. I forget when we started at Tire Rack. But, yes, the main place we would go is the Tire Rack.

Q Did anyone ever tell you that the police officers in South Bend on the midnight shift would drive faster at night than they did during the day, not just emergency calls, but typically faster?

A No.

Q Is that something that you would have expected to hear based on your position in internal affairs?

A Yes.
Q And that is something that you would have wanted to know, right?
A Yes.
Q If you had heard in internal affairs that police officers of the City of South Bend on the midnight shift would drive faster at night than they did during the day, what would you have done?
MR. AGOSTINO: I will object to the form of the question. It calls for speculation.
A What I would have done, I would have notified my captain. Who which, in turn, would have more than likely contacted that captain of that shift and notified them of what has been said.
Knowing Captain Schweizer, he would go and try to find out exactly when it happened and then investigate it and notify that captain of that shift and provide that information to that captain to take --
Q And you had seen, and you had seen Captain Schweizer follow that similar course of conduct on prior occasions when issues had come up on midnight shift or other shifts, is that correct?
A On any shift. For example, like, with the vehicle

USDC IN/ND case 2:19-cv-00064-PPS document 138-13 filed 08/18/25 page 11 of 12

STATE OF INDIANA )
) SS:
COUNTY OF BOONE )

I, Wendi Kramer Sulkoske, Notary Public in and for said county and state, do hereby certify that CAPTAIN DAVID HERRON, the deponent herein was by me first duly sworn to tell the truth in the aforementioned matter;

That the foregoing deposition was taken on behalf of the Plaintiff at the time and place heretofore mentioned with counsel present as noted.

That the deposition was taken down in Stenograph notes, reduced to typewriting under my direction, is a true record of the testimony given by said deponent, and was thereafter presented to the deponent for signature.

That this certificate does not purport to acknowledge or verify the signature hereto of the deponent.

I do further certify that I am a disinterested person in this cause of action; that I am not a relative or attorney of any of the parties or otherwise interested in the event of this action, and am not in the employ of the

attorneys for the respective parties.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal this 7th day of September 2022.

Wendi Kramer Sulkoske, Notary Public

Commission Number NP0661030

My commission expires December 1, 2022.
My County of residence is Boone.