IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

SORAIDA FLORES, as Personal )
Representative of the Estate of)
ERICA FLORES, deceased, )
)
Plaintiff, )
)
v. ) CASE NO.
) 2:19-cv-00064-JTM-JPK
CITY OF SOUTH BEND, a )
municipal corporation, and )
JUSTIN GORNY, )
)
Defendants. )
)
-------------------------------

The Videotaped Deposition of DAN SKIBINS
Date: Tuesday, September 24, 2024
Time: 1:40 PM
Place: Aloft South Bend
111 North Main Street
South Bend, Indiana

Called as a witness by the Plaintiff, in accordance with the Federal Rules of Civil Procedure, Rules of the United States District Court, Northern District of Indiana, pursuant to notice duly served.

Before Ann S. Hunsberger, Court Reporter
Notary Public, Elkhart County, Indiana
Job No. MDLG6933373

**Exhibit K**

APPEARANCES:

MR. MICHAEL PHILLIPS
MR. STEPHEN D. PHILLIPS
Phillips Law Offices
161 North Clark Street, Suite 4925
Chicago, Illinois 60601
312.346.4262
sphillips@phillipslegal.com

On behalf of the Plaintiff;

MR. JOSEPH W. SMITH
Clark johnson & Knight, Ltd
233 East 84th Drive, Suite 301
Merrillville, Indiana 46410
219-322-0830
Jsmith@cjklaw.com

On behalf of the Defendant;

MR. M. TREVOR PAYTON
Kightlinger & Gray, LLP
Bonterra Building, Suite 200
3620 Blackiston Boulevard
New Albany, Indiana 47150
812.949.2300 ext. 5126
tpayton@k-glaw.com

On behalf of the Defendant.

ALSO PRESENT:

Ms. Kylie Connell, Assistant City Attorney, City of South Bend

Ben Stanson, Videographer

# I N D E X

THE VIDEOTAPED DEPOSITION OF
DAN SKIBINS


PAGE

DIRECT EXAMINATION
MR. PHILLIPS ................................6

CROSS-EXAMINATION
MR. SMITH ...................................80

REDIRECT EXAMINATION
MR. PHILLIPS ................................87


* * *

E X H I B I T S


| DEPOSITION | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | Slide Showing Operations Division Chief Dan Skibins | 9 |
| Exhibit 2A | Slide of South Bend Safety Training Vehicle Safety Pursue | 15 |
| Exhibit 3A | Slide We Chase Them... | 19 |
| Exhibit 3B | Slide Performance Based Training... | 19 |
| Exhibit 4 | Slide Proper Training Includes... | 20 |
| Exhibit 5A | Slide We Chase Them Around... | 20 |
| Exhibit 5B | Video of We Chase Them... | 24 |
| Exhibit 5C | Diagram of Intersections | 29 |
| Exhibit 5D | Chart of the Speed Approaching Kaley Street | 31 |
| Exhibit 5E | Video of Crash | 35 |
| Exhibit 5F | Photograph of crash vehicle | 38 |

E X H I B I T S


| DEPOSITION | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 5G | Photographs of Erica Flores | 40 |
| Exhibit 5H | Video | 79 |
| Exhibit 5I | Slide of Who is at Risk During High-Speed Police Operations | 78 |
| Exhibit 6A | Video of Evo Instructor | 45 |
| Exhibit 7 | Gorny's History of Pursuits over 60 MPH at Night | 46 |
| Exhibit 7A | South Bend Police Pursuit Review | 71 |
| Exhibit 9 | 604 Officer Involved Vehicle Crashes | 65 |
| Exhibit 9A | Summary of Police Vehicle Damage Incidents | 68 |


(Exhibits 16B and 18 were previously marked.)


| DEPOSITION | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 16B | Portion of South Bend Police Department Policy Manual | 80 |
| Exhibit 18 | Portion of South Bend Police Department Policy Manual | 80 |

VIDEOGRAPHER: This is Ben Stanson. We are now on the record. I am a videographer for Golkow Litigation Services. Today's date is September 24, 2024, and the time is 1:40 PM Eastern Standard Time. This video deposition is being held in South Bend, Indiana, in the Matter of Soraida Flores versus City of South Bend, et al. Our deponent is Dan Skibins. Will counsel please identify yourselves for the video record.

MR. PHILLIPS: Steve Phillips, Michael Phillips on behalf of the plaintiff.

MR. SMITH: Joseph Smith for the City of South Bend.

VIDEOGRAPHER: Counsel over Zoom, if you could announce yourselves for the record, please.

MR. PAYTON: It's Trevor Payton on behalf of the defendant Gorny.

VIDEOGRAPHER: Thank you. Our court reporter today is Ann Hunsberger. Will you please swear in the witness, and then, Counsel, you may proceed.

DAN SKIBINS

called as a witness by the Plaintiff, having been first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MR. PHILLIPS:

Q Would you state your full name and spell your last name, please?
A Yes. My full first name is Daniel. Skibins is my last name, S-k-i-b-i-n-s.
Q Okay. Mr. Skibins, you understand I'm going to be asking you a series of questions. If there's any question I ask you that you do not understand, will you stop me and let me know before you answer?
A Yes.
Q Have you given a deposition before?
A I have.
Q How many times roughly?
A Three or four.
Q And I presume you've testified in court hundreds of times?
A I wouldn't say hundreds, but probably between 50 and 75 roughly.
Q Okay. What is your occupation or profession?
A I'm a South Bend police officer.
Q How long have you been with the City of South Bend?

operation?

MR. SMITH: Objection. Form, foundation, facts not in the record. You can answer.

A I took that statement differently, I believe, than what you're suggesting.

BY MR. PHILLIPS:

Q Okay. My question to you is do you think that that statement about "Sorry to bore you to death, sorry to keep you awake," or words to that effect that that police officer said to those people in training -- do you think that that gave the proper message to the police officers about the seriousness of getting involved in a chase and the risks?

MR. SMITH: Same objections.

Q Yes or no?

A I don't believe that statement was directed just at that portion of the training. I think it was the training as a whole. That's how I took his statement.

Q Okay. Could you answer my question?

A I cannot.

Q Do you think that that statement about "Sorry to bore you to death" sent a message to the training

people that they really don't have to take this very seriously?

MR. SMITH: Same objections.

A I do not.

BY MR. PHILLIPS:

Q Let me switch topics. You learned about the 14th Amendment of the Constitution and the 4th Amendment of the Constitution when you were at the police academy; right?

A Yes.

Q And at the police academy, they taught you about laws with regard to due regard and reckless speed; right?

A Yes.

Q And, also, when you were with the City of South Bend, you also learned about the 4th Amendment and the 14th Amendment of the Constitution; right?

A Yes.

Q And at the Indiana Police Academy and with the City of South Bend, they taught you about legal case law about your responsibilities as a police officer and what recklessness is; right?

A They have.

Q And at the police academy, as well as the City of South Bend, they taught you about violations,

Constitutional violations of the 4th and 14th amendment; right?
A They did.
Q And that would include high-speed vehicle operations being reckless; right?
A Likely did, yes.
Q Okay. And reckless operation of a police vehicle is a violation of the 14th Amendment. You're aware of that; right?
MR. SMITH: Objection to form. Go ahead.
A I couldn't say yes or no to that.
BY MR. PHILLIPS:
Q Okay. I'll revise it. Reckless -- reckless operation or an utter indifference to the safety of the people can be a violation of the 14th Amendment. Agreed?
A Yes.
Q And you were taught that both at the police academy as well as with the City of the South Bend; right?
A Yes.
Q That can be a constitutional violation?
A Yes.
Q And you knew that prior to July of 2018; right?
A Yes.

Q And you knew what deliberate indifference was when you were driving a police car prior to 2018; right?
A I would have to be reminded "deliberate indifference."
Q You've heard -- well, you've heard the phrase "deliberate indifference."
A I have. How does it relate to -- sorry.
Q Well, that's Italian. Strike that.
You've heard the phrase "deliberate indifference" before in your training about the Constitution as well as the statutes of the United States and State of Indiana; right?
A I believe so.
Q Okay. And you knew that before 2018; right?
A I believe so.
Q Did you ever serve on the pursuit review committee?
A I have not.
Q Did you ever review any of the documents related to the pursuit review committee?
A I have, yes.
Q And when did you start doing that?
A When I became the division chief over the internal affairs division, so April of 2021.
Q Okay. Was Mr. Schweizer gone by that time?
A He was, yes.

CROSS-EXAMINATION

BY MR. SMITH:

Q Chief Skibins, I'm handing you what was marked in Sergeant Calvert's deposition. It's a portion of Exhibit 16B and a portion of Exhibit 18. I'm going to go through this quickly with you and just identify, for the record, what these documents are.

First page -- it's a document that appears to be on the first page. Is it a policy of the South Bend Police Department?

A Yes, it is.

Q What policy is it?

A 308 Officer Response to Calls.

Q Then, if you could turn to a few more pages in, there will be Policy 306.

A Yes, Vehicle Pursuits.

Q And then a few more pages after that it looks like Policy 320.

A Standards of Conduct, 320, yes.

MR. PHILLIPS: Which page? I'm sorry?

MR. SMITH: Let's see. City 1249 is the start of the Standards of Conduct.

BY MR. SMITH:

Q All right. Then flipping through some more, we get to a Policy 703; right?

A Yes, 703 Vehicle Use.
Q And, then, if you keep going some more, we get to Policy 500.
A Yes, Traffic.
Q All right. That is the last one in this packet here; right?
A That's the last I have.
Q All right. Good. Turn back to the first page of this packet that's marked on the first page Exhibit 16B. All right. So Policy 308 Officer Response to Calls, do you see a date down at the bottom of the page?
A I do.
Q What is that date?
A 6/20 of 2018.
Q And then turning to the next policy, Policy 306 --
A Yes.
Q -- is there date at the bottom of that page?
A Yes. It's the same 6/20 of 2018.
Q And then continuing on to Policy 320 Standards of Conduct, is there a date at the bottom of that page?
A Yes.
Q What is that date?
A 6/20 of 2018.

Q And then the next policy is 703 Vehicle Use. Is there a date at the bottom of that page?
A Yes.
Q Is that date also 6/20/18?
A Yes, it is.
Q And then Policy 500 Traffic.
A I am there, yes.
Q Date at the bottom of that page 6/20/2018?
A Yes.
Q These policies that we've just quickly reviewed the dates on, are these the policies that were in effect in July of 2018 for the South Bend Police Department?
A Yes.
Q All right. Turning back to Policy 308, if you could, you see 308.1 Purpose and Scope. Do you see that?
A I do.
Q Can you read that for the record, please?
A [As read] This policy provides officers with guidelines for the sale -- sorry -- safe and appropriate vehicular response to emergency and nonemergency incidents or requests for assistance whether these are dispatched or self-initiated.
Q A little further down on that first page you see

308.3 Response to Calls?
A I do.
Q Can you read that for us, please?
A "Officers responding to nonemergency calls shall proceed accordingly unless they are sent or redirected to a higher priority call and shall obey all traffic laws."
Q You see right below that 308.3.1 Emergency Calls?
A I do.
Q Can you read the first two paragraphs of that subsection?
A "Officers responding to an emergency call shall proceed immediately and shall continuously operate the emergency vehicle lighting and siren as required by law. Even when operating a vehicle in an emergency mode, the law holds officers legally responsible to drive with due regard for the safety of all people.
Members may disable the siren only if the call requires a silent response. If running silent, then the officer must exercise extra caution for motorists and pedestrians. The vehicle emergency lighting shall be operated at all times when the siren has been disabled."
Q If you could turn to the next page, you see

308.5 Safety Considerations?
A I do.
Q Can you read that first paragraph below 308.5?
A "Officers responding to emergency calls shall proceed immediately as appropriate and shall continuously operate the emergency vehicle lighting and siren as required by law."
Q Can you read the first sentence of the next paragraph?
A "Responding with emergency lights and siren does not relieve the operator of an emergency vehicle of the duty to continue to drive with due regard for the safety of all persons and property and does not protect the operator from the consequences of reckless disregard for the safety of others."
Q If you could turn to the next page, you see 308.6 Emergency Equipment?
A I do.
Q Can you read the first sentence of the second paragraph under 308.6?
A "If the emergency equipment on the vehicle should fail to operate, the officer must terminate the emergency response and continue accordingly."
Q If you could turn to Policy 306 Vehicle Pursuits, and then on the second page of that policy do you

see 306.4 Pursuit Operations?
A Yes.
Q Can you read Subparagraph A for us?
A "Units chasing the suspect vehicle will activate both the emergency lights and siren for public safety. The siren will be kept on until either the pursuit ends or the pursuing officer disengages from actively chasing the suspect vehicle."
Q Can you read Subparagraph D for us?
A [As read] When engaged in pursuit, officers shall -- officers have a legal responsibility to drive with due regard for the safety of all people. Units will follow behind all vehicles at a safe distance to prevent accidental rear-end collisions.
Q So these policies that we just read portions of and all these policies included in 16B and Exhibits 18 from Sergeant Calvert's deposition, in July of 2018, were all South Bend officers expected to comply with those policies?
A Yes.
MR. PHILLIPS: Object to form.
BY MR. SMITH:
Q In 2018, what was the process for making sure that the South Bend police officers were aware of what the policies are?

A All officers have to acknowledge that they have read and reviewed the policies.
Q Let's talk about jokes. Is it normal for a trainer to tell a joke or two during a training session for police officers?
A It is.
Q In training police officers, is the trainer supposed to keep their attention?
A They certainly are.
Q Is telling jokes one way that trainers keep the attention of law enforcement officers during training sessions?
A Yes, it is.
Q If an officer tells a joke or two during a training session, in your experience, do you come away from that training session believing that you don't have to follow the training that was provided to you?
A I personally do not.
Q To your knowledge, do other officers disregard training that they receive at training session -- at training sessions because the trainer tells a joke or two?
MR. PHILLIPS: Objection. Form.
A Not to my knowledge.
MR. SMITH: I have nothing more.

REDIRECT EXAMINATION

BY MR. PHILLIPS:

Q I've got a few here when we're talking about training. Okay?

A Yes.

Q You were asked questions about the policies; right?

A Yes.

Q And the policies are supposed to be taught to the police officers in a serious, persuasive, and effective manner; right?

A Yes.

Q Okay. You have the policies. You want those to be taken seriously by the police officers; right?

A Yes.

Q And if the police officers get mixed messages about the seriousness of a policy, that's not a good thing, is it?

MR. SMITH: Objection to form.

A Probably not.

BY MR. PHILLIPS:

Q Okay. I want to go back, talking about mixed messages policy versus other things. Okay?

A Sure.

Q You've got policies that are designed to keep the public safe, to keep officers safe; right?

CERTIFICATE

I, Ann S. Hunsberger, a Notary Public, in and for the County of Elkhart and State of Indiana, hereby certify:

That DAN SKIBINS, appeared before me on Tuesday, September 24, 2024, and was duly sworn or affirmed to testify the truth, the whole truth, and nothing but the truth to questions propounded at the taking of the foregoing deposition in a cause now pending and undetermined in said court;

That I further certify I then and there reported stenographically the proceedings at the said time and place; that the proceedings were then transcribed from my original shorthand notes; and that the foregoing typewritten transcript is a true and correct record thereof;

That I am not a relative, employee, attorney, or counsel; nor a relative or employee of such attorney or counsel for any of the parties hereto, nor am I interested directly or indirectly in the outcome of this action.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Notarial seal this 10th day of October, 2024.

______________________________

Ann S. Hunsberger
Notary Public, State Of Indiana
Residence: Elkhart
My Commission Expires: February 9, 2025