**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| SORAIDA FLORES, as Personal Representative of the Estate of ERICA FLORES, deceased, PLAINTIFF, | ) | |
| v. | ) | Cause No. 2:19-cv-64-PPS |
| CITY OF SOUTH BEND, a municipal corporation, and JUSTIN GORNY, DEFENDANTS. | ) | |

## DEFENDANTS' REPLY TO PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

Defendants CITY OF SOUTH BEND ("South Bend") and JUSTIN GORNY ("Officer Gorny"), by and through their respective undersigned counsel, and pursuant to Northern District of Indiana Local Rule 56-1(c)(2), provide the following reply to Plaintiff's statement of additional material facts (ECF # 151, ¶¶128-337):

**TABLE OF CONTENTS** **PAGE, PARAGRAPH**

Defendants' Interpretive Statement ........ 1

I. Events of July 20, 2018.

A. Gorny Goes Through a Red Light at an Obstructed Intersection at Over 90 MPH and Collides with Erica Flores. ........ 1, ¶128

B. This was a Traffic Stop that Gorny Was Not Assigned To or Asked To Participate. It was Not an Emergency. ........ 10, ¶153

C. Gorny Did Not Activate Continuous Lights and Sirens as Required on Emergency Runs. ........ 13, ¶166

D. Testimony of Police Chief Scott Ruszkowski on Gorny's Conduct. ........ 14, ¶172

E. Gorny was Found to Have Driven Extremely Recklessly and Outside of Policy. ........ 21, ¶194

II. Gorny's Training With South Bend Included a Video which the Head of Training Described Parts as Reckless. ........ 26, ¶205

III. South Bend's Review of Police Pursuits.

A. Captain Schweizer Ran the Pursuit Review Committee. .......................... 38, ¶223

B. Captain Schweizer's Ongoing Criticisms of the Pursuit Review Committee. ........................................................................................................ 40, ¶228

C. Captain Schweizer's 2016 Admonishment against Pursuing for Traffic Violations. ..................................................................................... 50, ¶243

D. Officer Gorny's History of High-Speed Vehicle Operations. .................. 71, ¶267

IV. The Importance of Training and the Risks of Improper and Reckless Training.

A) Captain Herron – The City's 30(b)(6) witness. ...................................... 74, ¶270

Sergeant Calvert – The City's 30(b)(6) witness. .......................................... 78, ¶286

Captain Kathy Fulnecky – The City's 30(b)(6) witness. ............................... 84, ¶308

Assistant Chief Dan Skibins – The City's 30(b)(6) witness. .......................... 86, ¶313

V. South Bend Police Officer Training on Constitutional Violations. ................ 91, ¶329

---

**Defendants' Interpretive Statement:** Consistent with the standards applicable to motions for summary judgment, Defendants view the evidence in the light most favorable to Plaintiff. Accordingly, where Defendants state that a fact is "undisputed," that should be understood to mean only that the fact is undisputed for the purposes of summary judgment. By replying that any fact is "undisputed," Defendants do not admit that the fact is undisputed for all purposes, including trial, and do not waive the right to present contrary evidence at trial.

* * *

## I. EVENTS OF JULY 20, 2018.

### A. GORNY GOES THROUGH A RED LIGHT AT AN OBSTRUCTED INTERSECTION AT OVER 90 MPH AND COLLIDES WITH ERICA FLORES.

128. On July 20, 2018 at 4:30 am Erica Flores, age 23, was driving home from work as a cleaning contractor at Martin's Super Markets. Exhibit DD (Dep. of Soraida Flores, 11:23–12:12). Erica had two daughters, then aged 5 and 6 years old (now 10 and 11 years old). Exhibit DD at 11:8–15. Erica would pick her daughters up at her sister's house after finishing third shift and take them home. Exhibit DD at 106:24–108:19.

**REPLY: Undisputed but immaterial because Officer Gorny was not aware of these facts.**

129. Erica's route home that night included traveling northbound on Kaley Street and travelling through its intersection with Western Avenue in South Bend, Indiana. Answer to Complaint, ¶ 45.

**REPLY: Undisputed but, except for Flores' presence in the intersection of Western Avenue and Kaley Street, immaterial because Officer Gorny was not aware of these facts.**

130. On Western Avenue, the street Gorny traveled leading up to the collision, there was a mix of commercial and residential buildings. Exhibit F at 278:7–18.

REPLY: **Undisputed.**

131. The speed limit on Western Avenue traveling eastbound for Gorny was 30 miles per hour. Exhibit F at 277:9-16.

REPLY: **Undisputed.**

132. Gorny reached speeds up to 98 miles per hour on Western Avenue in the moments leading to the collision, without his siren activated and intermittently using his emergency lights. Exhibit F at 269:9-270:24; 296:20-23; Exhibit [D[1]] at 62:16-19.

REPLY: **Exhibit F at 269:9 – 270:24 is inadmissible. Defendants objected to the questions contained in Exhibit F at 269:9 – 270:24 as to form and outside the scope of the Rule 30(b)(b)(6) deposition notice. The questions contained in Exhibit F at 269:9 – 270:24 concerned Officer Gorny's actions on July 20, 2018. The matters for examination contained in the Rule 30(b)(6) deposition notice concerned South Bend Police Department Pursuit Review Committee, not Officer Gorny's actions on July 20, 2018. *See* Exhibit F-1A. Additionally, this evidence is inadmissible under FRE 1002. In the passage cited by Plaintiff, Captain David Herron was reading from the Crash Data Retrieval report from Officer Gorny's vehicle. The original Crash Data Retrieval report (or a duplicate thereof) is available, *see* ECF #152 at 598, so FRE 1004 (Admissibility of Other Evidence of Content) is inapplicable.**

**In any event, Defendants do not dispute that, about 4 seconds prior to the accident, Officer Gorny was traveling at a speed of 98 miles per hour, that he did not use his siren, and that he did not have his emergency lights on continuously as he drove on Western Avenue prior to the accident.**

**Defendants dispute Paragraph 132 to the extent that it may imply that Officer Gorny was traveling at a speed of 98 miles per hour when the accident occurred because that fact is unsupported by the record. *See* ECF #152 at 598 (Crash Data Retrieval report from Officer Gorny's vehicle).**

133. As Gorny approached the intersection of Western and Kaley at speeds up to 98 miles per hour he knew it was a "bad" and "blind" intersection with obstructed views of northbound on Kaley Street, which was Erica's path of travel. Exhibit [D] at 55:18-58:23.

[1] Citations have been updated in accordance with Plaintiff's errata sheet, ECF #161.

REPLY: **Defendants do not dispute that Officer Gorny has testified that he considered the intersection of Western and Kaley to be a "blind intersection" and has testified that it was a "bad one" with obstructed views.**

**Defendants dispute Paragraph 133 to the extent that it may imply that Officer Gorny knew that Flores was traveling northbound on Kaley Street at the time identified in Paragraph 133. There is no evidence that Officer Gorny knew at the time identified in Paragraph 133 that Flores was traveling northbound on Kaley.**

134. Gorny's view of northbound traffic on Kaley was obstructed by a building as he was driving eastbound on Western. Exhibit D at 58:10-19.

REPLY: **Undisputed.**

135. Gorny had a responsibility to clear any intersection he approached when approaching a red light. Exhibit D at 74:19-25.

REPLY: **Defendants object to Paragraph 135 to the extent that may be read to refer to a legal duty, but do not dispute that Officer Gorny gave such testimony.**

136. Clearing the intersection means ensuring that no other vehicles are passing through when proceeding through the red light. Exhibit D at 75:1-5.

REPLY: **Undisputed.**

137. Gorny failed to clear the intersection. Exhibit E at 46:8-13.

REPLY: **Undisputed.**

138. Officer Alfrey testified it was reckless of Gorny to drive through the intersection at 90 miles an hour without clearing the blind intersection. Exhibit A at 33:10–16.

REPLY: **Defendants object to Paragraph 138 because it is inadmissible under FRE 701, and because the testimony is immaterial in that it does not reflect the undisputed facts of the case. Additionally, Paragraph 138 does not accurately reflect Officer Alfrey's testimony. Officer Alfrey did not testify that Officer Gorny acted recklessly.**

139. Before reaching Western and Kaley, Gorny went through fourteen (14) intersections with only intermittent use of lights and sirens at speeds up to 98 miles per hour.

Exhibit [K] at 29:17–[30:2]. These intersections, and Gorny's intermittent use of lights and sirens, are shown in the following exhibit authenticated by Captain Herron:

Exhibit 5




Exhibit E-5.

**REPLY:** **Undisputed, except to the extent that Paragraph 139 may be read to imply that Officer Gorny went through 14 intersections *before* reaching the intersection of Western and Kaley. The exhibit referenced in Exhibit K at 29:17 – 30:2 shows the intersection of Western and Kaley as the fourteenth intersection. *See* Exhibit K-5C.**

140. In the four seconds before the collision, Gorny approached the intersection at speeds up to 98 miles per hour. Exhibit E at 44:3–6; Exhibit F at 269:9–270:20.

**REPLY:** **Defendants do not dispute that Officer Gorny was traveling at a speed of 98 miles per hour about 4 seconds before the accident. The record establishes that Officer Gorny was not traveling at a speed of 98 miles per hour after that time, *see* ECF #152 at 598, so Defendants dispute Paragraph 140 to the extent that it may be read to imply that he was.**

141. Gorny had a red light as he approached the traffic signal at Kaley and Western. Horvath, Exhibit CC at 73:18–74:9.

**REPLY:** **Undisputed.**[2]

142. Gorny ran a red light at the intersection of Western and Kaley. Exhibit CC at 76:1–5.

**REPLY:** **Undisputed.**

143. Gorny collided with Erica's car at high speed, pushing her car over trees and onto the sidewalk.




[2] Officer Gorny disputes that he entered the intersection against a red light, and reiterates Defendants' interpretive statement, *supra* at 1, that he does not admit that Paragraph 141 or Paragraph 142 is undisputed for the purposes of trial.














Exhibit CC-I.

**REPLY:** **Defendants dispute "trees" because there is no evidence that Flores' vehicle struck more than one tree during the accident, but otherwise undisputed.**

144. Gorny's speed was between 90 and 76 miles per hour at the moment of the collision. Exhibit F at 270:21-24.

**REPLY:** **The evidence cited in Paragraph 144 is inadmissible. Defendants objected to the questions contained in Exhibit F at 270:21-24 as to form and outside the scope of the Rule 30(b)(b)(6) deposition notice. The questions contained in Exhibit F at 270:21-24 concerned Officer Gorny's actions on July 20, 2018. The matters for examination contained in the Rule 30(b)(6) deposition notice concerned South Bend Police Department Pursuit Review Committee, not Officer Gorny's actions on July 20, 2018. *See* Exhibit F-1A. Additionally, this evidence is inadmissible under FRE 1002. In the passage cited by Plaintiff, Captain David Herron was reading from the Crash Data Retrieval report from Officer Gorny's vehicle. The original Crash Data Retrieval report (or a duplicate thereof) is available, *see* ECF #152 at 598, so FRE 1004 (Admissibility of Other Evidence of Content) is inapplicable.**

**Subject to and without waiving said objection, disputed as unsupported by the record. The record establishes that Officer Gorny was traveling at 76 miles per hour at the time of the accident. ECF #152 at 598.**

145. Gorny was accelerating 1.5 seconds prior to impact. Exhibit E at 44–45; Exhibit F at 270–271.

**REPLY:** **The evidence cited in Paragraph 145 is inadmissible.**

**Defendants objected to the questions contained in Exhibit F at 270-271 as to form and outside the scope of the Rule 30(b)(b)(6) deposition notice. The questions contained in Exhibit F at 270-270 concerned Officer Gorny's actions**

**on July 20, 2018. The matters for examination contained in the Rule 30(b)(6) deposition notice concerned South Bend Police Department Pursuit Review Committee, not Officer Gorny's actions on July 20, 2018. *See* Exhibit F-1A. This evidence is therefore inadmissible.**

**Additionally, the evidence cited in Paragraph 145 is inadmissible under FRE 1002. In the passages cited by Plaintiff, Captain David Herron was reading from the Crash Data Retrieval report from Officer Gorny's vehicle. The original Crash Data Retrieval report (or a duplicate thereof) is available, *see* ECF #152 at 598, so FRE 1004 (Admissibility of Other Evidence of Content) is inapplicable.**

**Subject to and without waiving said objections, undisputed.**

146. Nothing necessitated the high speeds Gorny chose to drive that night. Exhibit J at 12:17–13:3.

**REPLY: Paragraph 146 is an inadmissible conclusion of law.**

**Subject to and without waiving said objection, disputed as unsupported by the record. *See* ECF #138, ¶¶12-52.**

147. On the night of the Flores incident, Sheridan was a residential area. Exhibit E at 22:19–21.

**REPLY: Defendants do not dispute that the portion of Sheridan on which Officer Gorny traveled prior to the accident is in a residential area, but this fact is immaterial because the accident did not occur on Sheridan. ECF #1, ¶61.**

148. Gorny knew that residents in the neighborhood along Sheridan, which he took to Western, could be heading to work. Exhibit D at 48:3-19.

**REPLY: Undisputed but immaterial. The accident did not occur on Sheridan. ECF #1, ¶61.**

149. The speed limit on Sheridan was 25 miles per hour. Exhibit E at 276:22–277:4.

**REPLY: Undisputed but immaterial. The accident did not occur on Sheridan. ECF #1, ¶61.**

150. Gorny knew people could be outside at that time and that they might possibly be crossing the street. Exhibit D at 51:20-52:3.

**REPLY:** **Undisputed but immaterial. There is no evidence that anyone was crossing the street.**

151. As Gorny was driving northbound on Sheridan, he was aware of the possibility that people could be in the street---walking their dogs, exercising, or getting into their cars to go to work---and could be killed or seriously injured by a car speeding up Sheridan at 70, 80, or 90 miles per hour. Exhibit D at 54:1-55:8.

**REPLY:** **Undisputed but immaterial. The accident did not occur on Sheridan. ECF #1, ¶61. Nor is there any evidence that Officer Gorny was driving 80 or 90 miles per hour on Sheridan.**

152. Gorny was driving on Sheridan at speeds reaching into the high seventies, with a top speed of 78 miles per hour without using his lights or siren. Exhibit E at 23:17-24:13.

**REPLY:** **Undisputed but immaterial. The accident did not occur on Sheridan. ECF #1, ¶61.**

### B. THIS WAS A TRAFFIC STOP THAT GORNY WAS NOT ASSIGNED TO OR ASKED TO PARTICIPATE. IT WAS NOT AN EMERGENCY.

153. This incident began when Sergeant Hiipakka's "Hot Spot" team attempted to initiate a traffic stop on a vehicle. Exhibit D at 36:17-23; Exhibit G at 15:4-9, Exhibit A at 9:15-18; Exhibit E at 13:15-18.

**REPLY:** **Disputed. "This incident began when" is a characterization of the evidence, not a fact. Plaintiff's characterization of the evidence is also inaccurate because it ignores the evidence of the hot spot investigation, the undercover officers being "made," and the fact that the vehicle was believed to possibly have been involved in a narcotics transaction and was driving erratically as it left the area of the hot spot patrol, which Officer Gorny heard on his radio. *See* ECF #138, ¶¶1-23.**

154. When Gorny joined channel 7, the channel involved in the traffic stop, he was not part of the hot spot team. Exhibit J at 16:1–4.

**REPLY: Undisputed, except to the extent that Paragraph 154 may be read to imply that Officer Gorny was not expected to assist the hot spot team, *see* ECF #138, ¶¶3-10,[3] but immaterial.**

155. Gorny was not requested to assist with this traffic stop. Exhibit A at 32:14-18.

**REPLY: Undisputed, except to the extent that Paragraph 155 may be read to imply that Officer Gorny was not expected to assist the hot spot team, *see* ECF #138, ¶¶3-10, but immaterial.**

156. Gorny decided on his own to respond to this traffic stop without being asked to do so. Exhibit J at 13:16–21.

**REPLY: Undisputed but immaterial.**

157. A traffic stop is not an emergency. Exhibit A at 17:13–15; Exhibit J at 23:16–24:15; Exhibit F at 156:16–18.

**REPLY: Whether a certain set of facts qualifies as an "emergency" under the Fourteenth Amendment is a question of law, so the testimony cited in Paragraph 157 is inadmissible.**

**Subject to and without waiving said objections, disputed as unsupported by the record. None of these witnesses testified that a traffic stop is not an emergency. Disputed to the extent that Paragraph 157 may be read to imply that *all* traffic stops are not emergencies, or to imply that *this* traffic stop was not an emergency. *See* ECF #138, ¶¶1-49, & esp. ¶23, ¶36, ¶41**

158. Gorny was not needed in this traffic stop as the Hot Spot team had plenty of manpower. Exhibit A at 38:14–39:10.

**REPLY: Paragraph 158 is inadmissible under FRE 701 and is irrelevant. Whether a law enforcement officer is "needed" for a traffic stop, and whether there was "plenty of manpower" for a traffic stop are not the constitutional standard.**

**Subject to and without waiving said objections, disputed as not supported by the record. The vehicle traveled more than 1.4 miles before one of the hot spot officers was able to initiate a traffic stop. *See* ECF #138-32. Additionally, whether the Hot Spot team had "plenty of manpower" is a characterization of the evidence, not a fact.**

[3] Plaintiff denies Paragraphs 4 and 10, but, contrary to Plaintiff's representations to the Court, the evidence cited in response to these Paragraphs does not say that officers are not expected to assist with traffic stops in another district.

159. Five (5) officers in three different police vehicles were involved in this traffic stop: Sergeant Hiipakka; Officer Howard; Officer O'Blenis; Officer Alfrey and Officer Wagner. Exhibit E at 25:16–26:3.

REPLY: **Disputed in part as unsupported by the record. Officers Alfrey and Wagner were not involved in the traffic stop, although they followed, observed, and reported on the movements of the vehicle. *See* ECF #138, ¶¶1-48. Otherwise, undisputed.**

160. The traffic stop was not an emergency. Exhibit A at 17:13–15; Exhibit J at 23:16–24:15; Exhibit F at 156:16–18.

REPLY: **Whether a certain set of facts qualifies as an "emergency" under the Fourteenth Amendment is a question of law, so the testimony cited in Paragraph 160 is inadmissible.**

**Subject to and without waiving said objection, disputed as unsupported by the record. *See* ECF #138, ¶¶1-49, & esp. ¶23, ¶36, ¶41.**

161. On the night of the Flores incident, no one from the "Hot Spot" Team called out on the radio that the traffic stop they were attempting was a Signal 10 emergency call. Exhibit [D] at 37:21-38-1.

REPLY: **Undisputed but immaterial.**

162. Before Gorny spoke to the "Hot Spot" team on the radio no one asked him to get involved in this traffic stop. Exhibit [D] at 42:15-24.

REPLY: **Undisputed but immaterial.**

163. None of the other officers involved in the traffic stop described it as anything other than a routine traffic stop. Exhibit [D] at118:10-18.

REPLY: **Disputed as unsupported by the record, *see* ECF #138, ¶¶23-41, but immaterial.**

164. No one told Gorny that this was an emergency or that he should engage in a high-speed vehicle operation. Exhibit A at 16:22-17:15.

REPLY: **Undisputed but immaterial.**

165. The driver that was being followed by the "Hot Spot" team pulled over after Sergeant Hiippaka turned on his lights. Exhibit A at 14:1-5. The driver stated he was late for work and was let go without being issued a ticket. Exhibit A at 14:6-13.

REPLY: **Undisputed but immaterial. The events described in Paragraph 165 occurred after the accident, and were unknown to Officer Gorny.**

**C. GORNY DID NOT ACTIVATE CONTINUOUS LIGHTS AND SIREN AS REQUIRED ON EMERGENCY RUNS.**

166. Gorny did not have his emergency lights and siren activated while traveling northbound on Sheridan before turning onto Western on the night of the Flores incident because he did not consider it an emergency run. [Exhibit D at 122:20-123:7; Exhibit J at 24:16-20.]

REPLY: **Disputed in part as unsupported by the record. Officer Gorny testified that he did not activate his emergency lights and siren while traveling northbound on Sheridan before turning onto Western on the night of the Flores incident because he did not consider it an emergency run *at that time*. *See* Exhibit D at 157:7-13. Additionally, Paragraph 166 is immaterial because the accident did not occur on Sheridan.**

167. Gorny did not activate his emergency lights the entire time he was traveling eastbound on Western, only doing so intermittently. Exhibit D at 62:11-15; Exhibit F at 296:20-23.

REPLY: **Undisputed.**

168. Gorny did not use his siren at all on either Western or Sheridan. Exhibit D at 62:16-19.

REPLY: **Undisputed.**

169. Gorny did not have his emergency lights on when he was four blocks away from Kaley and Western in front of the Taqueria or when he was three blocks away in front of Rosales Supermarket. Exhibit E at 52:1-53:7.

**REPLY: Undisputed.**

170. Based on video footage and all the evidence in the case, Gorny turned on his overhead emergency lights two to three seconds before the impact. Exhibit E at 53:25-54:4.

**REPLY: The evidence cited in Paragraph 170 is inadmissible under FRE 1002. In the passage cited in Paragraph 170, Captain David Herron is testifying about the contents of a video recording. That video recording is available, and FRE 1004 therefore does not apply.**

**Subject to and without waiving said objection, undisputed, except to the extent that Paragraph 170 may be read to imply that this was the first time that Officer Gorny turned on his emergency lights. *See* Paragraph 139 and the Reply thereto.**

171. Gorny must have manually turned off his video camera before the collision automatically turns on when the officer's speed exceeds 80 miles per hour and when emergency lights and sirens are activated. Exhibit F at 287:9-22.

**REPLY: Defendants are unable to reply to Paragraph 171 because it is nonsensical. Defendants dispute that Officer Gorny manually turned off his video camera before the collision. Any such dispute would be immaterial to the legal issues under the Fourteenth Amendment.**

**D. TESTIMONY OF POLICE CHIEF SCOTT RUSZKOWSKI ON GORNY'S CONDUCT.**

172. Chief Ruszkowski testified that Officer Gorny violated the oath of office, which includes the United States constitution and the Indiana constitution. Exhibit J[] at 10:6-10.

**REPLY: Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). The testimony that the oath of office "includes the United States Constitution and the Indiana Constitution" is also inadmissible under FRE 1002. Officer Gorny's Oath of Office is available, and FRE 1004 therefore does not apply. Any reference to the Indiana Constitution is inadmissible under FRE 401 and 403 because violations of state constitutional or statutory provisions are not actionable under 42 U.S.C. § 1983. *J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003). This evidence is also inadmissible under FRE 701 and FRE 802.**

**Subject to and without waiving said objections, it is undisputed that Chief Ruszkowski testified as indicated in Paragraph 172, but this fact is immaterial.**

173. Chief Ruszkowski testified that after reviewing all of the materials in this case that his office of professional standards gave him, internal affairs, going to the scene, and looking at all of the other evidence, he came to the conclusion that Officer Gorny did not operate the South Bend police car in a careful, prudent, or safe manner. In fact, it was his conclusion that Officer Gorny operated the vehicle in an imprudent and improper manner. It was his conclusion that Officer Gorny did not drive with due regard and attention to the safety of others or himself. Exhibit J at 10:20-11:10.

**REPLY:** **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). This testimony is also inadmissible under FRE 701 and 802.**

**Subject to and without waiving said objections, it is undisputed that Chief Ruszkowski testified as indicated in Paragraph 173, but this fact is immaterial.**

174. Chief Ruszkowski testified that based on his review of the information, Officer Gorny did not drive with due regard for others, including himself. Officer Gorny had no attention to others, attention to himself, care and concern, no. Not for anybody or himself. Exhibit J at 11:21-12:2.

**REPLY:** **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). This evidence is inadmissible under FRE 701 and FRE 802. This evidence is inadmissible under FRE 1002. In the passage cited in Paragraph 170, Chief Ruszkowski was asked questions about the contents of the transcript of his testimony at the Board of Public Safety hearing on the termination of Gorny's employment. That transcript is available, *see* Ex. L, and FRE 1004 therefore does not apply. Moreover, Chief Ruszkowski did not testify in his deposition that he gave that testimony at the Board of Public Safety hearing. He testified that he did not remember but he had no reason to dispute Plaintiff's attorney's representation about the content of that transcript, so this evidence is inadmissible under FRE 401, as well.**

**Subject to and without waiving said objection, disputed as unsupported by the record, but immaterial.**

175. Chief Ruszkowski testified that he believed that Mr. Gorny did not drive with due regard for the safety of others, attention to himself, care and concern for anybody. Exhibit J at 12:11-16.

REPLY: **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). This evidence is also inadmissible under FRE 701 and FRE 802.**

**Subject to and without waiving said objections, it is undisputed that Chief Ruszkowski testified as indicated in Paragraph 175, but this fact is immaterial.**

176. Chief Ruszkowski testified that from his position as the chief of police, he agreed that there was nothing in the radio transcript that necessitated the high speeds that Officer Gorny chose that night. Exhibit J at 12:24-13:3.

REPLY: **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). This evidence is also inadmissible under FRE 701 and FRE 802.**

**Subject to and without waiving said objections, it is undisputed that Chief Ruszkowski testified as indicated in Paragraph 176, but this fact is immaterial.**

177. Chief Ruszkowski testified that it was his professional conclusion that Officer Gorny violated the training safety standards and practices while operating his vehicle in an improper manner and his actions and his decisions contributed to this incident and the collision with Mrs. Flores. Exhibit J at 13:4-10.

REPLY: **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). This evidence is also inadmissible under FRE 701 and FRE 802.**

**Subject to and without waiving said objections, it is undisputed that Chief Ruszkowski testified as indicated in Paragraph 177, but this fact is immaterial.**

178. Chief Ruszkowski testified that he concluded after reviewing all of the materials in this case that this was simply a response to a traffic stop and that it ultimately resulted in a collision. Exhibit J at 13:11-15.

**REPLY:** **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). This evidence is also inadmissible under FRE 701 and FRE 802.**

**Subject to and without waiving said objections, it is undisputed that Chief Ruszkowski testified as indicated in Paragraph 178, but this fact is immaterial.**

179. Chief Ruszkowski testified that he believed that the police officers involved in this traffic stop called out that they needed a vehicle stopped, and Officer Gorny without being asked to respond, decided on his own to respond to that traffic stop. Exhibit J at 13:16-21.

**REPLY:** **This testimony is inadmissible hearsay and lacks foundation. In the passage cited in Paragraph 179, Chief Ruszkowski is not testifying from personal knowledge, but is stating facts that he learned from other, unidentified sources.**

**Subject to and without waiving said objections, it is undisputed the Chief Ruszkowski testified as indicated in Paragraph 179, but this fact is immaterial.**

180. Chief Ruszkowski testified under oath at the public hearing (Page 282) on November 5, 2018:

Q: Was he assigned to monitor the hot spot channel?

A: No.

Exhibit J at 15:20-25.

**REPLY:** **This testimony is inadmissible hearsay and lacks foundation. In the passage cited in Paragraph 180, Chief Ruszkowski is not testifying from personal knowledge, but is stating facts that he learned from other, unidentified sources. Additionally, this testimony is inadmissible under FRE 1002. In the passage cited in Paragraph 180, Chief Ruszkowski was asked questions about the contents of the transcript of his testimony at the Board of Public Safety hearing on the termination of Gorny's employment. That transcript is available, *see* Ex. L, and FRE 1004 therefore does not apply.**

**Subject to and without waiving said objections, it is undisputed that Chief Ruszkowski testified as indicated in Paragraph 180, but this fact is immaterial.**

181. Chief Ruszkowski testified that Officer Gorny was not even assigned to monitor the hot spot channel. Exhibit J at 16:8-11.

**REPLY:** **This testimony is inadmissible hearsay and lacks foundation. In the passage cited in Paragraph 181, Chief Ruszkowski is not testifying from personal knowledge, but is stating facts that he learned from other, unidentified sources.**

**Subject to and without waiving said objections, it is undisputed the Chief Ruszkowski testified as indicated in Paragraph 181, but this fact is immaterial.**

182. Chief Ruszkowski testified that using street maps that were part of his investigation, he concluded that Officer Gorny used excessive speed, and he operated his lights and sirens intermittently. He further concluded that Officer Gorny turned his emergency lights on and off on a couple of different occasions. Exhibit J at 17:24-18:7.

**REPLY:** **This testimony is inadmissible hearsay. In the passage cited in Paragraph 182, Chief Ruszkowski is not testifying from personal knowledge, but is stating facts that he learned from other sources. Additionally, this testimony is inadmissible under FRE 1002. In the passage cited in Paragraph 182, Chief Ruszkowski was testifying about the contents of maps that were created during South Bend's internal investigation of this accident. Those maps are available, although they have not been made a part of the record,[4] and FRE 1004 therefore does not apply. Chief Ruszkowski's opinion that Officer Gorny used excessive speed is inadmissible under FRE 701 and because evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006).**

**Subject to and without waiving said objections, it is undisputed that Chief Ruszkowski testified as indicated in Paragraph 182, but this fact is immaterial.**

183. Chief Ruszkowski testified that it was his conclusion and impression after reviewing all of the materials that all of the policy violations that Officer Gorny engaged in that night contributed to that collision. Exhibit J at 20:18-21:3.

**REPLY:** **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). This evidence is also inadmissible under FRE 701 and FRE 802.**

**Subject to and without waiving said objections, it is undisputed that Chief Ruszkowski testified as indicated in Paragraph 183, but this fact is immaterial.**

[4] Plaintiff's Exhibit E-5, *see* ECF #160-33, was not created during the internal investigation of this accident. It was created by Plaintiff's Counsel using the maps that were created by South Bend during the internal investigation of this accident.

184. Chief Ruszkowski testified that it was his conclusion and impression that Officer Gorny's actions led to this accident which was preventable. He testified that Officer Gorny contributed to an accident that could have been prevented. He testified that it was his conclusion that Officer Gorny's actions and decisions contributed to this accident, this collision. Exhibit J at 22:6-14.

**REPLY:** **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). This evidence is also inadmissible under FRE 701 and FRE 802.**

**Subject to and without waiving said objections, it is undisputed that Chief Ruszkowski testified as indicated in Paragraph 184, but this fact is immaterial.**

185. Chief Ruszkowski testified that it is the policy of South Bend that when operating vehicles in emergency mode the law holds officers legally responsible to drive with due regard for the safety of all people. Exhibit J at 25:4-8.

**REPLY:** **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). This evidence is also an inadmissible conclusion of law.**

**Subject to and without waiving said objections, it is undisputed that Chief Ruszkowski testified as indicated in Paragraph 185, but this fact is immaterial.**

186. Chief Ruszkowski testified that in the five seconds prior to this occurrence Officer Gorny's speed was as high as ninety-eight miles per hour. Exhibit J at 25:13-16.

**REPLY:** **This testimony is inadmissible hearsay and lacks foundation. In the passage cited in Paragraph 186, Chief Ruszkowski is not testifying from personal knowledge, but is stating facts that he learned from other, unidentified sources.**

**Subject to and without waiving said objections, it is undisputed the Chief Ruszkowski testified as indicated in Paragraph 186, but this fact is immaterial..**

187. Chief Ruszkowski testified that it was his conclusion that Officer Gorny did not sufficiently decrease his speed to a safe level before proceeding into that intersection where this collision occurred. Exhibit J at 25:17-21.

REPLY: **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). This evidence is also inadmissible under FRE 701 and FRE 802.**

**Subject to and without waiving said objections, it is undisputed that Chief Ruszkowski testified as indicated in Paragraph 187, but this fact is immaterial.**

188. Chief Ruszkowski testified that if an officer turns on his emergency lights there should be video footage of that time. Exhibit J at 29:22-25.

REPLY: **Undisputed but immaterial.**

189. Chief Ruszkowski testified that Officer Gorny received training at the academy through the City of South Bend to drive over fifty miles an hour. Exhibit J at 42:23-43:2.

REPLY: **Undisputed.**

190. Chief Ruszkowski testified that the department's pursuit policy set out the reasoning and criteria for discontinuing emergency vehicle operations prior to July of 2018. Exhibit J at 46:8-13.

REPLY: **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006).**

**Subject to and without waiving said objection, it is undisputed that Chief Ruszkowski testified that there was a South Bend Police Department policy prior to July of 2018 with regard to discontinuing an emergency call response, but this fact is immaterial.**

191. Chief Ruszkowski testified that he did not know what Officer Gorny's thought process was regarding turning the traffic stop into an emergency call, but that he disagreed with it, regardless of what it was. Exhibit J at 61:3-9.

REPLY: **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). This evidence is also inadmissible under FRE 701 and FRE 802.**

**Subject to and without waiving said objections, it is undisputed that Chief Ruszkowski testified as indicated in Paragraph 191, but this fact is immaterial.**

192. Chief Ruszkowski testified that from Sample to Western on Sheridan is primarily residential, and that on Western from Sheridan to Kaley is mostly business with some residential. Exhibit J at 63:7-12.

REPLY: **Undisputed, but immaterial as to Sheridan. The accident did not occur on Sheridan.**

193. Chief Ruszkowski testified that Exhibit 29 was a letter he submitted to the board of public safety. Exhibit J at 65:5-9.

REPLY: **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006).**

**Subject to and without waiving said objection, undisputed but immaterial.**

### E. GORNY WAS FOUND TO HAVE DRIVEN EXTREMELY RECKLESSLY AND OUTSIDE OF POLICY.

194. The South Bend Board of Public Safety specifically found that Gorny was not engaged in an emergency response at the time of the collision. Exhibit FF (Findings of Fact., ¶¶ 24-27, CITY 0099.)

REPLY: **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). This evidence is also inadmissible under FRE 701 and FRE 802.**

**Subject to and without waiving said objections, undisputed but immaterial.**

195. The Board found that Gorny's speed on Western over the 10 blocks between Sheridan and Kaley was excessive under the circumstances. ([Exhibit FF], ¶ 18, CITY 0098.)

REPLY: **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). This evidence is also inadmissible under FRE 701 and FRE 802.**

**Subject to and without waiving said objections, Paragraph 195 does not accurately reflect the evidence cited. Paragraph 18 of the Board of Public Safety Findings of Fact reads: "Over the 10 blocks Gorny travelled on Western Ave. between Sheridan and Kaley St. he reached a speed of 98 mph, which was excessive under the circumstances." In any event, the facts contained in Paragraph 195, or any disputes about such facts, are immaterial.**

196. The Board found that Gorny failed to operate his vehicle with due regard for the safety of other motorists, bicyclists or pedestrians by failing to slow and clear the intersection along his route of travel, most particularly the intersection of Western and Kaley. ([Exhibit FF], ¶¶ 28-298 [*sic*], CITY 0099; ¶ 4, CITY 0100.)

**REPLY:** **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). This evidence is also inadmissible under FRE 701 and FRE 802.**

**Subject to and without waiving said objections, Paragraph 196 does not accurately reflect the evidence cited. Regarding Officer Gorny's driving on July 20, 2018, the Board found: "The evidence supports the inference that Gorny did not slow and clear the intersections along his route of travel, most particularly the intersection of Western Ave. with Kaley St." In any event, the facts contained in Paragraph 196, or any disputes about such facts, are immaterial.**

197. The Board of Public Safety found that Gorny's operation of his patrol car on July 20, 2018 "in an unsafe (and extremely reckless) manner" violated standards of conduct and contributed to this collision. ([Exhibit FF], ¶ 2, CITY 0100.)

**REPLY:** **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). This evidence is also inadmissible under FRE 701 and FRE 802.**

**Subject to and without waiving said objections, undisputed but immaterial.**

198. The Board ultimately concluded that "the actions of Gorny on July 20, 2018 constituted both violations of the South Bend Police Policy Manual and a significant and reckless deviation from the standards of the South Bend Police Department for the safety of its officers and

the citizens of South Bend" and recommended Gorny be terminated from his employment. ([Exhibit FF], CITY 0100.)

**REPLY:** **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). This evidence is also inadmissible under FRE 701 and FRE 802.**

**Subject to and without waiving said objections, Paragraph 198 does not accurately reflect the evidence cited. The Board decision was not a recommendation. In any event, the facts stated in Paragraph 198, or any disputes about such facts, are immaterial.**

199. Gorny violated five different South Bend police department policies during this event, including policy relating to emergency calls, speed, manner of driving in emergency mode, turning his lights on and off, and general lack of due regard to public safety. Exhibit E at 17:7-17; Exhibit E-22; Exhibit J at 27:1–9.

**REPLY:** **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). Additionally, Exhibit E-22 is not an authentic reproduction of South Bend Police Department policy. This evidence is also inadmissible under FRE 701 and FRE 802.**

**Subject to and without waiving said objections, undisputed but immaterial.**

200. Chief Ruszkowski stated the following conclusion in his termination letter to Officer Gorny: Officer Gorny violated Section 320.5.8 (i and j):

1. **320.5.8 (i and j) Performance**
   *"(i) Any act on or off-duty that brings discredit to this department.*
   *(j) Shall operate departmental vehicles in a careful and prudent manner and shall obey state laws or departmental orders pertaining to such operation."*

Exhibit GG (CITY 0093).

**REPLY:** **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). This evidence is also inadmissible under FRE 701 and FRE 802.**

**Subject to and without waiving said objections, Paragraph 200 does not accurately reflect the evidence cited therein. The evidence cited in Paragraph**

**200 is from Chief Ruszkowski's letter to the Board of Public Safety, which was attached to his August 20, 2018 letter to Officer Gorny. In any event, the facts stated in Paragraph 200, or any disputes about such facts, are immaterial.**

201. Chief Ruszkowski stated the following conclusion in his termination letter to Officer Gorny: Officer Gorny violated Section 320.5.10 (a, f, and g):

**2. 320.5.10 (a, f, and g) Safety**
*"(a) Failure to observe or violating department safety standards or safe working practices.*
*(f) Unsafe or improper driving habits or actions in the course of employment or appointment, and at any time while using a city vehicle.*
*(g) Any personal action contributing to a preventable accident."*

Exhibit GG (CITY 0093).

**REPLY:** **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). This evidence is also inadmissible under FRE 701 and FRE 802.**

**Subject to and without waiving said objections, Paragraph 201 does not accurately reflect the evidence cited therein. The evidence cited in Paragraph 201 is from Chief Ruszkowski's letter to the Board of Public Safety, which was attached to his August 20, 2018 letter to Officer Gorny. Notwithstading, the facts stated in Paragraph 201, or any disputes about such facts, are immaterial.**

202. Chief Ruszkowski stated the following conclusion in his termination letter to Officer Gorny: Officer Gorny violated Section 1008.3:

**3. 1008.3 Wearing of Safety Restraints**
*"All members shall wear properly adjusted safety restraints when operating or riding in a seat equipped with restraints, in any vehicle owned, leased or rented by this department while on- or off-duty, or in any privately owned vehicle while on-duty. The member driving such a vehicle shall ensure that all other occupants, including those who are not members of the Department, are properly restrained."*

Exhibit GG (CITY 0094).

**REPLY:** **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). This evidence is also inadmissible under FRE 701 and FRE 802.**

**Subject to and without waiving said objections, Paragraph 202 does not accurately reflect the evidence cited therein. The evidence cited in Paragraph**

**202 is from Chief Ruszkowski's letter to the Board of Public Safety, which was attached to his August 20, 2018 letter to Officer Gorny. In any event, the facts contained in Paragraph 202, or any disputes about such facts, are immaterial.**

203. Chief Ruszkowski stated the following conclusion in his termination letter to Officer Gorny: Officer Gorny violated Section 308.3.1:

> **4. 308.3.1 Emergency Calls**
> *"Officers responding to an emergency call shall proceed immediately and shall continuously operate the emergency vehicle lighting and siren as required by law (I.C. 9-21-1-8). Even when operating a vehicle in emergency mode, the law holds officers legally responsible to drive with due regard for the safety of all people."*

Exhibit GG (CITY 0094).

REPLY: **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). This evidence is also inadmissible under FRE 701 and FRE 802.**

**Subject to and without waiving said objections, Paragraph 203 does not accurately reflect the evidence cited therein. The evidence cited in Paragraph 203 is from Chief Ruszkowski's letter to the Board of Public Safety, which was attached to his August 20, 2018 letter to Officer Gorny. In any event, the facts contained in Paragraph 203, or any disputes about such facts, are immaterial.**

204. Chief Ruszkowski stated the following conclusion in his termination letter to Officer Gorny: Officer Gorny violated Section 308.5:

> **5. 308.5 Safety Considerations**
> *"Officers responding to an emergency call shall proceed immediately as appropriate and shall continuously operate the emergency vehicle lighting and siren as required by law (I.C. 9-13-2-6(1)(B)).*

Exhibit [GG] (CITY 0094).

REPLY: **Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). This evidence is also inadmissible under FRE 701 and FRE 802.**

**Subject to and without waiving said objections, Paragraph 204 does not accurately reflect the evidence cited therein. The evidence cited in Paragraph 204 is from Chief Ruszkowski's letter to the Board of Public Safety, which was**

**attached to his August 20, 2018 letter to Officer Gorny. In any event, the facts contained in Paragraph 204, or any disputes about such facts, are immaterial.**

## II. GORNY'S TRAINING WITH SOUTH BEND INCLUDED A VIDEO WHICH THE HEAD OF TRAINING DESCRIBED PARTS AS RECKLESS.

205. Officer Gorny was required to do two (2) hours of emergency vehicle operation (EVO) training every year at South Bend. Exhibit [D] at 133:5-10. He watched a training video during EVO in-services in 2016, 2017 and 21018 [*sic*]. Exhibit [D] 133:5-134:[14]; 135:15-136:24. This video was created before the Flores incident and was shown to South Bend police officers over multiple years, including 2013, 2014, 2015, and 2016. Exhibit C 83:18-86:7; Exhibit C-5C.

**REPLY: The first sentence of Paragraph 205 is undisputed. The second sentence of Paragraph 205 is undisputed as to 2016 and 2017. The second sentence of Paragraph 205 is disputed as to 2018. There is no evidence that Officer Gorny watched the EVO training video in 2018, but any such dispute would be immaterial. The third sentence of Paragraph 205 is undisputed.**

206. South Bend showed Gorny the same video three years in a row. Exhibit [D] at 141:3-8. South Bend officers joked about watching the same video every year. Exhibit [D] at 142:12-21.

**REPLY: The first sentence of Paragraph 205 is undisputed. The second sentence of Paragraph 205 is undisputed but immaterial.**

207. The Emergency vehicle operations (EVO) video in-service lasted less than the two hours indicated on Gorny's training history record. Exhibit D at 136:1-11.

**REPLY: Undisputed as to Officer Gorny's EVO training on October 16, 2017. Disputed as to Officer Gorny's EVO training on October 18, 2016 and April 3, 2017. Officer Gorny's training records indicate that the April 5, 2016, October 18, 2016, and April 3, 2017 EVO training were 1 hour in duration. *See* ECF #138-25 at 176-78. In any event, any such disputes are immaterial.**

208. Nothing from the EVO classroom videos in 2016, 2017, or 2018 helped Gorny handle high stress driving situations. Exhibit D at 138:2-6.

**REPLY:** **Defendants do not dispute that Officer Gorny gave this testimony or had this subjective state of mind. However, Paragraph 208 is immaterial to Plaintiff's claim against South Bend.**

209. This was the last training video Gorny saw before the Flores incident. Exhibit C at 63:22-64:2.

**REPLY:** **Undisputed but immaterial.**

210. The video included the following passage from one of South Bend's Emergency vehicle operations instructors:

> **We chase them around, up and down side streets, all the time, lots of people, lots of cars, lots of intersections, lots of stop signs. We chase them to the city limits where, God Bless 'em, there's just corn fields; right? And that's where we stop. Cause we left our jurisdiction; right?**

Exhibit C at 32:21-34:21.



Exhibit C-5-B.

REPLY: **The passage quoted in Paragraph 210 is incomplete and misleadingly taken out of context. This statement was made in the context of training officers to be thinking about when to terminate a pursuit. The trainer's complete statement is:**

> **We're on page 3. Pursuit driving. An attempt by a police officer in an emergency vehicle, in emergency mode—lights and sirens—trying to apprehend a person in another [inaudible] vehicle who is willfully failing to stop. Same as emergency driving, except for the officer only has the control to continue or stop the pursuit.**
>
> **That's always the topic in all pursuits is, do you continue, how long do you continue? In the City of South Bend, we chase them around, up and down side streets all the time, lots of people, lots of cars, lots of intersections, lots of stop signs. We chase them to the city limits where, God bless 'em, there's just corn fields, right? And that's when we stop, because we left our jurisdiction, right? Technically, it's more dangerous in the city, correct? More people, more cars.**

> **Midnight officers? First time I got a pursuit on midnights, wow, that's a whole different world. I'm an afternoons boy. I went to afternoons all my life. Went to midnights. They just blow through this red light—the stop signs on midnights. I kept stopping, couldn't figure out why I couldn't keep up with them.**

**Exhibit C-101 (part 1) at 8:35 through 9:35.**

**In addition to being stated out of context, the trainer's statement does not reflect any violation of generally-accepted law enforcement standards. Plaintiff's expert agrees that pursuits can happen on side streets, can pass other cars, can pass other people, can go through intersections, can go through stop signs, although officers should be clearing them. Exhibit H at 203:9-24. Plaintiff's expert agrees that there is no law enforcement standard requiring police officers to continue a pursuit that leaves their jurisdiction. Exhibit H at 204:4-8. Plaintiff's expert agrees that some agencies have policies *prohibiting* their officers from pursuing someone into another jurisdiction. Exhibit H at 204:9-12. Plaintiff's expert agrees that the trainer did not say what speed the South Bend officers were going in these pursuits, except for saying that South Bend officers were limited to within 60 miles per hour on pursuits. Exhibit H at 206:11-15.[5] Plaintiff's expert agrees that the trainer did not say that they were not clearing intersections. Exhibit H at 206:16-19. The video in fact indicates the opposite, when the trainer stated that, when he pursued someone on midnights, he could not keep up with them because the trainer was stopping at the stop signs.**

**Additionally, the testimony cited in Paragraph 210 is inadmissible under FRE 1002. In the passage cited by Plaintiff, Captain Kathy Fulnecky was describing the contents of a video recording. The original video recording (or a duplicate thereof) is available, *see* Exhibit C-5-B, so FRE 1004 (Admissibility of Other Evidence of Content) is inapplicable.**

**Subject to and without waiving said objections, undisputed, but the facts stated in Paragraph 210, or any disputes about such facts, are immaterial.**

211. Captain Kathy Fulnecky oversees the training department, ensuring that all officers are up to date with their training and arranging any necessary remedial training. (Exhibit F at 180:11-181:5). At the time of the Flores incident, Captain Fulnecky was a lieutenant in the training department. (Exhibit F at 180:11-181:5).

---

[5] This "60 miles per hour" statement has caused some confusion. South Bend policies do not contain a specific speed limitation. In any event, whether South Bend policies contained a specific speed limitation is not a material fact.

REPLY: **Undisputed.**

212. Captain Fulnecky, the City's designated Rule 30(b)(6) representative on the training videos, did not know the above statement was being made to South Bend Police Department officers during Emergency vehicle operations training. Exhibit C at 32:21-33:16. She considered it to be improper, reckless and potentially dangerous. Exhibit C at 83:18-86:14. Had she known, she would have requested its removal from the training video. Exhibit C at 33:12-34:4.

REPLY: **This evidence is inadmissible under FRE 701 and is inadmissible speculation. This evidence is also irrelevant because Captain Fulnecky is not the policymaker for the South Bend Police Department. The Board of Public Safety is the policymaking body for the South Bend Police Department, and there is no evidence that the Board of Public Safety was aware of the statements in the training video.**

**Subject to and without waiving said objections, it is undisputed that Captain Fulnecky testified as indicated in Paragraph 212, but this fact is immaterial. Captain Fulnecky is not the policymaker for the South Bend Police Department. The Board of Public Safety is the policymaking body for the South Bend Police Department, and there is no evidence that the Board of Public Safety was aware of the statements in the training video.**

213. The casual nature of this statement had the potential to influence emergency vehicle operations and traffic stops, giving the impression that such actions were permissible. Exhibit C at 35:12-36:23. This statement could have suggested to Gorny that it was acceptable to chase people at high speeds through intersections, stop signs, and side streets, without considering termination. Exhibit C at 34:12-35:19.

REPLY: **"[C]asual nature" is a characterization of the evidence, not a fact. The evidence cited in Paragraph 213 is inadmissible under FRE 701 and is inadmissible speculation. Additionally, there is no foundation for Captain Fulnecky's testimony at Exhibit C at 36:11-23. The transcript does not identify what video was played or the content of the video that was played, so it is impossible to identify what Captain Fulnecky was testifying about in that passage.**

**Subject to and without waiving said objections, disputed. The transcript does not identify what video was played or the content of the video that was played, so it is impossible to identify what Captain Fulnecky was testifying about in**

**that passage. *See* also the Reply to Paragraph 210. In any event, the facts stated in Paragraph 213, or any disputes about such facts, are immaterial.**

214. The instructor who made this reckless statement was not reprimanded and Captain Fulnecky was unaware of any action taken to correct the statement. Exhibit C at 36:3-10, 37:7-10.

REPLY: **"[R]eckless" is a characterization of the evidence, not a fact. The evidence cited in Paragraph 214 is inadmissible. The Board of Public Safety is the policymaking body for the South Bend Police Department, and there is no evidence that the Board of Public Safety was aware of the statements in the training video. Even if the policymaker for the South Bend Police Department was aware of the statements in the training video, this evidence would still be irrelevant and inadmissible because South Bend did not have a pattern of its police officers depriving citizens of their substantive due process rights under similar circumstances. Additionally, there is no foundation for Captain Fulnecky's testimony at Exhibit C at 37:7-10. The transcript does not identify what video was played or the content of the video that was played, so it is impossible to identify what Captain Fulnecky was testifying about in that passage.**

**Subject to and without waiving said objections, the facts stated in Paragraph 214 are undisputed but immaterial. The Board of Public Safety is the policymaking body for the South Bend Police Department, and there is no evidence that the Board of Public Safety was aware of the statements in the training video. Even if the policymaker for the South Bend Police Department was aware of the statements in the training video, this fact would still be immaterial because South Bend did not have a pattern of its police officers depriving citizens of their substantive due process rights under similar circumstances.**

215. Sergeant Corey Calvert, the City's designated Rule 30(b)(6) representative on training, testified that he would never teach police officers this statement. Exhibit B at 108:13-16; Exhibit C-5A. He thought this statement was potentially dangerous and could be perceived as reckless. Exhibit B at 109:15-110:1; 113:20-23; 114:17-115:6.

REPLY: **The evidence cited in Paragraph 215 is inadmissible under FRE 701 and because it is inadmissible speculation. The evidence cited in Paragraph 215 is also inadmissible because the Board of Public Safety is the policymaking body for the South Bend Police Department, and there is no evidence that the Board of Public Safety was aware of the statements in the training video. Even if the policymaker for the South Bend Police Department was aware of the statements in the training video, this evidence would still be irrelevant and inadmissible because South Bend did not have a pattern of its police officers**

**depriving citizens of their substantive due process rights under similar circumstances. Additionally, there is no foundation for Sergeant Calvert's testimony at Exhibit B at 113:20-23. The transcript does not identify what video was played or the content of the video that was played, so it is impossible to identify what Sergeant Calvert was testifying about in that passage.**

**Subject to and without waiving said objections, it is undisputed that Sergeant Calvert testified as indicated in Paragraph 215, but this evidence is immaterial. The Board of Public Safety is the policymaking body for the South Bend Police Department, and there is no evidence that the Board of Public Safety was aware of the statements in the training video. Even if the policymaker for the South Bend Police Department was aware of the statements in the training video, this fact would still be immaterial because South Bend did not have a pattern of its police officers depriving citizens of their substantive due process rights under similar circumstances.**

216. Sergeant Calvert testified that innocent people could die needlessly if the teachings in Exhibit 5-A were reflective of the instruction provided by the South Bend Police Department. Exhibit C at 117:3-8.

**REPLY:** **The evidence cited in Paragraph 216 is inadmissible under FRE 701 and because it is inadmissible speculation. The evidence cited in Paragraph 216 is also inadmissible because the Board of Public Safety is the policymaking body for the South Bend Police Department, and there is no evidence that the Board of Public Safety was aware of the statements in the training video. Even if the policymaker for the South Bend Police Department was aware of the statements in the training video, this evidence would still be irrelevant and inadmissible because South Bend did not have a pattern of its police officers depriving citizens of their substantive due process rights under similar circumstances.**

**Subject to and without waiving said objections it is undisputed that Sergeant Calvert testified as indicated in Paragraph 216, but this evidence is immaterial. The Board of Public Safety is the policymaking body for the South Bend Police Department, and there is no evidence that the Board of Public Safety was aware of the statements in the training video. Even if the policymaker for the South Bend Police Department was aware of the statements in the training video, this fact would still be immaterial because South Bend did not have a pattern of its police officers depriving citizens of their substantive due process rights under similar circumstances.**

217. That same Emergency vehicle operations training video contained a victim impact statement from a woman who described losing her two children in an unnecessary high speed

police pursuit. Exhibit C at 37:16-39, Exhibit C-5C. This message was intended to be serious, impactful, and persuasive and to make officers consider the consequences before operating a vehicle at high speeds. Exhibit C at 37:16-39:1.

REPLY: **The testimony cited at Exhibit C at 37-16 – 39:1 is inadmissible. There is no foundation for Captain Fulnecky's testimony that the video "was intended to be serious, impactful, and persuasive and to make officers consider the consequences before operating a vehicle at high speeds." Any testimony that Captain Fulnecky could give about the intent of the creators of the victim impact video is speculation.**

**Subject to and without waiving said objections, the first sentence of Paragraph 217 is undisputed except for "in an unnecessary high speed police pursuit." The victim impact video indicates that the accident occurred when a police officer was driving too fast and distracted when responding to an emergency call, not during a pursuit. Additionally, the video does not describe the officer's emergency response as "unnecessary." That is a characterization supplied by Plaintiff. The second sentence of Paragraph 217 is undisputed.**

218. At the conclusion of the woman's video statement, the same instructor commented, "I have bored you into oblivion," which the head of training for South Bend police department acknowledged could send the message that high-speed vehicle operations are not that serious. Exhibit C at 40:14-41:11.

REPLY: **The evidence cited in Paragraph 218 is inadmissible under FRE 701 and is inadmissible speculation. The evidence cited in Paragraph 218 is also inadmissible under FRE 1002. In the testimony cited in Paragraph 218, Sergeant Calvert was responding to questions posed by Plaintiff's counsel about the content of a training video. That training video is available, *see* Exhibit C-101, so FRE 1004 is inapplicable. Additionally, Paragraph 218 does not accurately reflect the evidence cited. The evidence of this statement is also incomplete and misleadingly taken out of context. The trainer's complete statement following the victim impact video is:**

> **Thanks. Yeah, it was sombering. Any questions, thoughts, processes? You've been a great audience, and I've bored you into oblivion for an hour and a half here now. I appreciate your time and effort in staying awake. Thank you.**

**Exhibit C-101 (part 3) at 20:15 through 20:40.**

**The evidence cited in Paragraph 218 is also irrelevant and inadmissible because the Board of Public Safety is the policymaking body for the South Bend Police Department, and there is no evidence that the Board of Public Safety was aware of the statements in the training video. Even if the policymaker for the South Bend Police Department was aware of the statements in the training video, this evidence would still be irrelevant and inadmissible because South Bend did not have a pattern of its police officers depriving citizens of their substantive due process rights under similar circumstances.**

**Disputed and immaterial. Paragraph 218 does not accurately reflect the trainer's statement. Additionally, Paragraph 218 is immaterial. The Board of Public Safety is the policymaking body for the South Bend Police Department, and there is no evidence that the Board of Public Safety was aware of the statements in the training video. Even if the policymaker for the South Bend Police Department was aware of the statements in the training video, this fact would still be immaterial because South Bend did not have a pattern of its police officers depriving citizens of their substantive due process rights under similar circumstances. In any event, any disputes about the facts stated in Paragraph 218 are immaterial.**

219. Sergeant Calvert does not believe the EVO instructor's comment about being bored is the right message to officers. Exhibit B at127:9-21. He believes the message should have been communicated differently. Exhibit B at 125:23-126:24.

REPLY: **The evidence cited in Paragraph 219 is inadmissible under FRE 701. The evidence is also irrelevant and inadmissible because the Board of Public Safety is the policymaking body for the South Bend Police Department, and there is no evidence that the Board of Public Safety was aware of the statements in the training video. Even if the policymaker for the South Bend Police Department was aware of the statements in the training video, this evidence would still be irrelevant and inadmissible because South Bend did not have a pattern of its police officers depriving citizens of their substantive due process rights under similar circumstances.**

**In any event, it is undisputed that Sergeant Calvert testified as indicated in Paragraph 219, but his testimony is immaterial. The Board of Public Safety is the policymaking body for the South Bend Police Department, and there is no evidence that the Board of Public Safety was aware of the statements in the training video. Even if the policymaker for the South Bend Police Department was aware of the statements in the training video, this fact would still be immaterial because South Bend did not have a pattern of its police officers depriving citizens of their substantive due process rights under similar circumstances. In any event, the facts stated in Paragraph 219, or any disputes about such facts, are immaterial.**

220. Before the Flores incident, Gorny engaged in a high-speed emergency vehicle pursuit whose maximum speed he later misrepresented or misperceived by close to thirty (30) miles per hour:

FOR ATTORNEY EYES ONLY

South Bend Police Department

Pursuit Review

| | |
|---|---|
| Case # | 16-16914 |
| Officer | Gorny / Kukla |
| Supervisor | |
| Date of Incident | 9/19/2016 |
| Time of Incident | 2338 |
| Vehicle and Pedestrian Traffic | Moderat |
| Speed | 114 |
| Road Conditions | DRY |
| Weather | CLEAR |
| Reason for Pursuit | Assist Outside Agency |

1. Was the pursuit within policy?

| | | Initial | PN | Date |
|---|---|---|---|---|
| (YES) | NO | KSS | 2093 | 12-06-16 |
| (YES) | NO | CB | 2133 | 12/06/16 |
| YES | NO | | | |
| YES | NO | | | |
| YES | NO | | | |

If not explain.

2. Did the severity of the crime outweigh the danger to the community?

| | | Initial | PN | Date |
|---|---|---|---|---|
| YES ? | NO | KSS | 2093 | 12-06-16 |
| YES ? | NO | CB | 2133 | 12/06/16 |
| YES | NO | | | |
| YES | NO | | | |
| YES | NO | | | |

If not explain.

3. Did the officer operate with due regard for public safety?

| | | Initial | PN | Date |
|---|---|---|---|---|
| YES ? | NO | KSS | 2093 | 12-06-16 |
| YES ? | NO | CB | 2133 | 12/06/16 |
| YES | NO | | | |
| YES | NO | | | |
| YES | NO | | | |

If not explain.

WHAT INCIDENT WAS THE SUSPECT INVOLVED IN W/OUTSIDE AGENCY?? EXCESSIVE SPEED UNLESS WARRANTED

Revised 05-26-16 KAS403

Exhibit 7-A

CITY 3507

FOR ATTORNEY EYES ONLY

SOUTH BEND POLICE DEPARTMENT
RESPONSE TO RESISTANCE / VEHICLE PURSUIT FORM

CASE NO 16 | 16914

**OFFICER INFORMATION**

Name of Officer: PTL J. Gorny PN 2242 | PN: 2242 | Duty Status: On Duty [X] Off Duty [ ] | Were You Wearing SBPD Uniform: Yes [X] No [ ] | Were You Injured: Yes [ ] No [X] | If Yes, Were You Treated at Hospital: Yes [ ] No [X]

**INCIDENT INFORMATION**

Location: 424 W. Eleventh Street Mishawaka | Date: 9-19-2016 | Time: 2338 hours

**SUSPECT INFORMATION (USE SEPARATE FORM FOR EACH SUSPECT)**

Name: Daryl Suggs | Suspect Demeanor: Intoxicated [ ] Mentally Unstable [ ] Under Influence of Narcotics [ ] | Suspect Armed: Yes [ ] No [X] | Weapon Type:

Did you know, or were you told that the suspect possessed any special combat abilities? Yes [ ] No [X] | If Yes, Briefly Explain:

Was Suspect Injured: Yes [ ] No [X] | Did Suspect Require Medical Attention: Yes [X] No [ ] | Was Suspect Transported to Hospital: Yes [X] No [ ]

**LEVEL OF RESISTANCE SUSPECT PRESENTED THAT RESULTED IN USE OF FORCE / PURSUIT**

[ ] Psychological Intimidation
[ ] Verbal Non-compliance
[ ] Defensive Resistance
[ ] Active Aggression
[ ] Aggravated Active Aggression
[X] Fled in Vehicle
[ ] Passive Resistance

**PHYSICAL FORCE** — Effective Yes [ ] No [X]; [ ] Strike / Punch / Kick; [ ] Choke; [ ] ____

**CHEMICAL AGENT** (Includes munitions) — Effective Yes [ ] No [X]; Lot # ____; Distance from suspect (specify inches or feet): ____

**IMPACT WEAPON** (Includes munitions) — Effective Yes [ ] No [X]; Impact weapon used: [ ] Expandable [ ] PR-24 [ ] Straight Baton [ ] ____

**TASER** — Effective Yes [ ] No [X]; Serial # ____; Drive [ ] Probe [ ]; Number of cycles: ____

**FIREARM** — Effective Yes [ ] No [X]; Make: ____ Type: ____; Model: ____ Dept. Issue: ____; Caliber: ____ Serial #: ____

**VEHICLE PURSUIT ACTIVITY**

Location Pursuit Started: Mumford Ct/ E. Calvert | Time Started: 2338 hours | Location Pursuit Ended: 424 W. Eleventh Street Mishawaka | Time Ended: 2343

Reason for Pursuit: [X] Traffic Violation [ ] Criminal Activity [ ] Assisting Other Agency [ ] ____

Suspect Vehicle: [X] Car [ ] Semi [ ] Motorcycle [ ] ____ [ ] Pick-Up [ ] SUV [ ] Moped

Road Conditions: [X] Dry [ ] Ice [ ] Wet [ ] ____

Type of Locale/ Level of Traffic (Includes Pedestrians and Vehicles):

| Locale | None | Light | Medium | Heavy |
|---|---|---|---|---|
| [X] Neighborhood | [X] | [ ] | [ ] | [ ] |
| [X] Business District | [X] | [ ] | [ ] | [ ] |
| [ ] School Zone | [ ] | [ ] | [ ] | [ ] |
| [ ] Park | [ ] | [ ] | [ ] | [ ] |
| [X] Open Highway / Street | [X] | [ ] | [ ] | [ ] |
| [ ] ____ | [ ] | [ ] | [ ] | [ ] |

Reason Pursuit Ended: [ ] Officer Terminated [ ] Supervisor Terminated [X] Driver Terminated [ ] Suspect Vehicle Disabled [ ] Automobile Crash [ ] ____

Pursuit Distance: [ ] Less than 1 Mile [ ] 1 to 2 Miles [ ] 2.1 to 5 Miles [X] 5.1 to 10 Miles [ ] Beyond 10 Miles

Was an Accident Report Filed? Yes [ ] No [X]

Regardless if accident report filed, estimate dollar amount of damages: Police Vehicles: ____ Moving Vehicles: ____ Suspect Vehicle: ____ Property (i.e. building, etc.): ____ Parked Vehicles: ____ Other: ____

Level of Force Used: [X] Presence (lights/siren) [ ] Tire Deflation Device [ ] "Box In" [ ] PIT Maneuver [ ] Ram [ ] Firearms

If Driver was Arrested was one of the charges DUI? Yes [ ] No [X] | Maximum Estimated Speed of Police Vehicle: 85 MPH | Primary Supervisor Monitoring Pursuit:

With the exception of training or recreational purposes, an officer must complete this form and write a case report whenever he/she:

1. Discharges a firearm (includes shooting animals for self-defense or humane purposes); or
2. Takes an action that resulted in, or is alleged to have resulted in, visible injury or death to another person; or
3. Applies force through the use of lethal or less-lethal weapons; or
4. Punches, slaps, kicks, knee strikes chokes, or uses any other type of physical striking technique

Because of the brevity of this form, the case report will be the primary document used to gather the details surrounding the circumstances that required the officer to use force. When writing your case report, it is required that it contain, at minimum, the following information (where applicable).

- Describe the citizen's actions/behavior and/or the circumstances that influenced your decision to use force. Write facts (i.e. "the suspect swung his fist at my face." Avoid writing conclusions (i.e. "the suspect was fighting", "the suspect was resisting", "the suspect struggled").
- Document verbal warning given prior to the use of force, if verbal warning were not possible, then provide an explanation.
- Multiple applications of force (same or different) must be explained.
- Describe where on the person's body you used force, and what you hoped your action would accomplish.
- TASER usage specify the number of discharges; OC-spray specify the distance from the citizen.
- If at any time the level of force you used did not have the desired effect, then describe why/what happened that made the force ineffective.
- If you were injured during the encounter or the citizen was injured by the use of force, then explain how the injury occurred, the type of injury, the steps taken to treat the injury, and what if any type of medical treatment was provided. For serious bodily injury or death take photographs.
- If the suspect demonstrated signs of intoxication, under the influence of narcotics, or symptoms of mental illness, then describe what made you come to that conclusion.

Report Completed By: PTL J. Gorny PN 2242 [signature] Date: 9-20-2016

Office of Risk Management Review: ____ Date: ____

SUBMIT THIS FORM ONLY TO THE OFFICE OF PROFESSIONAL STANDARDS DO NOT File with Report

Exhibit 7-A

CITY 3508

Exhibit F at 211:4-212:3; Exhibit E at 70:18-24; Exhibit C at 53:9-13; Exhibit C-7-A.

**REPLY:** **Undisputed, except that the screenshots contained in Paragraph 220 have been altered by adding highlighting and red arrows, which do not appear on the original documents. Additionally, Paragraph 220 is immaterial. The Board of Public Safety is the policymaking body for the South Bend Police Department, and there is no evidence that the Board of Public Safety was aware of the discrepancy identified in Paragraph 220. Even if the policymaker for the South Bend Police Department was aware of the discrepancy, this fact would still be immaterial because South Bend did not have a pattern of its police officers depriving citizens of their substantive due process rights under similar circumstances.**

221. The City's 30(b)(6) designated witness admitted that the department should have addressed Gorny's misrepresentation or misperception of his maximum speed in the 114 mph pursuit because the public can be at significant risk when an officer underestimates or is unaware of their actual speed. Exhibit F at 213:15-214:10.

REPLY: **The evidence cited in Paragraph 221 is inadmissible under FRE 701. Additionally, it is inadmissible under FRE 401. Whether South Bend should have addressed a discrepancy in a single pursuit report with the pursuing officer is not the constitutional standard. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision.**

**Subject to and without waiving said objections, it is undisputed that Captain David Herron testified as indicated in Paragraph 221, but this fact is immaterial. The Board of Public Safety is the policymaking body for the South Bend Police Department, and there is no evidence that the Board of Public Safety was aware of the discrepancy identified in Paragraph 221. Even if the policymaker for the South Bend Police Department was aware of the discrepancy, this fact would still be immaterial because South Bend did not have a pattern of its police officers depriving citizens of their substantive due process rights under similar circumstances.**

222. No one in the South Bend police department addressed either Gorny's speed or his misrepresentation or misperception of his speed with him and nothing was ever done about it. Exhibit F at 214:11-216:9; Exhibit D at 194:1-10; Exhibit E at 104:8-14; Exhibit C at 56:9-13, 61:4-12; Exhibit K at 46:21-24, 73:12-17.

REPLY: **The evidence cited in Paragraph 222 is inadmissible under FRE 401. Whether South Bend should have addressed a discrepancy in a single pursuit report with the reporting officer is not the constitutional standard. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision. The evidence cited in Paragraph 222 is also inadmissible under FRE 701 to the extent that the witnesses are stating opinions about whether the speed discrepancy should have been addressed with Officer Gorny.**

**Subject to and without waiving said objections, undisputed but immaterial. The Board of Public Safety is the policymaking body for the South Bend Police Department, and there is no evidence that the Board of Public Safety was**

**aware of the discrepancy identified in Paragraph 222. Even if the policymaker for the South Bend Police Department was aware of the discrepancy, this fact would still be immaterial because South Bend did not have a pattern of its police officers depriving citizens of their substantive due process rights under similar circumstances.**

## III. SOUTH BEND'S REVIEW OF POLICE PURSUITS.

### A. CAPTAIN SCHWEIZER RAN THE PURSUIT REVIEW COMMITTEE.

223. Captain Herron was designated as a corporate representative for the City of South Bend on topics including its pursuit review process, pursuit review documents, and Officer Gorny's pursuit reviews. Exhibit F at 9:9-13:14.

**REPLY: Undisputed but immaterial.**

224. South Bend required its officers to prepare a report for every pursuit. Exhibit M, ¶ 6.

**REPLY: Undisputed.**

225. Captain Keith Schweizer was the head of Internal Affairs and the Captain of the Risk Management in 2018, the year of the Flores incident. Exhibit M, ¶¶ 2-3; Exhibit E at 6:16–22. His duties and responsibilities included reviewing vehicle pursuits. Exhibit M, ¶ 4. All pursuit reports were forwarded to Captain Schweizer to ensure officer accountability and to confirm that all pursuit policies and procedures were being followed. Exhibit F at 34:16-35:7.

**REPLY: Undisputed.**

226. Of the 377 vehicle pursuits conducted by the South Bend police department from 2013-2018, 262 were documented by South Bend in the IA Pro Summaries as being "Not Justified" and "Not Within Policy". There is no evidence of the PRC reviewing these 262 pursuits. Exhibit H-2A (Report of Dr. Mourtgos) at 156.

**REPLY: The evidence cited in Paragraph 226 is inadmissible under FRE 401. Whether South Bend pursuits were "justified" is not the constitutional standard, and**

**evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision.**

**Subject to and without waiving said objections, disputed as unsupported by admissible evidence. The uncontested evidence establishes:**

- **Captain Schweizer would only send a pursuit to the Pursuit Review Committee for review if Captain Schweizer believed that there was a possible policy violation. Exhibit M, ¶8.**
- **If Captain Schweizer did not send a pursuit to the Pursuit Review Committee for review, then he did not find a possible policy violation. Exhibit M, ¶8.**
- **The South Bend Police Department Office of Risk Management utilized software called "IAPro." Exhibit E at 63:15-24; Exhibit F at 18:5 – 20:3.**
- **In an IAPro data entry screen for pursuits, it has a checkbox for "Pursuit Justified" and a checkbox for "Pursuit Within Policy." The user does not enter "Yes" or "No" for these fields. Exhibit F at 82:20 – 84:3; Exhibit F-47A.**
- **It was not the usual practice of the South Bend Police Department to check the checkboxes for "Pursuit Justified" and "Pursuit Within Policy" if a pursuit was found to be justified and within policy. Exhibit F at 285:4-24.**
- **If the "Pursuit Justified" or "Pursuit Within Policy" checkboxes are not checked, then, when the IAPro data is printed, the printout will read "No" for these fields. Exhibit F at 281:23 – 284:5.**
- **The South Bend Police Department was not aware until discovery in this lawsuit that the IAPro printouts would read "No" for "Pursuit Justified" and "Pursuit Within Policy" if the checkboxes were not checked. Exhibit F at 284:14-22.**

**Plaintiff presents no evidence contradicting the evidence set out above, except for the IAPro printouts themselves. Given the uncontested explanation about how South Bend utilized the IAPro system, the IAPro printouts do not create a genuine factual dispute about whether the South Bend Police Department found those pursuits to be justified or within policy.**

**Dr. Mourtgos' report and testimony are inadmissible under FRE 702 for the reasons stated in South Bend's motion to exclude.**

**Additionally, Paragraph 226 is immaterial. Whether a pursuit was justified or within policy is not the constitutional standard. Additionally, there is no evidence that the Board of Public Safety, which is the policymaking body for the South Bend Police Department, was aware of the number of pursuits that were not marked "Justified" and "Within Policy" in IAPro. Additionally,**

**there is no evidence that South Bend officers engaged in a pattern of depriving citizens of their Fourteenth Amendment rights under similar circumstances.**

227. Captain Schweizer also ran the department's Pursuit Review Committee (PRC) between 2013 and 2018. Exhibit F at 57:15-19. The PRC played a key role in reviewing pursuits between 2013 and 2018. Exhibit F at 57:7-10.

REPLY: **"[K]ey role" is a characterization of the evidence, not a fact. In any event, Paragraph 227 is undisputed.**

### B. CAPTAIN SCHWEIZER'S ONGOING CRITICISMS OF THE PURSUIT REVIEW COMMITTEE.

228. Captain Herron testified that the PRC had monthly meetings. Exhibit F at 26:2-13. Plaintiff requested the committee minutes from 2015-2018 which would have been 36 committee meeting minutes. Pursuit review committee minutes were produced for only four meetings for the period of 2015 -2018: June 25, 2015, March 16, 2016, July 27, 2016, and August 15, 2018. Exhibit F at 256:21-258:3.

REPLY: **Paragraph 228 is inadmissible under FRE 401. Whether there was disagreement with the Pursuit Review Committee is not the constitutional standard. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision.**

**Subject to and without waiving said objections, the first and second sentences of Paragraph 228 are undisputed. The third sentence of Paragraph 228 is disputed as unsupported by admissible evidence. The documents identified in Paragraph 228 are not minutes of the Pursuit Review Committee meetings. They are memoranda of Captain Schweizer's notes. The undisputed evidence establishes that Captain Schweizer only prepared a memorandum of his notes about a Pursuit Review Committee meeting if he disagreed with their judgment or their evaluation. Exhibit F at 168:21 – 169:3. Paragraph 228 is immaterial because there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

229. Captain Schweizer voiced strong concerns and criticisms about the Pursuit Review Committee in the committee meeting minutes that were produced. Exhibit F at 173:5-9.

REPLY: **Paragraph 229 is inadmissible under FRE 401. Whether there was disagreement with the Pursuit Review Committee is not the constitutional standard. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision.**

**Subject to and without waiving said objections, Paragraph 229 contains characterizations of evidence, not facts. The characterization of Captain Schweizer's memoranda as "minutes" is disputed as unsupported by admissible evidence. *See* the Reply to Paragraph 228. In any event, it is undisputed that Captain Schweizer's memoranda express concerns and criticisms about some of the Committee's reviews. Paragraph 229 is immaterial because there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

230. In his March 16, 2016 memo, Captain Schweizer disagreed with the PRC Committee's determination that one pursuit (15-23303 Bair) was within policy, procedure and the law, finding it went on too long, in too much traffic, for a traffic violation:


**15-22303 Bair**-Traffic violation turned into MVT. Members agreed within policy, procedure, and the law. Captain Schweizer dissenting. Too long, too much traffic, for a traffic violation.

Exhibit BB (CITY 4820).

REPLY: **Paragraph 230 is inadmissible under FRE 401. Whether there was disagreement with the Pursuit Review Committee is not the constitutional standard. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision.**

**Subject to and without waiving said objections, Paragraph 230 is undisputed, except that the red arrow shown in Paragraph 230 does not appear on the original document. Paragraph 230 is immaterial because there is no evidence that the officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

231. Captain Schweizer also disagreed with the PRC's decision on a second pursuit (16-3394 Gary) on the basis that the risk didn't outweigh the dangers where too many vehicles pursued for a simple property crime:

**16-3394-Gray-** MVT No video from Gray but other officers in the pursuit were deemed adequate by the committee members to be within policy procedure and the law. Captain Schweizer had a dissenting opinion as too many vehicles were in the pursuit and it was once again a property crime (MVT) and the risks to officers and the public do not outweigh the dangers posed in his opinion.

Exhibit BB (CITY 4820).

REPLY: **Paragraph 231 is inadmissible under FRE 401. Whether there was disagreement with the Pursuit Review Committee is not the constitutional standard. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision.**

**Subject to and without waiving said objections, Paragraph 231 is undisputed, except that the red arrow shown in Paragraph 231 does not appear on the original document. Paragraph 231 is immaterial because there is no evidence that the officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

232. Captain Schweizer's March 2016 PRC Memo also provided information about an officer at another local agency who was fired and criminally charged after striking and killing an individual while driving to a call. Exhibit BB (CITY 4820).

REPLY: **Paragraph 232 is inadmissible under FRE 401. Whether a law enforcement office from another agency was criminally charged for an accident that occurred while driving to a call has no relevance to whether South Bend deprived Plaintiff of her Fourteenth Amendment rights. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision.**

**Subject to and without waiving said objections, Paragraph 232 is undisputed but immaterial. There is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

233. In July 2016, Captain Schweizer issued another PRC Memo in which he read from the ILEA EVOC instructor's manual and explained that there is no duty to chase a traffic violator. Exhibit BB (CITY 4932).

REPLY: **Paragraph 233 is inadmissible under FRE 401. Whether a duty exists to pursue traffic violators is not the constitutional standard. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE**

**403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision. The evidence cited in Paragraph 233 is also an inadmissible legal conclusion.**

**Subject to and without waiving said objections, Paragraph 233 is undisputed but immaterial. Whether a duty exists to pursue a traffic violator is not the constitutional issue, and there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

234. Captain Schweizer identified multiple problems with the PRC process in his July 2016 memo. He questioned and strongly disagreed with the Committee's finding that one pursuit was within policy based on many problems that included a questionable reason for joining the pursuit, lack of supervision and excessive time, distance and number of units involved:

> The Committee found no problems with this pursuit despite watching the entire thing and viewing the GPS map. ORM strongly disagrees and finds the following problems. The reason for joining the pursuit is questionable. At no time could I hear any supervisor ask radio to find out the reason for the pursuit. The distance covered and the time our cars were involved is excessive. At no time does Sergeant Riddle call off our east side and south side cars. This pursuit was on a Friday night around midnight and at least 2 beats cars were way out of their beats.
>
> Mishawaka had more than one car involved and by the time it got to the farm field there were no fewer than 6 cars involved. There were at least 3 SBPD (Kukla, Knepper, PFC Sanchez all identified by ORM) and three others. The other 3 cars could have all been MPD or a combination of MPD and county.
>
> **The pursuit committee found this pursuit to be within policy, training, and the law. ORM ***DOES NOT AGREE***** with the findings of the committee on this pursuit. ORM will enter the committee report along with this report.
>
> Page **1** of **4**
>
> CITY 4932

**REPLY:** **Paragraph 234 is inadmissible under FRE 401. Whether there was disagreement with the Pursuit Review Committee is not the constitutional standard. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision.**

**Subject to and without waiving said objections, the characterizations of the evidence in Paragraph 234 are disputed. It is undisputed that Captain Schweizer's memorandum of the July 2016 Pursuit Review Committee expressed that he strongly disagreed with the Committee's conclusion regarding one pursuit, and that he believed that there were problems with the pursuit. The red arrows appearing in Paragraph 234 do not appear on the original document. Paragraph 234 is immaterial because there is no evidence**

**that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

235. Writing about a different pursuit in July 2016 that he termed "abysmal", Captain Schweizer identified a "lack of candor from the committee" that suggested the pursuit review format needed to be changed. Exhibit BB (CITY 4932). He disagreed with the PRC that the pursuit was within policy for reasons that included the reason for the stop not outweighing the reason for the stop, failure to drive with due regard and officers act of running a red light with an obstructed view:

> The committee failed to complete the evaluation form (this was discovered after everyone left the room and I was compiling the paperwork and videos). Only 3 of the 6 evaluators (Lieutenant Ross, Captain Noonan and Lieutenant Eyster) circled or initialed anything on the form. Lieutenant Eyster wrote that the officer could not have avoided a collision at those high speeds.
>
> **ORM is of the opinion this pursuit violated the policy in the following areas.** 1. The reason for the pursuit did not outweigh the reason for the stop. 2. Sergeant Wolff did not drive with due regard for public safety. 3. Sergeant Wolff failed to properly monitor the pursuit (calling for speeds and conditions) and did not call it off. Both PFC Bair and Sergeant Wolff knew the pursuit was heading toward a construction zone and neither called off the pursuit. Instead they both went through a busy intersection just north of the construction against a red light and with traffic obstructing their view.
>
> The lack of candor from the committee suggests that the pursuit review format be changed. New ORM officer or new committee or new procedure. This review was abysmal.

Exhibit BB (CITY 4932).

**REPLY:** **Paragraph 228 is inadmissible under FRE 701 and FRE 401. Whether there was disagreement with the Pursuit Review Committee is not the constitutional standard. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision.**

**Subject to and without waiving said objections, Paragraph 235 is disputed in part. Captain Schweizer did not describe the pursuit as "abysmal." Paragraph 235 otherwise accurately describes Captain Schweizer's memorandum. The red arrows shown in Paragraph 235 do not appear on the original document. Paragraph 235 is immaterial because there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

236. In that same July 2016 memo, Captain Schweizer determined that one of Officer Gorny's pursuits violated policy, training and the law and specifically disagreed with the PRC in

that regard. Exhibit BB (CITY 4934). Among other things, he pointed out officers' failure to check their speed during pursuits and the correlative need for supervision and monitoring to protect officers and the public from harm:

> **VP2016-0031 PFC Cummins** Officer Cummins attempted to stop a vehicle that was traveling at a high rate of speed on Western Ave and it disregarded a red light. PFC Cummins attempted to stop the vehicle but it went north on Sheridan at a high rate of speed and disregarded stop signs. It then went east on Linden at a high rate of speed. PFC Cummins stated he was losing sight of the suspect and slowed his police vehicle down because of the wet road, darkness, and the curves in the road. As PFC Cummins came around a curve he noticed the suspect had crashed and the driver was fleeing on foot. The passenger was seriously injured and the crash was investigated by the FACT unit. This was a paper review because no video was available due to an equipment malfunction with a new in car camera. **The committee found PFC Cummins to be within policy, training, and the law. ORM AGREES with the committee.**
>
> **VP2016-0039 Officer Gorny** attempted to stop a vehicle for disregarding a stop sign. The vehicle fled and Officer Gorny chased the suspect for somewhere between 2.1 to 5 miles and approximately 7 minutes on wet roads before the suspect crashed. The pursuit started at 3300 South High and ended at Notre Dame and Sorin.
>
> The pursuit committee found no violation of policy, training, or the law. I reminded them prior to their watching the video that dynamic hydroplaning starts at speeds of 10.6 multiplied by the square root of the tire pressure. I wanted them to think about the dangers of pursuits in rain. Despite me trying to get them to think about everything in the video they only mentioned that there was no vehicular traffic during the pursuit. **ORM DOES NOT AGREE with the committee.**
>
> ORM is of the opinion this pursuit went on too long based on the weather conditions and the violation committed. Sergeant Riddle was the supervisor monitoring this pursuit and he allowed it to run from the south side all the way to the east side and ultimately it crashed into a fixed object. Due regard for public safety is only one aspect of pursuits. Officer safety must also be a priority. When an officer is involved in a pursuit sometimes they do not check their speed and they do not pay attention to how long the pursuit has gone on. Supervisors must be monitoring pursuits better to protect officers from harm as well as the public.

Exhibit BB (CITY 4934).

**REPLY:** **Paragraph 236 is inadmissible under FRE 701 and FRE 401. Whether there was disagreement with the Pursuit Review Committee is not the constitutional standard. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision.**

**Subject to and without waiving said objections, Paragraph 236 is undisputed, except that the red arrows shown in Paragraph 236 do not appear on the original document. Paragraph 236 is immaterial because there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

237. Commenting on a different pursuit in his July 2016 memo, Captain Schweizer wrote that "(t)he pursuit review process needs to be reviewed and revamped" because it was giving "a pass" to unreasonable pursuits. Exhibit BB (CITY 4935). He further deemed it "incomprehensible" that three of the six committee members failed to initial the evaluation form or provide comments on a pursuit that traveled between five and ten miles at speeds exceeding 100 mph for a traffic violation. Exhibit BB (CITY 4935). Captain Schweizer further wrote that the PRC committee members were experienced, prepared and had been briefed on both Indiana and United States Supreme Court rulings, for which reason he did not understand the committee's leniency. Exhibit BB (CITY 4935). He further admonished the PRC that if the City did not "start an internal process that holds officers accountable when the stakes are low an external process will most certainly hold (it) accountable when stakes are high":

The pursuit review process needs to be reviewed and revamped. There is no way that a pursuit goes on for nearly 20 minutes, leaves the city and causes damages to our mechanical and is given a pass by the entire review committee.

It is incomprehensible that a pursuit travels between 5 and 10 miles at speeds exceeding 100 mph for a misdemeanor traffic violation and half of the committee failed to initial the evaluation form or write comments on the bottom.

If the review committee was uninformed, if this were the first time they were ever part of the review, if they had no time to prepare for the review one might be able to rationalize why there was leniency on the forms.

None of this is the case here. The committee had the cases several days before. Several of the committee members were experienced in pursuit reviews. All of the embers were briefed about Indiana Supreme Court rulings and U.S. Supreme Court rulings and all were given opportunity to ask any questions about policy or the law.

Only 3 questions were asked. Sergeant Cauffman asked me if I knew the findings of the court in each of these cases. I told him I did not and all of these cases were too recent to have had their day in court. Lieutenant Ross asked me if we were looking into technology. I told him that the technology that we have had demonstrated didn't show promise.

He then asked if we were looking at policy changes. I don't know if his questions were to shift decision making responsibility from supervisors to the officer or to eliminate any discretion on the part of the officer.

Sergeant Cauffman said he asked about court outcomes because if the suspect is not being found guilty it might demonstrate to the officer that engaging in a risky pursuit does not guarantee a suspect will be punished for fleeing from the police.

Unless we start an internal process that holds officers accountable when the stakes are low an external process will most certainly hold us accountable when the stakes are high. Nothing further to report.

07-27-16 Captain K Sch 403

1545hrs

Captain Keith Schweizer

Office of Risk Management

Page **4** of **4**

CITY 4935

Exhibit BB (CITY 4935).

**REPLY:** **Paragraph 237 is inadmissible under FRE 701 and FRE 401. Whether there was disagreement with the Pursuit Review Committee is not the constitutional standard. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision.**

**Subject to and without waiving said objections, Paragraph 237 is undisputed, except that the red arrows shown in Paragraph 237 do not appear on the original document. Paragraph 237 is immaterial because there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

238. In the last PRC memo produced by the City, dated August 15, 2018, Captain Schweizer documents the PRC's continuing dysfunction, including failure to identify the reviewers or the problems with the pursuits and the failure to counsel the involved officers, and states that the PRC will need to be redesigned and that the officers would need to be counseled in a timely fashion:

> In December of 2017 Sergeant Stuart was given eight vehicle pursuits for review along with any available videos associated with each pursuit. Sometime in December Sergeant Stuart organized a Pursuit Review Committee and gave them the pursuits to be reviewed.
>
> The undersigned officer was on vacation when this took place. When I returned after the first of the year I requested and received the reviews from Sergeant Stuart. Upon looking at them nothing was filled out on the pursuit review forms. Apparently he did not give the forms to the committee and PFC Bair wrote on the back of the pursuit form instead of using a regular pursuit review committee form.
>
> PFC Bair wrote comments like "where are the rest of the videos?" "Need all of the videos" "Are we just picking on Tony Dawson?" "We are doing a review we need all videos" none of which had anything to do with the review. All available videos were given to Sergeant Stuart. PFC Bair's comments should have been checked by Sergeant Stuart before they were turned back in to ORM.
>
> This pursuit review was invalid because it is unknown who the reviewers were. None of the problems with the pursuits were documented and none of the involved officers were counseled about their driving.
>
> This pursuit review is over 8 months old and is being filed as information only. The pursuit review committee will have to be redesigned and whomever takes over will receive training in how they are to be conducted.
>
> It is unclear who will be running it at this point but none of these pursuits were reviewed properly. None of the officers counseled in a timely fashion. If Sergeant Stuart is going to continue to run the pursuit reviews he must do a better job of it.
>
> VP2017-0065
>
> VP2017-0068
>
> VP2017-0070
>
> VP2017-0071
>
> VO2017-0073
>
> VP2017-0076
>
> VP2017-0077
>
> Nothing Further.
>
> Captain Keith Schweizer
>
> Office of Risk Management 08-15-18
>
> CITY 6501

Exhibit BB (CITY 6501).

**REPLY:** **Paragraph 238 is inadmissible under FRE 701 and FRE 401. Whether there was disagreement with the Pursuit Review Committee is not the constitutional standard. Additionally, the evidence cited in Paragraph 238 did not exist on July 20, 2018, so it has no relevance to deliberate indifference. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision.**

**Subject to and without waiving said objections, the characterizations of the evidence contained in Paragraph 238 are disputed. To the extent that Paragraph 238 contains facts, those facts are unsupported by admissible evidence. Captain Schweizer's memorandum was not created until after the accident at issue in this action. The red arrows shown in Paragraph 238 do not exist on the original document. Paragraph 238 is immaterial because there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

239. There is no documentation or evidence indicating that any person addressed Captain Schweizer's strong feelings or concerns as listed in the summary section of Exhibit 16-B. Exhibit F at 170:1-171:21.

**REPLY:** **Paragraph 239 is inadmissible under FRE 401. Whether there was disagreement with the Pursuit Review Committee is not the constitutional standard. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision.**

**Subject to and without waiving said objections, the characterizations of the evidence contained in Paragraph 239 are disputed. To the extent that Paragraph 239 contains facts, those facts are undisputed but immaterial because there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

240. Captain Schweizer and the head Emergency Vehicles Operations instructor, Sergeant Ken Stuart, had the final authority to address deficiencies in the pursuit review process or committees prior to July 2018. Exhibit F at 175:14-20.

**REPLY:** **Paragraph 240 is an inadmissible conclusion of law, not a statement of fact. Further, it is an incorrect conclusion of law. The final policymaking authority for the South Bend Police Department is the Board of Public Safety. IC 36-8-3-2.**

**Subject to and without waiving said objections, disputed. Any dispute would be immaterial because there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

241. None of Captain Schweizer's recommendations or concerns about the Pursuit Review Committee process were implemented or addressed before 2018, except for a change in the makeup of the committee. Exhibit F at 171:14-21.

**REPLY:** **Paragraph 241 is inadmissible under FRE 401. Whether there was disagreement with the Pursuit Review Committee is not the constitutional standard. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision.**

**Subject to and without waiving said objections, undisputed. but immaterial because there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

242. Although the Pursuit Review Committee fell under the umbrella of Office of Risk Management, which was run by Captain Schweizer, there is no evidence that Chief Ruszkowski discussed Schweizer's concerns about the committee with him. Exhibit F at 171:22-172:19.

**REPLY:** **Paragraph 242 is inadmissible under FRE 401. Whether there was disagreement with the Pursuit Review Committee is not the constitutional standard. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision.**

**Subject to and without waiving said objections, undisputed but immaterial because there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

### C. CAPTAIN SCHWEIZER'S 2016 ADMONISHMENT AGAINST PURSUING FOR TRAFFIC VIOLATIONS.

243. In a March 16, 2016, Captain Schweizer admonished that that supervisors should cancel pursuits for traffic violations and that failure to do so could result in supervisors sharing liability with the involved officers:

> Pursuit Review Committee
>
> March 16, 2016 1400hrs Chief's Conference Room
>
> Committee Members: Lieutenant Noonan, Sergeant Cauffman, Sergeant Mills, Sergeant Walsh, Captain Schweizer
>
> The committee members were given 2 handouts reference supervisor liability and a new piece from the Benton Township officer who was fired and charged in the death of a citizen who was struck by the police cruiser while driving to a call. The supervisors were informed that they are responsible for monitoring and terminating any pursuit deemed too dangerous. They were further advised that if a pursuit is initiated based only on a traffic violation they should terminate the pursuit. If the pursuit is allowed to continue and ends badly they could share responsibility with the involved officer for any damages.

Exhibit BB (CITY 4820).

REPLY: **Paragraph 243 is inadmissible under FRE 401. The Constitution does not prohibit law enforcement officers from pursuing traffic violators. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision. This evidence is also an inadmissible conclusion of law.**

**Subject to and without waiving said objections, "admonished" is disputed. That is not what Captain Schweizer's memorandum says. Paragraph 243 otherwise accurately describes Captain Schweizer's memorandum. The red arrow and red highlighting shown in Paragraph 243 does not appear on the original document. Paragraph 243 is immaterial because the Constitution does not prohibit law enforcement officers from pursuing traffic violators, and because there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

244. By way of history, the City of South Bend conducted 377 total vehicle pursuits between 2013 and 2018, of which 171 (approximately 45%) began as minor, traffic-related incidents:

CITY 3980 (VP2013-0021)
CITY 3982 (VP2013-0023)
CITY 3983 (VP2013-0024)
CITY 3986 (VP2013-0025)
CITY 3987 (VP2013-0026)
CITY 3988 (VP2013-0027)
CITY 3989 (VP2013-0028)
CITY 3990 (VP2013-0029)
CITY 3994 (VP2013-0033)
CITY 3995 (VP2013-0034)
CITY 3999 (VP2013-0038)
CITY 4007 (VP2014-0004)
CITY 4018 (VP2014-0007)
CITY 4023 (VP2014-0010)
CITY 4024 (VP2014-0011)
CITY 4025 (VP2014-0012)
CITY 4026 (VP2014-0013)
CITY 4030-1 (VP2014-0015)
CITY 4036 (VP2014-0016)
CITY 4063 (VP2014-0020)
CITY 4071 (VP2014-0022)
CITY 4086 (VP2014-0025)
CITY 4094 (VP2014-0026)
CITY 4110 (VP2014-0028)
CITY 4114 (VP2014-0030)
CITY 4117 (VP2014-0033)
CITY 4119 (VP2014-0035)
CITY 4124 (VP2014-0038)
CITY 4131 (VP2014-0045)
CITY 4132 (VP2014-0046)
CITY 4133 (VP2015-0001)
CITY 4152 (VP2015-0014)
CITY 4153 (VP2015-0015)
CITY 4169 (VP2015-0019)
CITY 4170 (VP2015-0020)
CITY 4174 (VP2015-0022)
CITY 4175 (VP2015-0023)
CITY 4177 (VP2015-0024)
CITY 4181 (VP2015-0025)
CITY 4183 (VP2015-0027)
CITY 4184 (VP2015-0028)
CITY 4185 (VP2015-0029)
CITY 4186 (VP2015-0030)
CITY 4187 (VP2015-0031)
CITY 4191 (VP2015-0034)
CITY 4195 (VP2015-0036)
CITY 4198 (VP2015-0038)
CITY 4202 (VP2015-0040)
CITY 4204 (VP2015-0042)
CITY 4206 (VP2015-0044)
CITY 4217 (VP2015-0049)
CITY 4220 (VP2015-0051)

CITY 4222 (VP2015-0053)

CITY 4227 (VP2015-0057)

CITY 4235 (VP2015-0061)

CITY 4236 (VP2015-0062)

CITY 4237 (VP2015-0063)

CITY 4243 (VP2015-0067)

CITY 4244 (VP2015-0068)

CITY 4245 (VP2015-0069)

CITY 4252 (VP2016-0005)

CITY 4253 (VP2016-0006)

CITY 4254 (VP2016-0007)

CITY 4255 (VP2016-0008)

CITY 4256 (VP2016-0009)

CITY 4264 (VP2016-0013)

CITY 4269 (VP2016-0016)

CITY 4271 (VP2016-0018)

CITY 4857-8 (VP2016-0021)

CITY 4865 (VP2016-0023)

CITY 4943 (VP2016-0031)

CITY 4277 (VP2016-0032)

CITY 4279 (VP2016-0034)

CITY 4999-5000 (VP2016-0039)

CITY 5013 (VP2016-0040)

CITY 5023 (VP2016-0042)

CITY 4284 (VP2016-0043)

CITY 5031 (VP2016-0044)

CITY 5034 (VP2016-0045)

CITY 4286 (VP2016-0046)

CITY 5043-4 (VP2016-0047)

CITY 4326 (VP2016-0050)

CITY 4327 (VP2016-0051)

CITY 4329 (VP2016-0054)

CITY 4330 (VP2016-0055)

CITY 4331 (VP2016-0056)

CITY 4335 (VP2016-0058)

CITY 5078 (VP2016-0059)

CITY 5084 (VP2016-0061)

CITY 4340 (VP2016-0062)

CITY 5088 (VP2016-0063)

CITY 4343 (VP2016-0066)

CITY 4345 (VP2016-0068)

CITY 5138 (VP2016-0070)

CITY 4347 (VP2016-0071)

CITY 5184 (VP2016-0073)

CITY 5193 (VP2016-0074)

CITY 5264 (VP2016-0076)

CITY 4352 (VP2016-0085)

CITY 4355 (VP2016-0088)

CITY 5450 (VP2017-0006)

CITY 5527 (VP2017-0009)

CITY 5544 (VP2017-0013)

CITY 5586 (VP2017-0017)

CITY 5593 (VP2017-0018)
CITY 5608 (VP2017-0020)
CITY 4362 (VP2017-0022)
CITY 5721 (VP2017-0025)
CITY 4363 (VP2017-0027)
CITY 4364 (VP2017-0030)
CITY 5854 (VP2017-0032)
CITY 5870 (VP2017-0033)
CITY 5882 (VP2017-0034)
CITY 5907 (VP2017-0036)
CITY 5934 (VP2017-0038)
CITY 5980 (VP2017-0039)
CITY 4366 (VP2017-0044)
CITY 4368 (VP2017-0047)
CITY 6107 (VP2017-0048)
CITY 6124 (VP2017-0049)
CITY 6179 (VP2017-0052)
CITY 4373 (VP2017-0061)
CITY 6457 (VP2017-0062)
CITY 4374 (VP2017-0067)
CITY 6474 (VP2017-0071)
CITY 6598 (VP2017-0072)
CITY 6602 (VP2017-0073)
CITY 6634 (VP2017-0074)
CITY 4378 (VP2017-0075)
CITY 4380 (VP2017-0080)

CITY 4381 (VP2017-0082)
CITY 4395 (VP2017-0084)
CITY 4396 (VP2017-0085)
CITY 4399 (VP2017-0088)
CITY 6843 (VP2018-0001)
CITY 6959 (VP2018-0004)
CITY 7029 (VP2018-0006)
CITY 7040 (VP2018-0007)
CITY 7062 (VP2018-0008)
CITY 7090 (VP2018-0010)
CITY 7118 (VP2018-0011)
CITY 7159 (VP2018-0014)
CITY 7179 (VP2018-0015)
CITY 7209 (VP2018-0016)
CITY 7251 (VP2018-0018)
CITY 7269 (VP2018-0020)
CITY 7323 (VP2018-0021)
CITY 4403 (VP2018-0023)
CITY 7376 (VP2018-0024)
CITY 7404 (VP2018-0025)
CITY 4405 (VP2018-0026)
CITY 4406 (VP2018-0027)
CITY 4407 (VP2018-0028)
CITY 7467 (VP2018-0029)
CITY 4410 (VP2018-0032)
CITY 4411 (VP2018-0035)

CITY 7715 (VP2018-0036)

CITY 7757 (VP2018-0039)

CITY 7786 (VP2018-0041)

CITY 7869 (VP2018-0043)

CITY 7874 (VP2018-0044)

CITY 7902 (VP2018-0045)

CITY 7921 (VP2018-0046)

CITY 7946 (VP2018-0048)

CITY 7986 (VP2018-0050)

CITY 8023 (VP2018-0053)

CITY 8096 (VP2018-0056)

CITY 8166 (VP2018-0059)

CITY 8203 (VP2018-0061)

REPLY: **Paragraph 244 is inadmissible under FRE 401. The Constitution does not prohibit law enforcement officers from pursuing traffic violators. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision.**

**Subject to and without waiving said objections, "minor" is a characterization of the evidence, not a statement of fact. Otherwise, undisputed but immaterial because the Constitution does not prohibit law enforcement officers from pursuing traffic violators, and there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

245. After Captain Schweizer's memo advised that officers should not engage in Emergency vehicle pursuits, South Bend police officers still engaged in ninety-three (93) traffic-related pursuits. Exhibit BB, page 1.

CITY 4271 (VP2016-0018)
CITY 4857-8 (VP2016-0021)
CITY 4865 (VP2016-0023)
CITY 4943 (VP2016-0031)
CITY 4277 (VP2016-0032)
CITY 4279 (VP2016-0034)
CITY 4999-5000 (VP2016-0039)
CITY 5013 (VP2016-0040)
CITY 5023 (VP2016-0042)
CITY 4284 (VP2016-0043)
CITY 5031 (VP2016-0044)
CITY 5034 (VP2016-0045)
CITY 4286 (VP2016-0046)
CITY 5043-4 (VP2016-0047)
CITY 4326 (VP2016-0050)
CITY 4327 (VP2016-0051)
CITY 4329 (VP2016-0054)
CITY 4330 (VP2016-0055)
CITY 4331 (VP2016-0056)
CITY 4335 (VP2016-0058)
CITY 5078 (VP2016-0059)
CITY 5084 (VP2016-0061)
CITY 4340 (VP2016-0062)
CITY 5088 (VP2016-0063)
CITY 4343 (VP2016-0066)
CITY 4345 (VP2016-0068)

CITY 5138 (VP2016-0070)
CITY 4347 (VP2016-0071)
CITY 5184 (VP2016-0073)
CITY 5193 (VP2016-0074)
CITY 5264 (VP2016-0076)
CITY 4352 (VP2016-0085)
CITY 4355 (VP2016-0088)
CITY 5450 (VP2017-0006)
CITY 5527 (VP2017-0009)
CITY 5544 (VP2017-0013)
CITY 5586 (VP2017-0017)
CITY 5593 (VP2017-0018)
CITY 5608 (VP2017-0020)
CITY 4362 (VP2017-0022)
CITY 5721 (VP2017-0025)
CITY 4363 (VP2017-0027)
CITY 4364 (VP2017-0030)
CITY 5854 (VP2017-0032)
CITY 5870 (VP2017-0033)
CITY 5882 (VP2017-0034)
CITY 5907 (VP2017-0036)
CITY 5934 (VP2017-0038)
CITY 5980 (VP2017-0039)
CITY 4366 (VP2017-0044)
CITY 4368 (VP2017-0047)
CITY 6107 (VP2017-0048)

| | |
|---|---|
| CITY 6124 (VP2017-0049) | CITY 7269 (VP2018-0020) |
| CITY 6179 (VP2017-0052) | CITY 7323 (VP2018-0021) |
| CITY 4373 (VP2017-0061) | CITY 4403 (VP2018-0023) |
| CITY 6457 (VP2017-0062) | CITY 7376 (VP2018-0024) |
| CITY 4374 (VP2017-0067) | CITY 7404 (VP2018-0025) |
| CITY 6474 (VP2017-0071) | CITY 4405 (VP2018-0026) |
| CITY 6598 (VP2017-0072) | CITY 4406 (VP2018-0027) |
| CITY 6602 (VP2017-0073) | CITY 4407 (VP2018-0028) |
| CITY 6634 (VP2017-0074) | CITY 7467 (VP2018-0029) |
| CITY 4378 (VP2017-0075) | CITY 4410 (VP2018-0032) |
| CITY 4380 (VP2017-0080) | CITY 4411 (VP2018-0035) |
| CITY 4381 (VP2017-0082) | CITY 7715 (VP2018-0036) |
| CITY 4395 (VP2017-0084) | CITY 7757 (VP2018-0039) |
| CITY 4396 (VP2017-0085) | CITY 7786 (VP2018-0041) |
| CITY 4399 (VP2017-0088) | CITY 7869 (VP2018-0043) |
| CITY 6843 (VP2018-0001) | CITY 7874 (VP2018-0044) |
| CITY 6959 (VP2018-0004) | CITY 7902 (VP2018-0045) |
| CITY 7029 (VP2018-0006) | CITY 7921 (VP2018-0046) |
| CITY 7040 (VP2018-0007) | CITY 7946 (VP2018-0048) |
| CITY 7062 (VP2018-0008) | CITY 7986 (VP2018-0050) |
| CITY 7090 (VP2018-0010) | CITY 8023 (VP2018-0053) |
| CITY 7118 (VP2018-0011) | CITY 8096 (VP2018-0056) |
| CITY 7159 (VP2018-0014) | CITY 8166 (VP2018-0059) |
| CITY 7179 (VP2018-0015) | CITY 8203 (VP2018-0061) |
| CITY 7209 (VP2018-0016) | |
| CITY 7251 (VP2018-0018) | |

**REPLY:** **Paragraph 245 is inadmissible under FRE 401. The Constitution does not prohibit law enforcement officers from pursuing traffic violators. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision.**

**Subject to and without waiving said objections, undisputed but immaterial because the Constitution does not prohibit law enforcement officers from pursuing traffic violators, and there is no evidence that any officer deprived**

**someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

246. Officer Gorny was personally involved in multiple pursuits for traffic-related incidents after Captain Schweizer's March 16, 2016 PRC memo and before the Flores incident.

REPLY: **Paragraph 246 is inadmissible under FRE 401. The Constitution does not prohibit law enforcement officers from pursuing traffic violators. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to find Officer Gorny liable in this case because of his actions in other pursuits, and it would invite the jury to conclude that South Bend may be liable for negligence in supervision. This evidence is also inadmissible under FRE 404.**

**Subject to and without waiving said objections, "multiple" is a characterization of evidence, not a statement of fact. Otherwise, undisputed but immaterial because the Constitution does not prohibit law enforcement officers from pursuing traffic violators, and there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

247. Officer Gorny was involved in a June 6, 2016 pursuit stemming from a traffic violation, VP 2016-0039. Exhibit HH (CITY 4999.) Captain Schweizer determined that this pursuit was not justified and not within policy:

| Pursuit justified | Pursuit within policy |
| --- | --- |
| No | No |

Exhibit II (CITY 4997).

REPLY: **Paragraph 247 is inadmissible under FRE 401. The Constitution does not prohibit law enforcement officers from pursuing traffic violators. Whether a pursuit was "justified" is not the constitutional standard, and evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to find Officer Gorny liable in**

**this case because of his actions in other pursuits, and it would invite the jury to conclude that South Bend may be liable for negligence in supervision. This evidence is also inadmissible under FRE 404.**

**Subject to and without waiving said objections, the first sentence of Paragraph 247 is undisputed but immaterial. The second sentence of Paragraph 247 is not supported by the evidence cited. *See* the Reply to Paragraph 226. In any event, it is undisputed that Captain Schweizer disagreed with the Pursuit Review Committee's conclusion that there was no violation of policy, training, or the law regarding the pursuit. *See* the Reply to Paragraph 248. In any event, Paragraph 247 is immaterial because the Constitution does not prohibit law enforcement officers from pursuing traffic violators, and there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee. The highlighting shown in Paragraph 247 does not appear on the original document.**

248. The PRC found otherwise. Exhibit BB (CITY 5000). In response, Captain Schweizer wrote a memo specifically disagreeing with the PRC's conclusion, stating:

> **VP2016-0039 Officer Gorny** attempted to stop a vehicle for disregarding a stop sign. The vehicle fled and Officer Gorny chased the suspect for somewhere between 2.1 to 5 miles and approximately 7 minutes on wet roads before the suspect crashed. The pursuit started at 3300 South High and ended at Notre Dame and Sorin.
>
> The pursuit committee found no violation of policy, training, or the law. I reminded them prior to their watching the video that dynamic hydroplaning starts at speeds of 10.6 multiplied by the square root of the tire pressure. I wanted them to think about the dangers of pursuits in rain. Despite me trying to get them to think about everything in the video they only mentioned that there was no vehicular traffic during the pursuit. **ORM DOES NOT AGREE with the committee.**

Exhibit BB.

**REPLY:** **Paragraph 248 is inadmissible under FRE 401. Whether there was disagreement with the Pursuit Review Committee is not the constitutional standard. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to find Officer Gorny liable in this case because of his actions in other pursuits, and it would invite the jury to conclude that South Bend may be liable for negligence in supervision. This evidence is also inadmissible under FRE 404.**

**Subject to and without waiving said objections, it is undisputed that Captain Schweizer disagreed with the Pursuit Review Committee, but this fact is immaterial because the Constitution does not prohibit law enforcement officers from pursuing traffic violators, and there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any**

**pursuit reviewed by the Pursuit Review Committee. The highlighting shown in Paragraph 248 does not appear on the original document.**

249. There is no evidence that Officer Gorny received any reprimand or remedial training in response to this traffic-related pursuit.

REPLY: **Paragraph 248 is inadmissible under FRE 401. The Constitution does not prohibit law enforcement officers from pursing traffic violators. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to find Officer Gorny liable in this case because of his actions in other pursuits, and it would invite the jury to conclude that South Bend may be liable for negligence in supervision. This evidence is also inadmissible under FRE 404.**

**Subject to and without waiving these objections, undisputed but immaterial because the Constitution does not prohibit law enforcement officers from pursuing traffic violators, and there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

250. Officer Gorny was involved in another pursuit on August 25, 2016, VP2016-0052. Exhibit 8-A (CITY 5054-55). This pursuit caused the other vehicle to drive through yards and into oncoming traffic. Exhibit 8-A (CITY 5054). Again, Captain Schweizer determined that this pursuit was not justified and not within policy:

| Pursuit justified | Pursuit within policy |
| --- | --- |
| No | No |

Exhibit 8-A (CITY 5054).

REPLY: **Paragraph 250 is inadmissible under FRE 401. Whether there was disagreement with the Pursuit Review Committee is not the constitutional standard. Whether a pursuit was "justified" is not the constitutional standard, and evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to find Officer**

**Gorny liable in this case because of his actions in other pursuits, and it would invite the jury to conclude that South Bend may be liable for negligence in supervision. This evidence is also inadmissible under FRE 404.**

**Subject to and without waiving said objections, the first sentence of Paragraph 250 is undisputed. The second sentence of Paragraph 250 is disputed as to causation; a police pursuit does not cause the fleeing suspect to engage in dangerous driving behavior. *Scott v. Harris*, 550 U.S. 372, 383-86 (2007). The third sentence of Paragraph 250 is not supported by the evidence cited. *See* the Reply to Paragraph 226. In any event, Paragraph 250 is immaterial because there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee. The highlighting shown in Paragraph 250 does not appear on the original document.**

251. Once again, the Pursuit Review Committee disagreed with Captain Schweizer. Exhibit 8 (CITY 5056). Captain Schweizer wrote no memo in response to this decision and there is no evidence that Officer Gorny received any reprimand or remedial training in response to this traffic-related pursuit.

REPLY: **Paragraph 251 is inadmissible under FRE 401. Whether there was disagreement with the Pursuit Review Committee is not the constitutional standard. Whether a pursuit was "justified" is not the constitutional standard, and evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to find Officer Gorny liable in this case because of his actions in other pursuits, and it would invite the jury to conclude that South Bend may be liable for negligence in supervision. This evidence is also inadmissible under FRE 404.**

**Subject to and without waiving said objections, the first sentence of Paragraph 251 is not supported by the cited evidence. *See* the Reply to Paragraph 226. The second sentence of Paragraph 251 is undisputed but immaterial because there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

252. Officer Gorny was involved in another pursuit – through a neighborhood street - stemming from a traffic violation on May 28, 2017, VP2017-0034. Exhibit 11-A (CITY 5882.) Captain Herron's IA Pro paperwork states that this pursuit was not justified and not within policy.

| Pursuit justified | Pursuit within policy |
| --- | --- |
| No | No |

Exhibit 11-B (CITY 5878.)

REPLY: **Paragraph 252 is inadmissible under FRE 401. Whether there was disagreement with the Pursuit Review Committee is not the constitutional standard. Whether a pursuit was "justified" is not the constitutional standard, and evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). The Constitution does not prohibit law enforcement officers from pursuing traffic violators. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to find Officer Gorny liable in this case because of his actions in other pursuits, and it would invite the jury to conclude that South Bend may be liable for negligence in supervision. This evidence is also inadmissible under FRE 404.**

**Subject to and without waiving said objections, the first sentence of Paragraph 252 is undisputed but immaterial. The second sentence of Paragraph 252 is disputed. IAPro is a database, so there is no IAPro "paperwork," and the undisputed evidence establishes that it was not South Bend Police Department's usual practice to update the IAPro database fields for "Pursuit justified" and "Pursuit within policy" after a determination on the pursuit has been made. *See* the Reply to Paragraph 226. In any event, Paragraph 252 is immaterial because the Constitution does not prohibit law enforcement officers from pursuing traffic violators, and there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee. The highlighting that is shown in Paragraph 252 does not appear on the original document.**

253. Once again, the Pursuit Review Committee disagreed with Captain Schweizer. Exhibit 11-C (CITY 5881.) There is no memo discussing the PRC's decision and no evidence that Officer Gorny received any reprimand or remedial training in response to this pursuit despite its stemming from a traffic violation.

REPLY: **Paragraph 253 is inadmissible under FRE 401. Whether there was disagreement with the Pursuit Review Committee is not the constitutional standard. Whether a pursuit was "justified" is not the constitutional standard,**

**and evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). The Constitution does not prohibit law enforcement officers from pursuing traffic violators. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to find Officer Gorny liable in this case because of his actions in other pursuits, and it would invite the jury to conclude that South Bend may be liable for negligence in supervision. This evidence is also inadmissible under FRE 404.**

**Subject to and without waiving said objections, The first sentence of Paragraph 253 is disputed because there is no evidence in the record that Captain Schweizer determined that the pursuit violated South Bend policy. *See* the Reply to Paragraph 226. The second sentence of Paragraph 253 is undisputed. In any event, Paragraph 253 is immaterial because the Constitution does not prohibit law enforcement officers from pursuing traffic violators, and there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

254. Officer Gorny was involved in another pursuit stemming from a traffic violation on July 21, 2017, VP2017-0046. (CITY 6079.) Captain Herron's IA Pro paperwork states that this pursuit was not justified and not within policy:

| Pursuit justified | Pursuit within policy |
|---|---|
| No | No |

Exhibit 12-B (CITY 6076.)

REPLY: **Paragraph 254 is inadmissible under FRE 401. Whether a pursuit was "justified" is not the constitutional standard, and evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). The Constitution does not prohibit law enforcement officers from pursuing traffic violators. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to find Officer Gorny liable in this case because of his actions in other pursuits, and it would invite the jury to conclude that South Bend may be liable for negligence in supervision. This evidence is also inadmissible under FRE 404.**

**Subject to and without waiving said objections, the first sentence of Paragraph 254 is undisputed. The second sentence of Paragraph 254 is not supported by the evidence cited. *See* the Reply to Paragraph 226 and the Reply to Paragraph 253. In any event, Paragraph 254 is immaterial because the Constitution does not prohibit law enforcement officers from pursuing traffic violators, and there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

255. This pursuit was reviewed by ORM. Exhibit 12-A (CITY 3536). There is no evidence that Officer Gorny received any reprimand or remedial training in response to this pursuit despite its stemming from a traffic violation.

**REPLY:** **Whether South Bend disciplined Officer Gorny or gave him remedial training for this pursuit is inadmissible under FRE 401. Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). The Constitution does not prohibit law enforcement officers from pursuing traffic violators. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to find Officer Gorny liable in this case because of his actions in other pursuits, and it would invite the jury to conclude that South Bend may be liable for negligence in supervision. This evidence is also inadmissible under FRE 404.**

**Subject to and without waiving said objections, undisputed but immaterial. There is no evidence that Officer Gorny violated South Bend Police Department policy in this pursuit. *See* the Reply to Paragraph 226. There is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

256. Officer Gorny was involved in another pursuit stemming from a traffic violation – through neighborhood streets, business district and light traffic – on July 26, 2017, VP2017-0048. Exhibit 12- C (CITY 6079). Lieutenant Kris Hinton's IA Pro paperwork states that this pursuit was not justified and not within policy:

| Pursuit justified | Pursuit within policy |
|---|---|
| No | No |

Exhibit 13-B (CITY 6105).

REPLY: **Paragraph 256 is inadmissible under FRE 401. Whether a pursuit was "justified" is not the constitutional standard, and evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). The Constitution does not prohibit law enforcement officers from pursuing traffic violators. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to find Officer Gorny liable in this case because of his actions in other pursuits, and it would invite the jury to conclude that South Bend may be liable for negligence in supervision. This evidence is also inadmissible under FRE 404.**

**Subject to and without waiving said objections, the first sentence of Paragraph 256 is undisputed. The second sentence of Paragraph 256 is not supported by the evidence cited. *See* the Replies to Paragraph 226 and Paragraph 252. In any event, Paragraph 256 is immaterial because the Constitution does not prohibit law enforcement officers from pursuing traffic violators, and there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee. The highlighting shown in Paragraph 256 does not appear on the original document.**

257. This pursuit was reviewed by ORM. Exhibit 13-A (CITY 3538.) There is no evidence that Officer Gorny received any reprimand or remedial training in response to this traffic-related pursuit.

REPLY: **Whether South Bend disciplined Officer Gorny or gave him remedial training for this pursuit is inadmissible under FRE 401. Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). The Constitution does not prohibit law enforcement officers from pursuing traffic violators. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to find Officer Gorny liable in this case because of his actions in other pursuits, and it would invite the jury to conclude that South Bend may be liable for negligence in supervision. This evidence is also inadmissible under FRE 404.**

**Subject to and without waiving said objections, undisputed but immaterial. There is no evidence that Officer Gorny violated South Bend Police Department policy in this pursuit. *See* the Reply to Paragraph 226. There is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

258. Officer Gorny was involved in yet another pursuit stemming from a traffic violation – through neighborhood streets, business district with medium traffic – on September 1, 2017, VP2017-0057. Exhibit 14-A (CITY 6320). Lieutenant Hinton's IA Pro paperwork states that this pursuit was not justified and not within policy:

| Pursuit justified | Pursuit within policy |
| --- | --- |
| No | No |

Exhibit 14-B (CITY 6318.)

**REPLY:** **Paragraph 258 is inadmissible under FRE 401. Whether a pursuit was "justified" is not the constitutional standard, and evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). The Constitution does not prohibit law enforcement officers from pursuing traffic violators. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to find Officer Gorny liable in this case because of his actions in other pursuits, and it would invite the jury to conclude that South Bend may be liable for negligence in supervision. This evidence is also inadmissible under FRE 404.**

**Subject to and without waiving said objections, the first sentence of Paragraph 258 is undisputed. The second sentence of Paragraph 258 is not supported by the evidence cited. *See* the Replies to Paragraph 226 and Paragraph 252. In any event, Paragraph 258 is immaterial because the Constitution does not prohibit law enforcement officers from pursuing traffic violators, and there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee. The highlighting that is shown in Paragraph 258 does not appear on the original document.**

259. This pursuit was reviewed by ORM. Exhibit 13 A (CITY 3538.) There is no evidence that Officer Gorny received any reprimand or remedial training in response to this pursuit despite its stemming from a traffic violation.

**REPLY:** **Whether South Bend disciplined Officer Gorny or gave him remedial training for this pursuit is inadmissible under FRE 401. Evidence that a law**

**enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). The Constitution does not prohibit law enforcement officers from pursuing traffic violators. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to find Officer Gorny liable in this case because of his actions in other pursuits, and it would invite the jury to conclude that South Bend may be liable for negligence in supervision. This evidence is also inadmissible under FRE 404.**

**Subject to and without waiving said objections, undisputed but immaterial. There is no evidence that Officer Gorny violated South Bend Police Department policy in this pursuit. *See* the Reply to Paragraph 226. There is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

260. Officer Gorny was involved in yet another pursuit stemming from a traffic violation – through neighborhood streets – on June 15, 2018, VP2018-0045. Exhibit 17-D (CITY 7902.) Captain Herron's IA Pro paperwork states that this pursuit was not justified and not within policy:

| Pursuit justified | Pursuit within policy |
|---|---|
| No | No |

Exhibit 17- D (CITY 7895.)

**REPLY:** **Paragraph 260 is inadmissible under FRE 401. Whether a pursuit was "justified" is not the constitutional standard, and evidence that a law enforcement office violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). The Constitution does not prohibit law enforcement officers from pursuing traffic violators. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to find Officer Gorny liable in this case because of his actions in other pursuits, and it would invite the jury to conclude that South Bend may be liable for negligence in supervision. This evidence is also inadmissible under FRE 404.**

**Subject to and without waiving said objections, the first sentence of Paragraph 260 is undisputed. The second sentence of Paragraph 260 is not supported by the cited evidence. *See* the Replies to Paragraph 226 and Paragraph 252. In any event, Paragraph 260 is immaterial because the Constitution does not prohibit law enforcement officers from pursuing traffic violators, and there is**

**no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee. Additionally, the highlighting shown in Paragraph 260 does not appear on the original document.**

261. This pursuit was reviewed by ORM. Exhibit 19 (CITY 3570.) There is no evidence that Officer Gorny received any reprimand or remedial training in response to this traffic-related pursuit.

**REPLY:** **Whether South Bend disciplined Officer Gorny or gave him remedial training for this pursuit is inadmissible under FRE 401. Evidence that a law enforcement officer violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). The Constitution does not prohibit law enforcement officers from pursuing traffic violators. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to find Officer Gorny liable in this case because of his actions in other pursuits, and it would invite the jury to conclude that South Bend may be liable for negligence in supervision. This evidence is also inadmissible under FRE 404.**

**Subject to and without waiving said objections, undisputed but immaterial. There is no evidence that Officer Gorny violated South Bend Police Department policy in this pursuit. *See* the Reply to Paragraph 226. There is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee.**

262. Officer Gorny was involved in yet another pursuit stemming from a traffic violation – through neighborhood streets – on June 19, 2018, VP2018-0049. Exhibit 18- A (CITY 7946.) Captain Herron's IA Pro paperwork states that this pursuit was not justified and not within policy:

| Pursuit justified | Pursuit within policy |
|---|---|
| No | No |

Exhibit 18-B (CITY 7945.) This pursuit was reviewed by ORM. Exhibit 18-A (CITY 7946.) There is no evidence that Officer Gorny received any reprimand or remedial training in response to this pursuit despite its stemming from a traffic violation.

REPLY: **The first, second, and fourth sentences of Paragraph 262 are inadmissible under FRE 401. Whether a pursuit was "justified" is not the constitutional standard, and evidence that a law enforcement office violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). The Constitution does not prohibit law enforcement officers from pursuing traffic violators. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to find Officer Gorny liable in this case because of his actions in other pursuits, and it would invite the jury to conclude that South Bend may be liable for negligence in supervision. This evidence is also inadmissible under FRE 404.**

**Subject to and without waiving said objections, the first sentence of Paragraph 262 is undisputed. The second sentence of Paragraph 262 is not supported by the evidence cited. *See* the Replies to Paragraph 226 and Paragraph 252. In any event, Paragraph 262 is immaterial. There is no evidence that Officer Gorny violated South Bend Police Department policy in this pursuit. *See* the Reply to Paragraph 226. There is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any pursuit reviewed by the Pursuit Review Committee. The Constitution does not prohibit law enforcement officers from pursuing traffic violators. Additionally, the highlighting shown in Paragraph 262 does not appear on the original document.**

263. All told, no fewer than 77 pursuit-related traffic accidents between 2015 and 2018 resulted in property damage during that time, while 15 resulted in pursuit-related personal injuries. Exhibit H-2B, Supplemental Report of Dr. Mourtgos.

REPLY: **Paragraph 263 is inadmissible under FRE 401. Whether a pursuit resulted in a traffic accident, property damage, or personal injury is not the constitutional standard. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision. Dr. Mourtgos' supplemental report is inadmissible under FRE 702 and FRE 802.**

**Subject to and without waiving said objections, disputed. The facts asserted in Paragraph 263 are not supported by the evidence cited.**

264. The City's 30(b)(6) witness on vehicle damage, Sergeant Rohrscheib testified that he never looked for or determined whether South Bend compared its officer vehicle crashes to any national data or statistics, nor did he know whether such information exists. Exhibit I at 38:23-39:9.

**REPLY:** **Paragraph 264 is inadmissible under FRE 401. Whether South Bend compared its officer vehicle crashes to national data or statistics is not the constitutional standard.**

**Subject to and without waiving said objection, it is undisputed that Lieutenant (not Sergeant) Rohrscheib testified as indicated in Paragraph 264, but this evidence is immaterial because there is no evidence that any officer deprived someone of their Fourteenth Amendment rights in any vehicle crash.**

265. Testimony from the City's 30(b)(6) witnesses establish that there is no evidence no police officer, other than Gorny following the Flores incident, who had ever been terminated or suspended for speed-related issues or improper responses to emergency calls in emergency vehicle operations. Exhibit C at 32:7-19; Exhibit B at 29:10-30:12, 37:16-19; Exhibit I at 61:25-62:8. There is no evidence that any officer was ever reprimanded or suspended because of a damage to South Bend vehicles or traffic collisions. Exhibit I at 46:19-23; 61:17-20; Exhibit 6L from Exhibit I.

**REPLY:** **Paragraph 265 is inadmissible under FRE 401. Whether South Bend had terminated or suspended officers for speed-related issues or "improper" responses to emergency calls in emergency vehicle operations is not the constitutional standard. Whether South Bend had reprimanded or suspended any officers for damage to a South Bend vehicle or a traffic collision is not the constitutional standard. Evidence that a law enforcement office violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision.**

**Subject to and without waiving said objections ,the first sentence of Paragraph 265 is undisputed. The second sentence of Paragraph 265 is disputed as contrary to the record. South Bend officers were given verbal or written reprimands for damage to South Bend vehicles many times before this accident occurred. *See* Exhibit U. In any event, Paragraph 265 is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

266. Captain Herron testified that he has not seen any reports or documents indicating that the South Bend Police Department used research or national or state statistics related to pursuits. Exhibit F at 178:8-14.

REPLY: **Paragraph 266 is inadmissible under FRE 401. Whether South Bend used research or national or state statistics related to pursuits is not the constitutional standard.**

**Subject to and without waiving said objection, disputed as unsupported by the record. The training videos that were available for South Bend Police Department officers discussed research and pursuit statistics. *See* Exhibit C-103 (VTS_01_1, VTS_02_01, VTS_03_1); Exhibit C-106 (TVS_05_01). In any event, Paragraph 266 is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

### D. OFFICER GORNY'S HISTORY OF HIGH-SPEED VEHICLE OPERATIONS.

267. An alert for pursuits was triggered after an officer was involved in three pursuits in a 12-month period. Exhibit F at 234:1-4. Gorny had nine early intervention alerts over a year and a half (November 2016 – June 2018) in the IA Pro system, including seven pursuit incidents between June 15, 2017 and June 19, 2018 Exhibit 20 (CITY 3574); Exhibit 17-C (CITY 7898-7900) and five vehicle pursuits between May 28, 2016 and May 28, 2017.

**Officer: Patrolman Justin David Gorny [2242/]**

**Alert description:**

Overall Alert: IA No: VP2018-0045 Case No: 18-8698: Vehicle pursuit has triggered an alert.

As of 06/15/2018, 13 incidents included in the overall alert setting are linked to Patrolman Justin David Gorny [2242/] that have occurred since 06/15/2017.

7 or more incidents during a 12 month period indicates that the officer's performance may need to be reviewed.

**Action(s) taken in response to alert:**

THIS ALERT WAS PRINTED OFF AND GIVEN TO CAPT. GALEA.

User alerted/making original entry: Sergeant David Herron on Jun 15, 2018

Incident/officer links that caused this alert
(Includes current assignement of involved officer at time of alert):

Jul 21, 2017 Vehicle pursuit VP2017-0046 Patrolman Justin David Gorny [ / 2242] Uniform-3rd Detail-314/ SOUTH

Jul 26, 2017 Vehicle pursuit VP2017-0048 Patrolman Justin David Gorny [ / 2242] Uniform-3rd Detail

Aug 13, 2017 Use of force UF2017-0031 Patrolman Justin David Gorny [ / 2242] Uniform-3rd Detail-WEST REGION/ 326

Aug 30, 2017 Firearm discharge FD2017-0001 Patrolman Justin David Gorny [ / 2242] Uniform-3rd Detail

Sep 05, 2017 Vehicle pursuit VP2017-0057 Patrolman Justin David Gorny [ / 2242] Uniform-3rd Detail

Sep 19, 2017 Citizen Complaints CC2017-0009 Patrolman Justin David Gorny [ / 2242] Uniform-3rd Detail-326/ WEST REGION

Sep 23, 2017 Vehicle pursuit VP2017-0063 Patrolman Justin David Gorny [ / 2242] Uniform-3rd Detail-328/ WEST REGION

Nov 06, 2017 Use of force UF2017-0047 Patrolman Justin David Gorny [ / 2242] Uniform-3rd Detail-SFU

Nov 12, 2017 Vehicle pursuit VP2017-0081 Patrolman Justin David Gorny [ / 2242] Uniform-3rd Detail-326/ WEST REGION

Dec 27, 2017 Use of force UF2017-0057 Patrolman Justin David Gorny [ / 2242] Uniform-3rd Detail

Feb 05, 2018 Citizen Complaints CC2018-0001 Patrolman Justin David Gorny [ / 2242] Uniform-3rd Detail-WEST REGION

Mar 08, 2018 Use of force UF2018-0008 Patrolman Justin David Gorny [ / 2242] Uniform-3rd Detail-TWO

CITY 7899

Alert Page: 2

MAN UNIT

Jun 15, 2018 Vehicle pursuit VP2018-0045 Patrolman Justin David Gorny [ / 2242] Uniform-3rd Detail-UNIT 395/ WEST REGION

**REPLY:** **Paragraph 267 is inadmissible as to Officer Gorny under FRE 401 and FRE 404.**

**Subject to and without waiving said objections, it is undisputed that the South Bend Police Department's IAPro software creates an alert if a police officer**

**has a certain number of certain types of incidents within a 12-month period. The description of these alerts as "early intervention" alerts is unsupported by the record to the extent that Paragraph 267 may be read to imply that an alert indicates that the police officer did anything wrong in any of those incidents. The uncontested evidence establishes that an alert generates regardless of whether the officer has been found to have violated policy. *See* Exhibit E at 62:19 – 63:14; Exhibit F at 49:17 – 53:1, 233:7 – 234:16.**

268. While Officer Gorny participated in many pursuits, the Pursuit Review Committee never spoke to him about its meetings or findings. Exhibit D at 148:11-23.

REPLY: **Paragraph 268 is inadmissible under FRE 401. The Constitution does not set a limit on the number of pursuits that a law enforcement officer can engage in. Whether the Pursuit Review Committee spoke to Officer Gorny about its meetings or findings is not the constitutional standard. Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision.**

**Subject to and without waiving said objection, "many" is a characterization of evidence, not a fact. The remainder of Paragraph 268 is undisputed but immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

269. None of Officer Gorny's supervisors ever expressed concerns or issues about his driving. Exhibit D at 149:4-10.

REPLY: **Paragraph 269 is inadmissible under FRE 401. Whether Officer Gorny's supervisors expressed concerns or issues about Officer Gorny's driving is not the constitutional standard. Evidence that a law enforcement office violated departmental policy is inadmissible. *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). Even if this evidence met the FRE 401 threshold for relevance, it would be inadmissible under FRE 403 because it would invite the jury to conclude that South Bend may be liable for negligence in supervision.**

**Subject to and without waiving said objections, undisputed but immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

## IV. THE IMPORTANCE OF TRAINING AND THE RISKS OF IMPROOPER AND RECKLESS TRAINING.

### A) Captain Herron – The City's 30(b)(6) Witness.

270. Captain Herron testified that a police department must properly train and retrain its officers when to engage in high speed vehicle operations. Exhibit F at 181:20-25.

**REPLY:** **The evidence cited in Paragraph 270 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Captain Herron testified as indicated in Paragraph 270, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

271. Captain Herron testified that a police department must properly train its officers when to terminate high speed operations of vehicles. Exhibit F at 182:1-6.

**REPLY:** **The evidence cited in Paragraph 271 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Captain testified as indicated in Paragraph 271, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

272. Captain Herron testified that a police department must continuously supervise its officers to make sure they are not engaging in unnecessary high speed vehicle operations. Exhibit F at 182:7-12.

**REPLY:** **The evidence cited in Paragraph 272 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objection, it is undisputed that Captain Herron testified as indicated in Paragraph 272, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

273. Captain Herron testified that it would be reckless if a police department did not properly train and retrain its officers when to engage in high speed vehicle operations. Exhibit F at 165:13-18.

**REPLY:** **The evidence cited in Paragraph 273 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objection, it is undisputed that Captain Herron testified as indicated in Paragraph 273, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

274. Captain Herron testified that it would be reckless if a police department did not properly train and retrain its officers when to terminate high speed operation of a vehicle. Exhibit F at 182:19-25.

**REPLY:** **The evidence cited in Paragraph 274 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Captain Herron testified as indicated in Paragraph 274, but this fact is immaterial.**

275. Captain Herron testified that it would be reckless if a police department did not continuously supervise and discipline its officers to make sure they are not engaging in unnecessary high speed vehicle operations. Exhibit F at 183:1-7.

**REPLY:** **The evidence cited in Paragraph 275 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Captain Herron testified as indicated in Paragraph 275, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

276. Captain Herron testified that it is highly likely that a police vehicle traveling in excess of 90 miles an hour hitting another car broadside will cause serious damage. Exhibit F at 164:19-165:5.

**REPLY:** **The evidence cited in Paragraph 276 is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objection, it is undisputed that Captain Herron testified as indicated in Paragraph 276, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

277. Captain Herron testified that it is highly likely that a police vehicle traveling in excess of 50 or 60 miles an hour hitting another car broadside will cause serious damage. Exhibit F at 165:10-17.

**REPLY:** **The evidence cited in Paragraph 277 is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objection, it is undisputed that Captain Herron testified as indicated in Paragraph 277, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

278. Captain Herron testified that it is highly predictable that improper training or supervising of police officers with regard to speeding can cause serious injury or harm. Exhibit F at 165:18-24.

**REPLY:** **The evidence cited in Paragraph 278 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Captain Herron testified as indicated in Paragraph 278, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

279. Captain Herron testified that it is highly predictable that improperly disciplining or not disciplining police officers at all who use excessive speed can cause serious injury or harm. Exhibit F at 165:25-166:6.

**REPLY:** **The evidence cited in Paragraph 279 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Captain Herron testified as indicated in Paragraph 279, but this fact is immaterial**

**because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

280. Captain Herron testified that it is highly predictable that a police officer who repetitively uses excessive speed can cause severe injury or harm to the public. Exhibit F at 166:7-21.

**REPLY: The evidence cited in Paragraph 280 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objection, it is undisputed that Captain Herron testified as indicated in Paragraph 280, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

281. Captain Herron testified that a police officer who unnecessarily uses high speeds can cause serious injury to the public or other motorists. Exhibit F at166:22-25-167:1-2.

**REPLY: The evidence cited in Paragraph 281 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Captain Herron testified as indicated in Paragraph 281, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

282. Captain Herron testified that a police officer who creates unnecessary risk for other motorists or the public should be carefully supervised and disciplined. Exhibit F at 167:4-10.

**REPLY: The evidence cited in Paragraph 282 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Captain Herron testified as indicated in Paragraph 282, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

283. Captain Herron testified that he knew prior to July of 2018 that improper training, improper supervision, excessive speed, and unnecessary risk can cause serious damage. Exhibit F at 168:5-10.

**REPLY:** **The evidence cited in Paragraph 283 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Captain Herron testified as indicated in Paragraph 283, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

284. Captain Herron testified that it would be reckless if the police department did not properly reinforce that police cars should never enter obstructed or blind intersections at high speed without making sure there were no cars there. Exhibit F at 188:21-189:6.

**REPLY:** **The evidence cited in Paragraph 284 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Captain Herron testified as indicated in Paragraph 284, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

285. Captain Herron testified that the police department knew before this incident that the public had the right not to be injured or killed by officers traveling at high speed through intersections against the red light before making sure it was safe to proceed. Exhibit F at 189:18-190:3.

**REPLY:** **The evidence cited in Paragraph 285 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Captain Herron testified as indicated in Paragraph 285, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

**Sergeant Calvert – The City's 30(b)(6) Witness.**

286. Sergeant Corey Calvert is the city's 30(b)(6) witness on officer training issues. Exhibit B at 6:24-27:24.

**REPLY:** **Undisputed but immaterial.**

287. Sergeant Calvert agreed that instruction and supervision of pursuits needs to be taken very seriously. Exhibit B at 103:14-18.

REPLY: **The evidence cited in Paragraph 287 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Sergeant Calvert testified as indicated in Paragraph 287, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

288. Sergeant Calvert agreed that proper training and supervision is paramount to protect the public from needless and improper high-speed operation of police vehicles. Exhibit B at 105:7-12.

REPLY: **The evidence cited in Paragraph 288 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Sergeant Calvert testified as indicated in Paragraph 288, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

289. Sergeant Calvert agreed with the following principle regarding proper training:

**Proper training includes:**

**Clear Communication**

**Supervision**

**Retraining**

**Enforcement**

Exhibit B at 107:10-13; Exhibit B-4.

REPLY: **The evidence cited in Paragraph 289 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Sergeant Calvert testified as indicated in Paragraph 289, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

290. Sergeant Calvert agreed that training of police officers with regard to high-speed vehicle operations should be done in a serious and persuasive manner. Exhibit B at 107:14-23.

**REPLY:** **The evidence cited in Paragraph 290 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Sergeant Calvert testified as indicated in Paragraph 290, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

291. Sergeant Calvert agreed that when teaching high speed vehicle operations, instructors are trying to influence police officer behavior. Exhibit B at 108:1-4.

**REPLY:** **Undisputed.**

292. Sergeant Calvert agreed that how information about high speed vehicle operations is presented to police officers can be critical to them taking it seriously and hopefully changing their behavior. Exhibit B at 108:5-9.

**REPLY:** **The evidence cited in Paragraph 292 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Sergeant Calvert testified as indicated in Paragraph 292, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

293. Sergeant Calvert agreed that officers who teach emergency vehicle operations have to do it in a meaningful, persuasive and serious manner. Exhibit B at 98:3-8.

**REPLY:** **The evidence cited in Paragraph 293 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Sergeant Calvert testified as indicated in Paragraph 293, but this fact is immaterial**

**because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

294. Sergeant Calvert agreed that when teaching emergency vehicle operations, instructors want to make sure that the audience is getting the message, understanding the message and hopefully will abide by the message. Exhibit B at 98:9-14.

**REPLY:** **Undisputed.**

295. Sergeant Calvert agreed that emergency vehicle operations lectures should be taken by the instructors to be serious. Exhibit B at 98:15-17.

**REPLY:** **The evidence cited in Paragraph 295 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, Paragraph 295 is undisputed, except to the extent that it may be read to imply that the use of humor during emergency vehicle operations training sessions is impermissible. *See* Exhibit F at 87:3-24.**

296. Sergeant Calvert agreed that what's said in emergency vehicle operations discussions can certainly influence the training and retraining and supervision of officers. Exhibit B at 98:18-22.

**REPLY:** **Undisputed.**

297. Sergeant Calvert agreed that when an officer is teaching emergency vehicle operations to students, it can and is intended to influence the attitude of the officers with regard to pursuits. Exhibit B at 98:23-99:4.

**REPLY:** **Undisputed.**

298. Sergeant Calvert agreed that people who can be injured as a result of pursuits would include other motorists on the highway, bystanders who are nearby, people on sidewalks, people who may be on private property such as their homes, and even people in nearby buildings. Exhibit B at 104:18-105:6.

**REPLY:** **It is undisputed that Sergeant Calvert testified as indicated in Paragraph 298, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

299. Sergeant Calvert agreed that a police officer going through a red light with an obstructed view of traffic coming at 80 or 90 miles an hour or greater would be a reckless disregard for the safety of the public. Exhibit B at 128:20-129:9.

**REPLY:** **The evidence cited in Paragraph 299 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Sergeant Calvert testified as indicated in Paragraph 299, but this fact is immaterial to the Motion for Summary Judgment.**

300. Sergeant Calvert agreed that it would be a reckless disregard for the safety of the public for a police officer to go through a red light with an obstructed view, not being able to see what traffic is coming, at greater than 70 or 80 miles an hour. Exhibit B at 129:24-130:6.

**REPLY:** **The evidence cited in Paragraph 300 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Sergeant Calvert testified as indicated in Paragraph 300, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

301. Sergeant Calvert testified that it is highly predictable that a police officer who uses excessive speed when not necessary can cause severe injury or harm to the public. Exhibit B at 130:7-12.

**REPLY:** **The evidence cited in Paragraph 301 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Sergeant Calvert testified as indicated in Paragraph 301, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

302. Sergeant Calvert agreed that a police officer who uses excessive speed or unnecessary speed should be carefully supervised and disciplined. Exhibit B at 130:19-24.

REPLY: **The evidence cited in Paragraph 302 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Sergeant Calvert testified as indicated in Paragraph 302, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

303. Sergeant Calvert testified that not properly training supervisors how to monitor and discipline other officers who use excessive speed could be a reckless disregard for the safety of the public. Exhibit B at 30:25-131:5.

REPLY: **The evidence cited in Paragraph 303 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Sergeant Calvert testified as indicated in Paragraph 303, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

304. Sergeant Calvert testified that supervisors' failure to properly supervise or monitor their subordinates can cause serious harm to the general public. Exhibit B at 131:6-11.

REPLY: **The evidence cited in Paragraph 304 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Sergeant Calvert testified as indicated in Paragraph 304, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

305. Sergeant Calvert testified that there is a chance that a police vehicle traveling in excess of 60, 70 or 80 miles an hour hitting another car broadside will cause serious damage. Exhibit B at 128:10-15.

REPLY: **The evidence cited in Paragraph 305 is inadmissible under FRE 701 and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Sergeant Calvert testified as indicated in Paragraph 305, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

306. Sergeant Calvert testified that the consequences of not driving with due regard include personal injury or death, civil and criminal proceedings, discipline through the department, and property damage. Exhibit B at 137:5-9.

**REPLY:** **The evidence cited in Paragraph 306 is an inadmissible conclusion of law and irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Sergeant Calvert testified as indicated in Paragraph 306, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

307. Sergeant Calvert agreed with the statement that an instructor related to high speed operation of a police car should project an attitude of both seriousness of harm and appreciation of the risk during pursuits. Exhibit B at 124 5-11.

**REPLY:** **The evidence cited in Paragraph 307 is inadmissible under FRE 701 and irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Sergeant Calvert testified as indicated in Paragraph 307, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

**Captain Kathy Fulnecky – The City's 30(b)(6) Witness.**

308. Captain Fulnecky acknowledged that "if training is not done properly or if it's done inadequately that innocent people can get hurt." Exhibit C at 13:3-6.

**REPLY:** **The evidence cited in Paragraph 308 is an inadmissible conclusion of law, is inadmissible under FRE 701 and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Captain Fulnecky testified as indicated in Paragraph 307, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

309. Captain Fulnecky confirmed that police departments should never allow officers to engage in unnecessary high-speed vehicle operations. Exhibit C at 14:9-15.

**REPLY:** **The evidence cited in Paragraph 309 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Captain Fulnecky testified as indicated in Paragraph 309, but this fact is immaterial to the Motion for Summary Judgment.**

310. Captain Fulnecky agreed that proper training and retraining are essential to prevent unnecessary deaths and severe injuries from high-speed vehicle operations. Exhibit C at 24:10-23.

**REPLY:** **The evidence cited in Paragraph 310 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Captain Fulnecky testified as indicated in Paragraph 310, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

311. Captain Fulnecky agreed that officers are supposed to be disciplined for improper high-speed vehicle operations. Exhibit C at 25:5-7.

**REPLY:** **The evidence cited in Paragraph 311 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Captain Fulnecky testified as indicated in Paragraph 311, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

312. Captain Fulnecky agreed that if an officer is engaging in unnecessary high-speed vehicle operations, they are supposed to be disciplined. Exhibit C at 25:9-15.

**REPLY:** **The evidence cited in Paragraph 312 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Captain Fulnecky testified as indicated in Paragraph 312, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

**Assistant Chief Dan Skibins – The City's 30(b)(6) Witness.**

313. Assistant Chief Skibins agreed that "proper training, supervision, and discipline is vitally important to protect the public from needless or improper high-speed operation of police vehicles." Exhibit K at 19:2-5.

**REPLY:** **The evidence cited in Paragraph 313 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Assistant Chief Skibins testified as indicated in Paragraph 313, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

314. Assistant Chief Skibins agreed that training of police officers with regard to high-speed operations of police vehicles should be done in a serious and persuasive manner. Exhibit K at 20:15-18.

**REPLY:** **The evidence cited in Paragraph 314 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Assistant Chief Skibins testified as indicated in Paragraph 314, but Paragraph 314 is disputed to the extent that it may be read to imply that the use of humor by emergency vehicle operations trainers is impermissible. *See* Exhibit K at 87:3-24. Additionally, Paragraph 314 is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

315. Assistant Chief Skibins confirmed that proper training, supervision, and discipline of officers decreases injuries and deaths in emergency vehicle operations. Exhibit K at 41:14-17.

**REPLY:** **The evidence cited in Paragraph 315 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Assistant Chief Skibins testified as indicated in Paragraph 315, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

316. Assistant Chief Skibins confirmed that proper training, supervision, and discipline of officers decreases the number of bystanders and other motorists getting injured or killed with high-speed vehicle operations. Exkbit [*sic*] K at 41:19-22.

REPLY: **The evidence cited in Paragraph 316 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Assistant Chief Skibins testified as indicated in Paragraph 316, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

317. Assistant Chief Skibins agreed that it is highly predictable that improperly training, supervising, or disciplining police officers with regard to speeding can cause serious injury or harm. Exhibit K at 60:15-17

REPLY: **The evidence cited in Paragraph 317 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Assistant Chief Skibins testified as indicated in Paragraph 317, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

318. Assistant Chief Skibins agreed that monitoring and disciplining police officers who unnecessarily engage in high-speed operation of a police vehicle lowers the risk of collisions, crashes, injuries, and deaths. Exhibit K at 79:16-23.

REPLY: **The evidence cited in Paragraph 318 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Assistant Chief Skibins testified as indicated in Paragraph 318, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

319. Assistant Chief Skibins agreed that improper or needless high-speed police vehicle operations can kill or seriously injure innocent members of the public. Exhibit K at 17:14-16.

**REPLY: The evidence cited in Paragraph 319 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Assistant Chief Skibins testified as indicated in Paragraph 319, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

320. Assistant Chief Skibins acknowledged that innocent members of the public who can be killed or injured include other motorists, bystanders, pedestrians, people on sidewalks, people on private property including their own homes, and even people in nearby buildings. Exhibit K at 17:17-18:25.

**REPLY: It is undisputed that Assistant Chief Skibins testified as indicated in Paragraph 320, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

321. Assistant Chief Skibins agreed that it is highly predictable that a police vehicle traveling in excess of 60 miles an hour hitting another car broadside will probably cause serious damage. Exhibit K at 60:7-12.

**REPLY: The evidence cited in Paragraph 321 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Assistant Chief Skibins testified as indicated in Paragraph 321, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

322. Assistant Chief Skibins agreed that it is highly likely that a police officer who uses excessive speed when not necessary can cause severe injury or harm to the public. (Skibins Exhibit K at 61:3-8.

REPLY: **The evidence cited in Paragraph 322 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Assistant Chief Skibins testified as indicated in Paragraph 322, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

323. Assistant Chief Skibins agreed that a police officer who unnecessarily uses high speeds can cause serious injury or death to the public or other motorists. Exhibit K at 61:10-15.

REPLY: **The evidence cited in Paragraph 323 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to an without waiving said objections, it is undisputed that Assistant Chief Skibins testified as indicated in Paragraph 323, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

324. Assistant Chief Skibins agreed that a police officer who creates unnecessary risk for other motorists or the public should be carefully supervised and disciplined. Exhibit K at 61:22-24.

REPLY: **The evidence cited in Paragraph 324 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Assistant Chief Skibins testified as indicated in Paragraph 324, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

325. Assistant Chief Skibins agreed that not properly supervising and disciplining officers in emergency vehicle operations who go at excessive speeds could be a reckless disregard for the safety of the public. Exhibit K at 62:5-10.

REPLY: **The evidence cited in Paragraph 325 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Assistant Chief Skibins testified as indicated in Paragraph 325, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

326. Assistant Chief Skibins agreed that it is highly predictable that, if supervisors do not properly supervise or discipline their subordinates in vehicle operations, that can cause serious harm to the public. Exhibit K at 62:25-63:4.

**REPLY:** **The evidence cited in Paragraph 326 is an inadmissible conclusion of law, is inadmissible under FRE 701, and is irrelevant.**

**Subject to and without waiving said objections, it is undisputed that Assistant Chief Skibins testified as indicated in Paragraph 326, but this fact is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

327. Assistant Chief Skibins agreed that if police officers are getting involved in multiple at-fault accidents, they should be monitored and disciplined. Exhibit K at 65:1-7.

**REPLY:** **The evidence cited in Paragraph 327 is inadmissible under FRE 701, an inadmissible conclusion of law, and irrelevant.**

**Subject to and without waiving said objections, Paragraph 327 is disputed to the extent that it may be read to imply that South Bend did not monitor or discipline officers who were involved in at-fault accidents, because the undisputed evidence establishes that South Bend did monitor and discipline officers where were involved in at-fault accidents. *See* Exhibit U. Additionally, Paragraph 327 is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

328. Assistant Chief Skibins agreed that the discipline given to officers found at fault multiple times should be escalated. Exhibit K at 65:8-14.

**REPLY:** **The evidence cited in Paragraph 328 is inadmissible under FRE 701, an inadmissible conclusion of law, and irrelevant.**

**Subject to and without waiving said objections, Paragraph 327 is disputed to the extent that it may be read to imply that South Bend did not engage in progressive discipline for officers' at-fault accidents, because the undisputed**

**evidence establishes that South Bend did engage in progressive discipline for officers involved in at-fault accidents. *See* Exhibit I-6C; Exhibit U. Additionally, Paragraph 328 is immaterial because there is no evidence that any South Bend officer had deprived someone of their Fourteenth Amendment rights under similar circumstances.**

## V. SOUTH BEND POLICE OFFICER TRAINING ON CONSTITUTIONAL VIOLATIONS.

329. Sergeant Calvert, who graduated from the Indiana Police Academy in 2011, testified that he was taught about constitutional violations of the 4th and 14th Amendments, and that acts and conduct that "shocks the conscience" where "life, liberty or property have been deprived" were discussed during the course of his training. Exhibit B at 30-31; 145.

**REPLY:** **Undisputed.**

330. Sergeant Calvert further testified that he knew in 2018 that recklessness could be considered a constitutional violation. Exhibit B at 31:15-22.

**REPLY:** **Undisputed.**

331. Sergeant Hiipakka was taught that reckless driving could be seen as a 14th Amendment violation when he was at the police academy in 2008. Exhibit G at 47:15-20.

**REPLY:** **Undisputed.**

332. Assistant Chief Skibins testified that he was taught about the Constitutional violations of the 14th Amendment at the police academy and at the City of South Bend, and he knew in July 2018 that these violations included reckless high-speed vehicle operations and high-speed operations that showed an indifference to the safety of people. Exhibit K at 54:11-55:23.

**REPLY:** **Undisputed.**

333. Assistant Chief Skibins was familiar with the deliberate indifference standard under the Constitution, as well as federal and state law, and knew prior to July 2018 that unnecessary or

reckless high-speed vehicle operations that injure the public or bystanders could be a Constitutional violation. Exhibit K at pp. 56:9-15.

**REPLY: Undisputed.**

334. South Bend's training did not stop at the academy; the City's 30(b)(6) witnesses on training and pursuits testified that officers received continuing education about constitutional limits on an ongoing basis.

**REPLY: Undisputed.**

335. The yearly training of police officers prior to July 2018 included important court cases, such as key Supreme Court rulings. Exhibit F at 204:19-205:8.

**REPLY: Undisputed.**

336. The South Bend Police Department was kept well-informed of recent Supreme Court holdings and opinions on an annual basis, and EVO instructors would relay legal updates to each officer. Exhibit F at 204:19-205:8.

**REPLY: Undisputed.**

337. Sergeant Calvert saw a PowerPoint prior to July of 2018 concerning tort claims and liability, including 4th and 14th Amendments. Exhibit B at 106:17-107:7.

**REPLY: Undisputed.**

Respectfully Submitted,

/s/ Joseph W. Smith
Joseph W. Smith
CLARK JOHNSON & KNIGHT, LTD.
233 East 84th Drive, Suite 301
Merrillville, Indiana 46410
Telephone: 219-322-0830
Facsimile: 219-322-0834
Attorneys for CITY OF SOUTH BEND

/s/ *R. Jeffrey Lowe*
R. Jeffrey Lowe, Atty. #21508-22
KIGHTLINGER & GRAY, LLP
Bonterra Building, Suite 200
3620 Blackiston Boulevard
New Albany, IN 47150
jlowe@k-glaw.com

*Counsel for Defendant,*
*Justin Gorny*

/s/ Matthew S. Clark
Matthew S. Clark
CLARK JOHNSON & KNIGHT, LTD.
233 East 84th Drive, Suite 301
Merrillville, Indiana 46410
Telephone: 219-322-0830
Facsimile: 219-322-0834
Attorneys for CITY OF SOUTH BEND

/s/ P. Mason Riley
P. Mason Riley, #31483-49
RUCKELSHAUS, KAUTZMAN, BLACKWELL, BEMIS, & DUNCAN, LLP
135 N. Pennsylvania Street, Suite #1600
Indianapolis, IN 46204
Telephone: (317) 634-4356
Fax: (317) 634-8635
pmr@rkblegalgroup.com

*Counsel for Defendant, Justin Gorny*

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 7th day of November, 2025, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to:

- Stephen J. Phillips sphillips2@phillipslegal.com
- Terrence M. Quinn tquinn@phillipslegal.com
- Kevin C. Smith ksmith@smithsersic.com
- Joseph W. Smith Jsmith@cjklaw.com, shazi@cjklaw.com
- Matthew S. Clark Mclark@cjklaw.com, kstocco@cjklaw.com
- R. Jeffrey Lowe jlowe@k-glaw.com
- Phillip M. Riley, pmr@rkblegalgroup.com

/s/ Joseph W. Smith
Joseph W. Smith

25-11-07 (1) Reply to Pl Addl Facts 8071