UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| SORAIDA FLORES, as Personal Representative of the Estate of Erica Flores, deceased, | ) | |
| Plaintiff, | ) | Cause No. 2:19-cv-64-PPS |
| v. | ) | |
| CITY OF SOUTH BEND, and JUSTIN GORNY, | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Soraida Flores, as personal representative of the estate of Erica Flores, seeks reconsideration of a decision that granted summary judgment in favor of the City of South Bend on Plaintiff's *Monell* claim that South Bend failed to adequately train its police officers in emergency vehicle operations ("EVO"). Because the motion for reconsideration is mostly a rehash of the same arguments made to me in the original motion for summary judgment and does not convince me I made an error, it will be denied.

**Background**

This case arises out of the tragic death of Erica Flores, who was killed in a collision with South Bend police officer Justin Gorny. On March 23, 2026, I issued a summary judgment opinion denying summary judgment in the case against Justin Gorny but granting summary judgment in favor of South Bend on Plaintiff's failure-to-

train claim. [DE 189.] I granted summary judgment to South Bend because, based on the undisputed evidence, no "reasonable juror could find that South Bend was being deliberately indifferent to a 'known risk' to the motoring public in the manner in which it trained its officers." *Id.* at 29-30 (quoting *Flores v. City of South Bend*, 997 F.3d 725, 731 (7th Cir. 2021). Plaintiff filed a motion for reconsideration aimed at that conclusion. [DE 198.]

While I will not recount the facts here, to understand just how narrow Plaintiff's *Monell* claim is, it is necessary to briefly re-explain the procedural history relevant to this claim.[1] When Plaintiff originally filed this suit, she brought *Monell* claims against South Bend under two separate theories: (1) a theory that the municipality failed to train its police officers leading to the violation of Flores' constitutional rights; and (2) a theory that South Bend had a widespread practice or custom that led to the violation of Flores' constitutional rights. The case was originally assigned to Judge Moody, who dismissed it under Federal Rule of Civil Procedure 12(b)(6).

Plaintiff appealed, and the Seventh Circuit found that the complaint failed to sufficiently allege a *Monell* claim based upon a *de facto* policy of permitting or encouraging excessively fast driving. In particular, the Court held that allegations that the officers sometimes drive at high rates of speed do not show a sufficiently specific pattern of conduct and that to find "otherwise would stretch the law too far, opening municipalities to liability for noncodified customs in all but the rarest of occasions, as

---

[1] For a more expansive discussion of the facts of this case and the procedural history, see my March 23, 2026 order. [DE 60.]

long as a plaintiff can find a few sporadic examples of an improper behavior." *Flores*, 997 F.3d at 733.

However, the Seventh Circuit allowed the *Monell* claim based upon a failure to train to proceed. Importantly, in reversing Judge Moody's decision, the Circuit noted that "failure to train liability is rare" but that, at the pleading stage, Plaintiff had made sufficient allegations to state a claim under the theory. *Id.* at 731-34. Specifically, the Circuit noted that Plaintiff alleged that South Bend knew that its officers, including Officer Gorny, routinely drove too fast, but "took no steps to prevent this behavior—no training, no discipline, no reprimands." *Id.* at 733. The Circuit finished its section on *Monell* liability by stating that "[w]e of course offer no opinion on the way this case will look after all parties have had the chance to develop the factual record further." *Id.* at 734.

As explained below, and as was revealed in discovery, the claim that South Bend provided "no training, no discipline (and) no reprimands" to its officers relating to EVO turned out not to be true. Accordingly, after discovery was completed, South Bend sought summary judgment on the failure to train claim. After thoroughly reviewing the extensive factual record, I found that the undisputed evidence showed that South Bend did in fact have an adequate EVO training program and that a reasonable jury could not find otherwise. [DE 189, 24-25.] To hold otherwise would be akin to saying that the South Bend training program merely could have been better, which is not the standard for a failure-to-train *Monell* claim. In other words, just because the training could have

been better does not mean that the training that was provided was constitutionally inadequate.

In granting summary judgment, I discussed the evidence that every South Bend Police Officer must graduate from the Indiana Law Enforcement Academy, where recruits are taught how to operate emergency vehicles safely. The academy also teaches recruits that driving recklessly can be a violation of the Fourteenth Amendment. I discussed how South Bend has an emergency vehicle policy that has guidelines for how to appropriately operate a vehicle when responding to an emergency, including guidelines for the use of emergency lights and sirens. I cited the fact that new officers must complete a field training officer program that contains additional emergency vehicle training, that officers receive annual training on emergency vehicle operations, and that there is hands-on training twice a year where the officers are trained at a racetrack on how to operate their emergency vehicles safely. Lastly, I brought up that South Bend has a Pursuit Review Committee, and a procedure for reviewing all instances of damage to police vehicles, instances of its officers speeding, and vehicular collisions involving police. Officers found to have engaged in unjustified speeding or to be at-fault for crashes have received warnings, written reprimands, and additional training. *Id.*

**Discussion**

Motions for reconsideration should be granted, "to correct manifest errors of law or fact or to present newly discovered evidence." *Hicks v. Midwest Transit, Inc.*, 531 F.3d 467, 474 (7th Cir. 2008). A motion for reconsideration may also be granted if there is a

significant change in the law since the submission of the issues to the court. *Mindell v. Kronfeld*, 2004 WL 1595334, at *1 (N.D. Ill. July 15, 2004). Given their limited purpose, courts rarely grant motions to reconsider. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

In its motion, Plaintiff does not assert that there is new evidence nor that there was a change in the law. Instead, Plaintiff's motion for reconsideration is based on an argument that I made a manifest error because I "resolved disputed issues of material fact that are properly reserved for the jury." [DE 199, 3.] I did not resolve disputed issues of material fact, nor did I rely on disputed issues of material fact in coming to my conclusions. Rather, I explained how the material facts that are *not* disputed establish that no reasonable jury could find for Plaintiff on her failure-to-train *Monell* claim given how high the Supreme Court has set the bar for proving such a claim. Specifically, here's how the Supreme Court has characterized such claims: "A municipality's culpability for a deprivation of rights is at its *most tenuous* where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (emphasis added).

A key issue for any failure to train claim is the adequacy of the relevant training. *City of Canton v. Harris*, 489 U.S. 378, 391 (1989) ("In resolving the issue of a city's liability, the focus must be on whether the program is adequate to the tasks the particular officer must perform."). To avoid an "endless exercise of second-guessing municipal employee-training programs" that the "federal courts are ill suited to undertake," showing that a training program is inadequate is a heavy burden for plaintiffs pursuing a claim against a municipality. *Id.* at 392. Indeed, in "virtually every

instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city could have done to prevent the unfortunate incident." *Id.* (internal quotations omitted). So, a permissive burden to show a failure to train would "open up municipalities to unprecedented liability under § 1983." *Id.* at 391. To establish that a training program is inadequate, it's not enough to show that an otherwise sound program was negligently administered. *Id.* "Neither will it suffice to prove that an injury or accident could have been avoided if an officer had better or more training sufficient to equip him to avoid the particular injury-causing conduct." *Id.*

In *Canton*, the Supreme Court provided an example of a situation that would clearly constitute a failure to train: a municipality that arms its police officers but fails to train them on constitutional limitations on the use of deadly force. *Id.* at 390 n. 10. Later in *Connick*, the Supreme Court clarified that the "*Canton* hypothetical assumes that the armed police officers have no knowledge at all of the constitutional limitations of deadly force." *Connick*, U.S. at 67.

The facts of *Connick* are instructive. In *Connick*, the plaintiff was alleging that prosecutors were not adequately trained on their disclosure requirements under *Brady. Id.* The Court found that it was undisputed that the prosecutors were "familiar with the general *Brady* rule" and that arguing that they were not trained on a specific facet of it is "a nuance [that] simply cannot support an inference of deliberate indifference" by the municipality. *Id.*

In sum, the takeaway from *Canton* and *Connick* is that, while failure-to-train is a viable theory of liability under *Monell*, it is a very narrow one. Indeed, this is how the Seventh Circuit and district courts in this circuit have repeatedly characterized these kinds of claims. *See, e.g., Lapre v. City of Chicago*, 911 F.3d 424, 437 (7th Cir. 2018) (quoting *Canton* for its holding that "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the City liable" and affirming summary judgment in favor of municipality on failure to train claim); *Godfrey v. Health & Hosp. Corp. of Marion Cnty*, 2026 WL 2936651, at *5-6 (S.D. Ind. Sept. 30, 2026) (describing the limited circumstances when failure to train liability is available and granting summary judgment because "no reasonable jury could find that HHC and ASC acted with deliberate indifference in failing to adequately train staff[.]"); *see also Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 599 (7th Cir. 2019) ("Failure-to-supervise claims, like failure-to-train claims, are a 'tenuous' form of *Monell* liability.") (quoting *Connick*, 563 U.S. at 61).

With these standards in mind, let's turn to Plaintiff's arguments for reconsideration. Plaintiff's motion is a grab bag of grievances consisting of thirteen separate sections; however, they are all getting at the same issue: Plaintiff believes that I resolved disputed material fact and made other related errors in coming to my conclusion that a reasonable jury could not find that South Bend's EVO training program was constitutionally inadequate and evidenced deliberate indifference. I disagree.

**a. A "Robust" Training Program**

Plaintiff argues that I made a clear error by concluding that a reasonable jury could not find South Bend's EVO training program to be constitutionally insufficient. She takes particular issue with my characterization of the training program as "robust," and argues that I put myself in the place of a jury.

In one of Plaintiff's thirteen separate arguments for reconsideration, she argues that the "question is not whether training existed. The question is whether the training that existed was proper… Record evidence raises that question; only the jury can decide it." [DE 199, 12.] Plaintiff's quick summarization of the law in the first part of this quote does not appear to be a ground for reconsideration, as it does not conflict with the standard I applied. [DE 189, 23, 26.] As for Plaintiff's statement that the record evidence raises a question and "only a jury can decide it," that is a bit reductive.

Where a judge finds that the undisputed facts establish overwhelming evidence in favor of a defendant, such that a reasonable jury could not find for the plaintiff, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (holding that summary judgment "unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict"); *see also Godfrey*, 2026 WL 2936651, at *6 (granting summary judgment because, based on the evidence, "no reasonable jury could find that HHC and ASC acted with deliberate indifference in failing to adequately train staff[.]"); *Sowders v. Byrne et al*, 2026 WL 2920170, at *8 (S.D. Ind. Sept. 29, 2026) (granting summary judgment to officer where there was such "overwhelming evidence" supporting that "a reasonable jury could not

find" the officer used excessive force); *Estrada v. BNSF Railway Co.*, 2020 WL 956303, at *4 (N.D. Ill. Feb. 27, 2020) (granting summary judgment where defendant presented "overwhelming evidence" that firing was related to the breaking of company rules, not discrimination).

In this case, there was significant, undisputed evidence of EVO training. As I stated in my summary judgment opinion:

> The undisputed evidence in this case shows that South Bend does train its officers on how to operate their vehicles and how reckless operation may constitute constitutional violations. For starters, every South Bend Police Officer must graduate from the Indiana Law Enforcement Academy, where recruits are taught how to operate emergency vehicles safely. The academy also teaches recruits that driving recklessly can be a violation of the Fourteenth Amendment. Officer Alfrey testified that the academy teaches how officers should clear intersections. South Bend has an emergency vehicle policy that has guidelines for how to appropriately operate a vehicle when responding to an emergency. The emergency vehicle policy provides guidelines for when officers should use their lights and sirens. New officers at the South Bend police department complete a field training officer program that has additional emergency vehicle training for officers after they have graduated from the academy. After this, officers receive annual training on emergency vehicle operations, including on the need to operate vehicles with due regard. And then there's hands on training: twice a year South Bend police officers are provided training at a racetrack on how to operate their emergency vehicles at high speeds.

[DE 189, 24-25.] Given the high bar for failure to train claims, as established by *Connick* and *Canton*, I found that a reasonable jury could not find for Plaintiff because the undisputed evidence established that South Bend has an adequate EVO training program. Plaintiff's argument essentially amounted to a claim that the "injury or accident could have been avoided if an officer had better or more training, sufficient to

equip him to avoid the particular injury-causing conduct." *Canton*, 489 U.S. at 391. But the Supreme Court has made it clear that such an argument is insufficient. *Id.*

Plaintiff argues that some of the facts that I relied on were actually disputed and that I failed to properly account for facts pointing to inadequate training. Before getting into the specifics, I note that these arguments were discussed at length in my summary judgment opinion, and that none of these arguments by Plaintiff are new. A motion for reconsideration is not an instrument to rehash previously rejected arguments. *Vesely v. Armslist LLC*, 762 F.3d 661, 667 (7th Cir. 2014). However, I will still address a few of these points made by Plaintiff here.

**b. Disputed Facts**

Plaintiff argues that I relied on disputed facts in coming to my conclusion that South Bend's EVO training for its police officers was constitutionally adequate. Plaintiff does not dispute that these training measures existed; rather, Plaintiff asserts that the measures were inadequate, unenforced, or not taken seriously. [*e.g.*, DE 199, 14 ("The disciplinary options described by the Court… may have existed on paper, but Plaintiff disputes that they were used in a way that actually influenced officer behavior.").

I would note that I addressed these same arguments in my summary judgment opinion:

> Plaintiff does not dispute that many of these training measures exist but repeatedly question their adequacy and the seriousness with which the trainings were conducted, especially in light of the frequency with which South Bend police engage in pursuits. But pointing at existing training regimens and simply alleging that "better or more training" could have avoided the conduct at issue "will not suffice." *Connick*, 563 U.S. at 1363-64. To hold otherwise would be to engage the courts in exactly the

> 'endless exercise of second-guessing municipal training programs' which the Supreme Court aimed to avoid in *Canton*. *Canton*, 489 U.S. at 392.

[DE 189, 26.] The main problem with this argument by Plaintiff is that the "disputes" Plaintiff latches on to are not material for a failure to train *Monell* claim and are not what I relied on in coming to my conclusion.

One of Plaintiff's arguments for reconsideration that is indicative of this is their argument that the Court relied on the "twice-yearly one hour racetrack training" in coming to its conclusion that South Bend's EVO training was sufficient, despite "that fact [being] directly disputed." [DE 199, 14.] Plaintiff points out that Gorny testified that his racetrack training in 2017 was only about 10 minutes long. *Id.*, *see also* [DE 218, 130.] However, despite the way Plaintiff frames it, I did not say that this was evidence of adequate training *because* it was one hour long. In fact, as it was disputed, I did not rely on or even characterize how long the racetrack training was at all. What is undisputed, and what I relied on, is that there *was* racetrack training. Deciding exactly how little is too little for each officer to train on the racetrack and when that becomes sufficient to support a finding of inadequate training is exactly the kind of micromanagement the Supreme Court warned that courts are "ill suited to undertake[.]" *Canton*, 489 U.S. at 392.

**c. Facts Plaintiff Claims Are in Her Favor**

Plaintiff also points to facts that she asserts would support a jury finding in her favor. First, all of these facts were previously discussed in my opinion on summary judgment, making Plaintiff's present argument a redo. But more importantly, these facts

are insufficient anyway, as they do not create a genuine issue of material fact for trial. For example, Plaintiff leans hard on two comments made by an instructor in an EVO training video. The first comment Plaintiff points to is:

> We chase them around, up and down side streets, all the time, lots of people, lots of cars, lots of intersections, lots of stop signs. We chase them to the city limits where, God bless 'em, there's just corn fields; right? And that's where we stop. Cause we left our jurisdiction; right? Technically, it's more dangerous in the city; correct?

[DE 199, 6.] Plaintiff argues that this "conveyed the message that officers have historically and were free at whim to engage in high-speed vehicle operations through populated areas" and asserts that the statement is "fatal to adequate training[.]" *Id.* But the quote is not the damning statement Plaintiff makes it out to be, especially when it is put in context.

To begin with, the instructor says nothing about driving excessively fast or about when to engage in a pursuit. The fact that he uses the word "chase" does not change this, and merely conveys that officers do, necessarily, engage in police pursuits. It mentions there being many people and intersections in the city but specifically says that this makes pursuits in the city "more dangerous" and does not say the officers should ignore these dangers. In fact, as I explained in my opinion, the instructor went on to discuss how to properly clear intersections, how legal liability may arise from improper driving, the dangers of high-speed pursuits, and the need to operate vehicles with due regard. [DE 189, 27-28; DE 167, 13-14.] Could the instructor's statement here have been worded better? Perhaps, but at the risk of repeating myself, *that is not the standard*. Even if Plaintiff could show that the program has occasionally "been negligently

administered," that would not be sufficient to show a failure to train. *Canton*, 489 U.S. at 391.

I also found in my summary judgment opinion that Plaintiff had not sufficiently pointed to a specific facet of the training that is responsible for Officer Gorny's reckless conduct on the night in question. Plaintiff now cites the above quotation as an example of evidence tying Gorny's actions to his training. [DE 199, 5-6.] The "identified deficiency in the training program must be closely related to the ultimate injury." *Canton*, 489 U.S. at 379. This comment, especially in context, is merely explaining what a police pursuit in a city necessarily entails and could not be reasonably viewed as being closely linked to Officer Gorny's decision to go nearly one hundred miles per hour through a red light while not using his siren and only intermittently using his emergency lights to respond to a nonemergency situation that other police were already responding to.

The other quote from this training program that Plaintiff points to is the instructor's comment that he had "bored" the attendees "into oblivion." These comments were made shortly after showing a training video about a mother losing her children during a high-speed police pursuit. [DE 199, 10.] Plaintiff asserts that this comment could be viewed as "essentially telling the police department three consecutive years 'you do not really need to take any of this seriously[.]'" *Id.* But as I also pointed out in my summary judgment opinion when Plaintiff made this argument, Plaintiff (again) leaves out some context. The instructor did not say right after the heartbreaking video that he "bored them into oblivion." Instead, he first addressed the

video and said that it was "sombering" [*sic*]. Second, while I agree that this is an inappropriate comment, it is far from evidence that the whole of South Bend's EVO training program is inadequate under the case law, and a reasonable jury could not view this comment as a green light to officers to ignore all of their EVO training, as Plaintiff asserts.

**d. Other Arguments**

Plaintiff makes some additional arguments that do not neatly fall into the categories laid out above, but none are persuasive. Here's an example: In my summary judgment opinion, I pointed out that Plaintiff forcefully argued in the qualified immunity portion of their briefing that South Bend affirmatively taught its officers that reckless high-speed driving constitutes a Fourteenth Amendment violation. [DE 189, 27.] I stated that such evidence "undercuts Plaintiff's failure to train argument for the very same reason it supports their position on qualified immunity." *Id.* Plaintiff argues that relying on this evidence she presented, that South Bend's officers were taught about the constitutional standard for emergency vehicle operations, "is of no relation to whether they were adequately trained to *comply* with that standard." [DE 199, 15 (emphasis in original).]

However, knowing the constitutional standard is obviously of *some* relation to complying with the standard, and the Supreme Court has been clear that training officers on the constitutional standards for their conduct is highly relevant to determining whether the standard is adequate. The Supreme Court clearly explained in *Connick* that what made the deadly force training hypothetical in *Canton* inadequate

was that the "hypothetical assumes that the armed police officers have no knowledge at all of the constitutional limitations of deadly force." *Connick*, U.S. at 67. The fact that it is undisputed here that South Bend officers *did* have knowledge of constitutional limitations of the conduct at issue further distinguishes it from a hypothetical scenario which the Supreme Court has found that training may be considered inadequate.

Moreover, while knowing the standard may not be independently sufficient to establish that a training program is adequate, I did not rely on only this fact in reaching that conclusion. This was one of many undisputed pieces of evidence that strongly favored finding that a reasonable jury could not find South Bend's training program to be constitutionally inadequate.

**Conclusion**

In sum, none of the arguments Plaintiff makes in her motion for reconsideration convince me that I made a manifest error in granting summary judgment to South Bend on the failure to train claim. I relied on undisputed evidence and the case law in finding that a reasonable jury could not find South Bend's EVO training to be so inadequate as to evidence "deliberate indifference" and that Plaintiff failed to show that any particular part of the EVO training was closely related to Officer Gorny's reckless actions on the night in question. Plaintiff's arguments to the contrary are mostly repeats of the arguments I addressed in my summary judgment opinion. At bottom, Plaintiff is asking me to engage in exactly the kind of micromanagement and second-guessing of departments that courts (and juries) are ill suited to undertake and which would result in "unprecedented liability" for municipalities. *Canton*, 489 U.S. at 379.

What Officer Gorny did to Ms. Flores is undeniably dreadful and appalling, and it should never have happened. But the blame for what occurred cannot be laid at the feet of the City of South Bend based on a failure to train *Monell* claim. Plaintiff's motion for reconsideration [DE 198] is DENIED.

SO ORDERED.

ENTERED: October 8, 2026.

/s/ Philip P. Simon
United States District Judge